# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _Eileen Bransten_     PART _3_
                          *Justice*

_Ira Nachem_     INDEX NO. _603145/07_

                          MOTION DATE _____

_Property Markets Group, Inc.;_     MOTION SEQ. NO. _005_
_121 Macdougal, LLC; and Kevin_
_Maloney._     MOTION CAL. NO. _____

The following papers, numbered 1 to _34_ were read on this motion to/for _Dismiss /Compel_

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1 |
| Answering Affidavits — Exhibits _____ | 2 |
| Replying Affidavits _____ | 3, 4 |

**Cross-Motion:**  ☒ Yes     ☐ No

Upon the foregoing papers, it is ordered that this motion

IS DECIDED

IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION

RECEIVED

AUG 3  2010

MOTION SUPPORT OFFICE
NYS SUPREME COURT - CIVIL

Dated: _8 - 2 - 10_

_____
**HON. EILEEN BRANSTEN** *J.S.C.*

Check one:     **FINAL DISPOSITION**     ✗ **NON-FINAL DISPOSITION**

Check if appropriate:     **DO NOT POST**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 3

------------------------------------------------------------------------x

IRA NACHEM,

                       Plaintiff,

               -against-

PROPERTY MARKETS GROUP, INC.,
171 MACDOUGAL, LLC, and
KEVIN MALONEY,

Index No. 603145/07
Motion Date: 11/24/09
Motion Seq. No.: 005

                  Defendants.

------------------------------------------------------------------------x

**Bransten, J.:**

Plaintiff moves for partial summary judgment on his first cause of action, establishing the validity of the June 25, 2003, agreement between himself and defendant Property Markets Group, Inc., and dismissing defendants' affirmative defenses and counterclaims. Plaintiff also moves to compel compliance with the February 21, 2008, Request for Discovery and Inspection seeking discovery regarding damages. Defendants cross-move for summary judgment dismissing the complaint.

In this action, plaintiff claims that he entered into an agreement with defendants (the "Agreement") pursuant to which he was given a 20% interest in the defendants' interest in a condominium project at 171-73 MacDougal Street (the "MacDougal Project"). Plaintiff contends that despite that, there are no factual issues to dispute the validity of the Agreement, defendants refuse to pay him pursuant thereto. Plaintiff asserts that defendant Kevin Maloney admitted that he signed the Agreement and that Nachem made no fraudulent representation to him to induce the Agreement. Nachem contends that Maloney's failure to

005

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                   Page 2

read the Agreement prior to signing bars any defense of fraudulent inducement and is not a

defense to the Agreement's validity.  Nachem argues that Maloney admitted that plaintiff

provided the services recited as the consideration for the Agreement, and Maloney has

conceded that the language of the agreement did not require plaintiff to continue as asset

manager for the MacDougal Project to receive the 20% interest.  Finally, Nachem argues that

defendants defenses seek to inject alleged extrinsic understandings, violating the parol

evidence rule.

Defendants urge that the Agreement is unenforceable.  Defendants first contend that

the Agreement is based on past consideration not specifically expressed within the document.

They urge that the Agreement's consideration provision is vague and ambiguous, requiring

parol evidence.  Defendants further contend that there is a material question of fact as to

whether plaintiff performed required future services, as he did not continue to work on the

MacDougal Project.  Defendants also contend that the Agreement must be reformed due to

a mistake with regard to the consideration, that their defense of fraudulent inducement is

proper and that their defense of unjust enrichment should apply and limit plaintiff's interest

to the "promoted interest."

*Nachem v. Property Markets Group, Inc. et al.*                     Index No. 603145/07

                                                                    Page 3

## **BACKGROUND**[1]

From January 1998 through approximately March 2003, plaintiff Ira Nachem was employed as an asset manager by defendant Property Markets Group, Inc. ("PMG") (Complaint ¶ 9). PMG is an entity owned and controlled by defendant Kevin Maloney (Complaint ¶ 7). Maloney is a real estate developer, and PMG serves as the operating entity for his real estate interests (Affidavit of Kevin Maloney ["Maloney Aff."], ¶ 10). PMG acquires, redevelops and sells real estate properties either as a whole or as separate condominiums (Complaint ¶ 5; Maloney Aff. ¶ 11). Defendant 171 MacDougal, LLC ("171 MacDougal") is a single-purpose limited liability company that was formed to acquire and redevelop the property at 171-73 MacDougal Street, New York, New York (the "Property") (Maloney Aff., ¶ 11; Complaint, ¶ 6).

As an asset manager, Nachem was responsible for identifying and reviewing investment proposals involving real estate; analyzing and evaluating real estate investment proposals; creating acquisition, development, management, marketing, profit and capital return strategies on targeted properties; making presentations to investors and lenders; negotiating with investors, lenders, and tenants; upgrading or substantially developing properties; managing the property and sales; and coordinating tax abatements and credits for

---

[1] The facts are taken from the complaint, the affidavit of Kevin Maloney, the deposition testimony of Maloney and Nachem and both parties' documents.

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                                    Page 4

PMG (Maloney Aff., ¶ 15; Complaint, ¶ 9; Riso Aff.,[2] Ex. D, Deposition of Ira Nachem
["Nachem Dep."], dated June 30, 2009, at 41). Nachem was paid a salary and was given
equity or membership interests in the properties on which he worked (Complaint ¶ 10;
Maloney Aff., ¶ 11 [c]).

The parties dispute who first learned of the Property. However, it is clear that the
Property came to their attention in late 2002 through real estate broker Massey Knakal Realty
Services. The Property was a six-floor building being offered for sale by its owner, the Tenth
Church of Christ Scientist (the "Church") (Complaint ¶¶ 15-16, Maloney Aff., ¶ 19). The
transaction required, among other things, that PMG acquire the third through sixth floors of
the building by PMG, who would then develop and market those floors as residential
condominium units. The Church retained the lower two floors (Complaint ¶ 15).

Nachem analyzed the property, doing all of the "legwork," including analyzing costs
and presenting to the Board of the Church to discuss the proposal and the Church's needs
(Maloney Aff., ¶ 25; Nachem Dep., at 167-173).

On March 25, 2003, the Church issued a formal Request for Proposal ("RFP")
Maloney Aff., Ex. E). Nachem was in charge of responding to the RFP, putting together the
information and writing PMG's response (Maloney Aff., ¶¶ 26-27; Riso Aff., Ex. E,

---

[2] Affirmation of Gerard A. Riso in Support of Plaintiff's Motion for Partial Summary
Judgment Determining the Validity of the Agreement Dated June 25, 2003, and Dismissing
Defendants' Affirmative Defenses and Counterclaims; and Ordering Defendants to Provide
Discovery Related to Damages ("Riso Aff.").

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

                                                                   Page 5

Deposition of Kevin Maloney ["Maloney Dep."], dated August 3, 2009, at 160-162[3]).  In

compliance with his duties, Nachem worked with an architect, who prepared sketches that

Nachem and Maloney used in their presentations to the Church.  Nachem further attended

meetings, working with the Church Board, and prepared paperwork, including spreadsheets

and analyses of the market, costs and other financial considerations (Maloney Dep. at 161-

163, 178).

    Effective as of March 31, 2003, Maloney terminated Nachem's employment with

PMG, but asked Nachem to continue to stay at PMG as a consultant, pursuing the

MacDougal Project and other possible future projects (Maloney Aff., ¶¶ 28-29; Complaint,

¶ 11).  Nachem continued to work on the MacDougal Project out of PMG's offices until

December 2003, when he began working at North Fork Bank (Nachem Dep. at 173-174).

    On April 7, 2003, Nachem and Maloney submitted PMG's response to the Church's

RFP. Sometime thereafter, the Church selected PMG to be the developer for the Property

(Maloney Aff., ¶¶ 31-32).  Nachem then worked negotiating the terms of the real estate

purchase contract with the Church and the Church's attorney, and met with architects,

construction managers and Church members (Maloney Dep. at 182-83).

---

    [3] The court notes, and views unfavorably and with suspicion, the blacking out of lines
immediately above and below portions of the deposition transcripts cited by the Defendants. The
court has no way of knowing the context of cited statements.

*Nachem v. Property Markets Group, Inc. et al.*                 Index No. 603145/07

                                                                Page 6

After the Church selected PMG to develop the Property, Nachem asked Maloney for

a written agreement outlining what he would receive out of the MacDougal Project (*id.* at

193). By a June 25, 2003, agreement between Maloney and PMG and Nachem, the parties

agreed, in relevant part, that:

> In recognition of Ira's efforts in analyzing and negotiating the
> Purchase Contract for the purchase of the upper floors of 171-73
> MacDougal Street, New York, N.Y. (the "Property") from the
> Tenth Church of Christ, Scientists (the "Church"), Ira will
> receive from PMG $40,000 (the "First Advance"). This First
> Advance will be due and payable, to the extent available,
> immediately to Ira upon the signing of the Purchase Contract
> between PMG and the Church.
>
> It is further agreed that upon the purchase of the Property by
> PMG, PMG and Ira will have ownership interests in the
> Property such that Ira will have a 20% interest in PMG's
> interest. For every dollar of Profit, PMG will receive eighty
> cents and Ira will receive twenty cents . . . .
>
> It is further agreed that Ira will receive a "Second Advance"
> from the legal entity that will own the Property from the time the
> Property is purchased

(Riso Aff., Ex. F, the "Agreement"). The Agreement also provided that the Second Advance

consisted of weekly payments to Nachem of $1,923.00 that would continue up until the time

that greater than 50% of the Property's space available for residential occupancy is sold or

rented, or Nachem receives an aggregate amount of $100,000.00, whichever occurs first (*id.*).

These advances were to be paid back by Nachem upon his receipt of the first $140,000.00

of profit, unless the profit exceeded $4 million, in which case the advances would be deemed

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

Page 7

earned by Nachem as a bonus from PMG. The Agreement explicitly stated that it was the

entire agreement between the parties, superceding any prior agreement or understanding

between them with regard to the subject matter, and could only be amended in writing (*id.*).

Nachem drafted the Agreement and presented it to Maloney for signature. Maloney

admits that he signed the Agreement, but contends and testifies that he did not read it before

he did so (Maloney Aff., ¶ 41; *see* Maloney Dep. at 203). When describing the day Nachem

brought him the Agreement, Maloney testified that "[Nachem] said that's my 20 percent, and

that's the 40,000 if I close the contract. I said fine." He also testified that Nachem did not

say anything else to him. Maloney stated that, while PMG's in-house counsel is in the office

next door to his, and that he may simply call out to obtain counsel's attention, Maloney did

not ask counsel to review the Agreement (Maloney Dep. at 202-206).

In June 2004, the Church and 171 MacDougal LLC signed an Agreement of Sale

regarding the Property (Maloney Aff., ¶ 59, Ex. P). In January 2007, 171 MacDougal LLC

and the Church closed on the sale of the Property (*id.*, ¶ 72).

Nachem has commenced this action asserting four claims for breach of contract,

breach of fiduciary duty (seeking both money damages and equitable relief), and breach of

implied contract (seeking recovery in quantum meruit).

In their Amended Answer, defendants deny all of the material allegations of the

complaint and assert eleven affirmative defenses and three counterclaims. Defendants' first

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                                      Page 8

affirmative defense is fraudulent inducement; the second asserts that the Agreement is void

for lack of consideration and the third asserts breach of contract by Nachem for failing to

complete the negotiations of the purchase contract with the Church. Defendants' fourth, fifth

and sixth affirmative defenses and the first, second and third counterclaims assert mutual

mistake by the parties and seek reformation of the Agreement. Defendants' seventh and

eighth affirmative defenses are for unclean hands and laches, and the ninth defense contends

that enforcement of the contract would constitute unjust enrichment. Defendants' tenth

affirmative defense asserts that Nachem repudiated and abandoned the Agreement by not

continuing as asset manager of the project. Defendants' eleventh affirmative defense states

that the Agreement does not apply because the Agreement of Sale with the Church was

substantially modified from the terms Nachem was negotiating (Riso Aff., Ex. C).

        Nachem makes several arguments in his motion for partial summary judgment on his

first cause of action, to establish the validity of the Agreement and to dismiss the defenses

and counterclaims. First, Nachem contends that defendants are bound by the Agreement

notwithstanding Maloney's failure to read it. He asserts that Maloney has not and cannot

present any valid excuse for failing to read it, and his failure to do so constitutes gross

negligence. Nachem urges that defendants' fraudulent inducement defense should be

dismissed because any alleged false representations by Nachem, including that he would stay

at PMG and remain as asset manager of the MacDougal Project until completion, could not

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

have been justifiably relied upon by Maloney due to Maloney's failure to read the Agreement. Nachem contends that the Agreement plainly does not require Nachem to remain at PMG to receive his 20% interest thereunder. In addition, Nachem urges that Maloney's testimony demonstrates that Nachem made no such misrepresentations. He points to Maloney's testimony that Nachem only said to him "that's my 20 percent, and that's the 40,000 if I close the contract" (Maloney Dep. at 203). Further, Nachem points to the Agreement provision stating that the document was the entire agreement of the parties with respect to the subject matter and that it could only be amended in writing, which did not occur. Nachem further urges that defendants' defenses are barred by the parol evidence rule, which bars the attempts to inject alleged extrinsic understandings into the terms of the Agreement or to create ambiguities in an Agreement which is complete and clear.

Nachem argues that defendants defense of lack of consideration fails because the Agreement clearly sets forth adequate past consideration of his "efforts in analyzing and negotiating the Purchase Contract." Nachem contends that Maloney admitted in his testimony that Nachem had, in fact, performed extensive services in furtherance of the MacDougal Project, including working on the project for three months without pay. He asserts that defendants' argument, that the consideration expressed only applied to the $40,000 First Advance, and not to the 20% interest, should be rejected.

Nachem contends that the defense that he breached the Agreement fails, because it did not require him to complete negotiation of the purchase contract to be entitled to the 20%

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

Page 10

interest. Similarly, the defense of repudiation fails because the Agreement, by its terms, did

not require Nachem to remain at PMG in order to receive the 20% interest.

Nachem argues that the reformation defenses and counterclaims (fourth, fifth, and

sixth defenses and the first through third counterclaims) should be dismissed because there

was only a unilateral, and not a mutual, mistake. Nachem urges that a unilateral mistake is

not actionable. Rather, the contract will only be voided where the mistake was made despite

the exercise of ordinary care. Nachem argues that Maloney's failure to read the contract was

gross negligence.

Nachem asserts that the equitable defenses of unclean hands, laches and unjust

enrichment apply only to equitable claims not to his breach of contract claim.

Finally, with regard to the defense that the purchase contract with the Church was

substantially different from the terms negotiated by Nachem, he argues that the Agreement

was not contingent on the terms of the sale agreement with the Church. Rather, Nachem

asserts that he was entitled to the 20% upon the acquisition of the Property.

In opposition and in support of their cross motion to dismiss, defendants urge that the

Agreement is unenforceable, because it is based on past consideration that is not expressed

in the Agreement. They argue that the agreement fails for want of consideration because

does not specifically state the consideration for Nachem's alleged 20% interest. They point,

for support, to Nachem's deposition testimony in which he states that the consideration for

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

Page 11

the 20% interest in PMG's interest was his "finding" the MacDougal Project. They then urge

that if that was the consideration, it was past consideration. Further, they argue that the

Agreement is vague, ambiguous, and reasonably susceptible of more than one interpretation

with regard to the consideration. Defendants urge that there are fact issues as to whether

Nachem "found" the MacDougal Project, and finding projects was part of his job. Thus, the

salary he received was the consideration for finding the project.

Defendants assert that the court should look at the surrounding circumstances to

ascertain the parties' intent as to the consideration. They submit Maloney's affidavit setting

forth PMG's business model as proof that asset managers like Nachem make the majority of

their income by working on a project until it is completed (Maloney Aff., ¶ 11). Maloney

asserts that asset managers are never given an interest in a project simply for finding it, and

that their interest is equitably reduced if they leave PMG before the project is complete (*id.*,

¶¶ 11-12).

Defendants then argue that if the court finds the consideration sufficiently expressed

as to the 20% interest in PMG's interest, Nachem cannot enforce the Agreement. Defendants

contend that the expressed consideration refers to future performance, not past performance,

and Nachem breached the Agreement by not substantially completing negotiation of the

purchase contract with the Church (third and tenth affirmative defenses). They contend that

the phrase "Ira's efforts in analyzing and negotiating the Purchase Contract" does not clearly

refer to past performance, and can be read to refer to past performance, future performance, or both.  They point to the fact that, at the time the Agreement was entered into, the "Purchase Contract" had not yet even been drafted, PMG had not yet retained an attorney to work on the purchase contract and the attorneys for the Church had not been contacted (Maloney Aff., ¶¶ 108-109).  Defendants assert that resort to extrinsic evidence is necessary to give meaning to the consideration provision, and the extrinsic evidence here indicates that Nachem was referring to future efforts (*id.*, ¶¶ 106-109; Nachem Dep. at 324-327).  Defendants also urge that, at the least, there is a material issue of fact as to whether Nachem materially completed negotiation of the "Purchase Contract," which was not signed until six months after he left PMG.

Next, defendants urge that the court should reform the Agreement to reflect the true consideration (fourth through sixth and tenth affirmative defenses, and first through third counterclaims), because there was a mutual mistake and the Agreement does not express Nachem and defendants' oral agreement.  They assert that Nachem's testimony that he got the 20% for "finding" the Project shows that the consideration was other than his "efforts in analyzing and negotiating the Purchase Contract," and, thus, that the mistake was mutual. They assert that a trial is required to determine the nature of the consideration here. Defendants further contend that Nachem fraudulently induced Maloney to sign the Agreement, because he knew that Maloney trusted him and did not review documents in the ordinary course of business.

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                   Page 13

Defendants also argue that the Agreement should not apply because the transaction with the Church was materially restructured such that it was a different transaction from the one contemplated by the Agreement (eleventh defense). In 2005, the Church demanded more money for the Property, and because the transaction had to be approved by the courts as fair to the Church, MacDougal LLC had to restructure the transaction to give the Church a 28% increase in value. Thus, defendants urge that because the consideration Nachem provided did not result in the acquisition of the Property, the Agreement should not apply.

Finally, defendants urge that their equitable defenses are proper with regard to the equitable claims and that Nachem is entitled to only 20% of the "promoted" interest, lest he would be unjustly enriched.

## DISCUSSION

Plaintiff's motion for partial summary judgment establishing the validity of the Agreement and dismissing defendants' affirmative defenses and counterclaims is granted. The branch of plaintiff's motion seeking an order compelling defendant's compliance with Plaintiff's Request for Discovery and Inspection, dated February 21, 2008, regarding damages also is granted. Defendants' cross motion to dismiss the complaint is denied.

Plaintiff Nachem has made a prima facie showing of entitlement to judgment as a matter of law, based on the unambiguous agreement between the parties, demonstrating the

absence of any material issues of fact. In response, Defendants have failed to present
evidentiary facts sufficient to raise a triable issue. Construction of an unambiguous contract
is a matter of law, appropriate for disposition by the court on summary judgment (*see
W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). "When the terms of a contract
are clear and unambiguous, the intent of the parties must be found within the four corners of
the document" (*ABS Partnership v AirTran Airways, Inc.*, 1 AD3d 24, 29 [1st Dept
2003][citations omitted]), and the writing should be enforced according to its terms (*Vermont
Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470 [2004]). This is particularly
important in the context of commercial transactions where certainty is a concern, and where
the instrument was negotiated between sophisticated business persons negotiating at arm's
length (*see id.* at 475).

        The agreement should be read as a whole to determine its purpose and intent, and it
should be construed to give effect and meaning to all provisions (*W.W.W. Assoc. v
Giancontieri*, 77 NY2d at 162; *see also American Express Bank Ltd. v Uniroyal, Inc.*, 164
AD2d 275, 277 [1st Dept 1990], *appeal denied* 77 NY2d 807 [1991]). Parol evidence is
inadmissible if the contract is clear on its face and sufficient to determine the parties' intent
(*Namad v Salomon Inc.*, 74 NY2d 751, 753 [1989]). Clear language does not become
ambiguous just because the parties argue differing interpretations (*see Bethlehem Steel Co.
v Turner Constr. Co.*, 2 NY2d 456, 460 [1957]; *DiPasquale v Gutfleish*, 73 AD3d 544, 546

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                              Page 15

[1st Dept 2010]; *Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 67 [1st Dept 2008], *affd* 13 NY3d 398 [2009]; *Moore v Kopel*, 237 AD2d 124 [1st Dept 1997]). An ambiguity cannot be created through the use of extrinsic evidence when the document is otherwise unambiguous (*see Kass v Kass*, 91 NY2d 554, 566 [1998] [ambiguity is determined within the four corners of the document, not by looking at outside sources]). A contract is unambiguous if the language it uses has a "'definite and precise meaning unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion'" (*NFL Enterprises LLC v Comcast Cable Communications*, 51 AD3d 52, 58 [1st Dept 2008], quoting *Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]).

### Adequate Consideration

Here, contrary to defendants' contentions, the contract at issue, the Agreement, is clear and unambiguous and requires no parol evidence to interpret its provisions. First, defendants' contention that the Agreement is not supported by adequate consideration is rejected. Defendants are seeking to construe provisions of the Agreement as completely separate and isolated from each other, rather than construing the Agreement as a whole. The Agreement recites in the first full paragraph, after introducing the parties, that the first advance of $40,000 was provided "[i]n recognition of Ira's efforts in analyzing, and negotiating the Purchase Contract."

*Nachem v. Property Markets Group, Inc. et al.*                Index No. 603145/07

Page 16

The fact that the second paragraph, which provides for the 20% interest, and the third paragraph, which provides for the Second Advance, do not separately repeat the same consideration language "[i]n recognition of Ira's efforts" does not lead to the conclusion that there is not adequate consideration for the promise to pay the 20% interest. Particular words in an agreement should not be considered in isolation, but rather in light of the obligation of the parties as a whole and the parties' intention as manifested by the words (*see Kass v Kass*, 91 NY2d at 567). The Agreement provides that both the First and the Second Advances are advances against Nachem's 20% interest, which are to be paid out to him upon the happening of particular events, such as the signing of the Purchase Contract with the Church for the First Advance. The Agreement also provides that the two advances will be paid back to PMG upon receipt by Nachem of the first $140,000 of profit. The payments to Nachem are interrelated, and it is clear that the expression of consideration in the first substantive paragraph of the Agreement applies to all of the payments to be made to Nachem in exchange for the work he had performed. Thus, when reading the Agreement as a whole, the consideration clause applies to all of the provisions of the Agreement, including the 20% interest.

The only reasonable construction of the consideration clause is that it was past consideration for work that Nachem had already performed. The fact that the "Purchase Contract" with the Church had not been fully drafted or signed by the parties yet, does not

require a different interpretation. In fact, in that same paragraph, the parties specify that the

First Advance "will be due and payable" upon the signing of the Purchase Contract. The use

of the future tense clearly indicates that the Purchase Agreement was not yet signed. The

parol evidence defendants submit in an attempt to create an ambiguity is unnecessary for this

unambiguous provision.

Under certain conditions, New York law allows an agreement to be valid despite

being supported by past consideration. Under General Obligations Law Section 5-1105, a

written promise will not be denied effect as a valid agreement on the ground of past or

executed consideration "if the consideration is expressed in the writing and is proved to have

been given or performed and would be a valid consideration but for the time when it was

given or performed" (GOL § 5-1105). The writing must specify an unequivocal promise to

pay a sum certain, on a date certain, and express consideration for the promise (*Umscheid v*

*Simnacher*, 106 AD2d 380 [2d Dept 1984]).

The past consideration, here, is memorialized in the written Agreement, which

specifies PMG's unequivocal promise to pay Nachem the First and Second Advances and the

20% interest, upon the happening of specific events. This writing clearly expressed and

described the consideration (*see Kreuter v Tsucalas*, 287 AD2d 50, 52-54 [2d Dept 2001]).

It did not simply state "for services rendered," or in "consideration of past work," or that the

payment was being made as an "award" (*see e.g. Clark v Bank of N.Y.*, 185 AD2d 138 [1st

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                          Page 18

Dept 1992] [money referred to only as an award]; *Umscheid v Simnacher*, 106 AD2d 380,
381 [for services rendered]; *United Resource Recovery Corp. v Ramko Venture Mgt., Inc.*,
584 F Supp 2d 645 [SD NY 2008] [in consideration of past work on the company's behalf]).
The clause within the Agreement stating that consideration was to be paid for Nachem's past
"efforts in analyzing, and negotiating the Purchase Contract" is not vague and imprecise, and,
therefore, is a sufficient expression of consideration.

There is undisputed evidence that Nachem performed the consideration recited.
Maloney admits in his affidavit that plaintiff analyzed the property for purchase and
development, including doing spreadsheets analyzing costs, debt, equity, and profit; that
plaintiff did "the detail and legwork and paperwork"; that Nachem met with the Board of the
Church to discuss and present PMG's proposal and the Church's needs regarding the terms
of the purchase; that Nachem negotiated the provisions of the purchase contract; that he
investigated various alternative spaces for the Church during development; and that he
prepared PMG's significant response to the Church's RFP (Maloney Aff., ¶¶ 25-30, 37;
Maloney Dep., at 167-169, 172-173 and 178-182).

The fact that Nachem was paid a salary does not invalidate the consideration. It is
undisputed that Nachem was fired in March 2003 and no longer received any salary, but
analyzed and negotiated the purchase contract up to and beyond the date of the Agreement.
Thus, the consideration was given or performed, and is valid. Therefore, defendants' second
affirmative defense, that the Agreement is void for lack of consideration, is dismissed.

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

Page 19

### *Breach or Repudiation of the Agreement*

Defendants' contention, in their third and tenth affirmative defenses, that Nachem breached the Agreement or repudiated it because he failed to work as the asset manager on the MacDougal Project through to completion of the project is not supported by the plain language of the Agreement. It is beyond cavil that a court must enforce, not rewrite, a contract and that it "may not by construction add or excise terms, nor distort the meaning of those used and thereby 'make a new contract for the parties under the guise of interpreting the writing'" (*Morlee Sales Corp. v Manufacturers Trust Co.*, 9 NY2d 16, 19 [1961] [citation omitted]; *see Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]). Courts are extremely reluctant to interpret an agreement as impliedly stating something which the parties specifically neglected to include (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d at 475).

There is no language in the Agreement stating that Nachem was obligated to continue to work as the asset manager for the MacDougal Project until completion. In fact, Maloney admitted at his deposition that the Agreement did not require Nachem to continue as asset manager (Maloney Dep., at 207-209). To add that requirement, this court would be making a new contract for the parties. Maloney had the ability to read the contract and negotiate to add such a requirement, should he have so desired. He did not. He and defendants are now bound by the Agreement as written, and his failure to read does not relieve defendants of its

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                   Page 20

terms (*see Pimpinello v Swift & Co.*, 253 NY 159, 163 [1930]). Therefore, there is no basis

for defendants' third and tenth affirmative defenses regarding Nachem's breach or

repudiation of the Agreement, and those affirmative defenses are dismissed.

   *Fraudulent Inducement*

   Defendants' first affirmative defense of fraudulent inducement also is dismissed. In

this defense, defendants urge that Maloney was fraudulently induced to sign the Agreement

based on false representations by Nachem that he would remain at PMG as asset manager for

the MacDougal Project until the project was complete.

   To sustain a claim for fraudulent inducement, the claimant must plead a representation

of material existing fact, falsity, scienter, reliance and injury (*Urstadt Biddle Props., Inc. v

Excelsior Realty Corp.*, 65 AD3d 1135, 1137 [2d Dept 2009]; *Pope v Saget*, 29 AD3d 437,

441 [1st Dept 2006], *lv denied* 8 NY3d 803 [2007]). First, defendants fail to set forth with

any particularity the alleged misrepresentation by Nachem. In fact, Maloney testified that

Nachem did not make a misrepresentation. At best, Nachem stated "that's my 20 percent,

and that's the 40,000 if I close the contract." Maloney agreed (*see* Maloney Dep., at 203).

   Second, Maloney failed to read the Agreement, and thus, as a matter of law,

defendants could not have justifiably relied on any misrepresentation as to what the

Agreement required. A party who signs a contract, without a valid reason for failing to read

it, is conclusively bound by its terms (*Sorenson v Bridge Capital Corp.*, 52 AD3d 265, 266

[1st Dept 2008], *lv dismissed* 12 NY3d 748 [2009]). The party's failure to read the

*Nachem v. Property Markets Group, Inc. et al.*                                    Index No. 603145/07
                                                                                                    Page 21

agreement prevents it from establishing justifiable reliance, which is an essential element of

fraud (*id.*; *see also Chemical Bank v Geronimo Auto Parts Corp.*, 225 AD2d 461, 462 [1st

Dept 1996]). Where a party has the means to discover and understand the true nature of the

transaction by the use of ordinary intelligence, and fails to make use of those means, he or

she cannot claim justifiable reliance (*Tanzman v La Pietra*, 8 AD3d 706, 707 [3d Dept

2004]). Here, Maloney's failure to read the Agreement bars defendants' first affirmative

defense of fraudulent inducement.

   *Reformation*

   Defendants' fourth through sixth affirmative defenses and first through third

counterclaims, seeking reformation of the Agreement based on mistake, are dismissed as a

matter of law. A claim of mutual mistake is appropriate where "the parties have reached an

oral agreement and, unknown to either, the signed writing does not express that agreement"

(*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986] [citation omitted]). "Reformation is not

granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the

intended terms of an agreement when the writing that memorializes that agreement is at

variance with the intent of *both* parties" (*George Backer Mgt. Corp. v Acme Quilting Co.*,

46 NY2d 211, 219 [1978] [emphasis added]).

   The party seeking such reformation must make a showing "in no uncertain terms, not

only that mistake or fraud exists, but exactly what was really agreed upon between the

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

Page 22

parties" (*Chimart Assoc. v Paul*, 66 NY2d at 574 [quotation marks and citation omitted]; *see also Resort Sports Network Inc. v PH Ventures III, LLC*, 67 AD3d 132, 136 [1st Dept 2009]). There is a heavy presumption that the deliberately prepared and executed agreement manifests the true intention of the parties, and, thus, the party seeking reformation must tender a high level of proof in evidentiary form so that the benefits of the written form are preserved (*Chimart Assoc. v Paul*, 66 NY2d at 574).   The party opposing dismissal must submit evidence free of contradiction or equivocation (*id.*).

Here, defendants do not show that the parties agreed to something other than the Agreement "in no uncertain terms."  As stated above, to obtain reformation based on a mutual mistake, the mistake must actually be mutual.  Here, defendants merely point to an alleged unilateral mistake by Maloney, who believed that Nachem was required to continue as asset manager until the completion of the MacDougal Project.   There is no clear unequivocal showing that Nachem misunderstood his obligation (Nachem Dep., at 296-297).

Defendants' further claim that there was a mutual mistake as to the consideration. Defendants assert Nachem's testimony in support of their argument, in which he stated that he earned the 20% interest for simply finding the deal (*see* Maloney Aff., ¶¶ 84-89).  As Maloney quotes in his affidavit, Nachem testified that the consideration "is for work performed, for finding the deal and, you know, that there were no other duties required subsequent to the signing of both of these documents" (Maloney Aff., ¶ 90).   What

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

Page 23

defendants actually contend is not that Nachem was mistaken, but that he made fraudulent representations to induce and defraud Maloney into signing the Agreement which did not require him to remain as asset manager. Thus, there is no basis free of contradiction or equivocation for defendants' contention that both parties reached an agreement other than that contained in the writing.

In addition, mutual mistake "may not be invoked by a party to avoid the consequences of its own negligence" (*P.K. Dev., Inc. v Elvem Dev. Corp.*, 226 AD2d 200, 201 [1st Dept 1996]; *see Scotts Co., LLC v Ace Indem. Ins. Co.*, 51 AD3d 445, 447 [1st Dept 2008] [plaintiff may not invoke mutual mistake to avoid the consequences of its own negligence in failing to read the policies]; *2001 Commerce St. Corp. v Star Enter.*, 14 AD3d 504, 505 [2d Dept], *lv denied* 5 NY3d 708 [2005] [defendant's negligence or conscious ignorance of the contents of document referred to in contract established unilateral, not mutual, mistake]). Thus, defendants may not invoke mutual mistake to avoid the consequences of their own negligence in failing to read the Agreement, particularly where Maloney was a sophisticated businessman with his counsel's office next door to his own.

A claim for reformation may also be grounded upon fraudulently induced unilateral mistake (*Chimart Assoc. v Paul*, 66 NY2d at 573). For unilateral mistake, it must be alleged that one party to the contract fraudulently misled the other, and the writing does not express the intended agreement, and the mistake occurred despite the exercise of due diligence

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07

Page 24

*(Wachovia Sec., LLC v Joseph*, 56 AD3d 269, 270 [1st Dept 2008]; *Greater New York Mut. Ins. Co. v United States Underwriters Ins. Co.*, 36 AD3d 441, 443 [1st Dept 2007]). A bare conclusory claim of unilateral mistake that is not supported by legally sufficient fraud allegations fails to state a claim for reformation *(Greater New York Mut. Ins. Co. v United States Underwriters Ins. Co.*, 36 AD3d at 443). As discussed with regard to defendants' fraudulent inducement defense, defendants fail to allege any particular misrepresentation by Nachem. Moreover, defendants' failure to use ordinary care, admittedly failing to read the Agreement before signing it, precludes reformation *(see Wachovia Sec., LLC v Joseph*, 56 AD3d at 270-271 [failure of sophisticated investor to exercise due diligence warrants dismissal of claim]; *G & G Invs., Inc. v Revlon Consumer Prods. Corp.*, 283 AD2d 253 [1st Dept 2001] [failure to use ordinary care precludes rescission for either mutual or unilateral mistake]). Accordingly, defendants' fourth through sixth affirmative defenses and first through third counterclaims are dismissed.

*Applicability of the Agreement*

The eleventh affirmative defense, which asserts that the Agreement does not apply because the sale agreement with the Church was substantially modified so that a new and/or different transaction was entered into, is dismissed. The Agreement clearly provided that Nachem was entitled to a 20% interest in PMG's interest "upon the purchase of the Property by PMG." It was not contingent upon the terms of the agreement of sale between the Church

*Nachem v. Property Markets Group, Inc. et al.*

Index No. 603145/07

Page 25

and PMG. It is undisputed that the Property was purchased by PMG, thereby triggering Nachem's 20% interest in PMG's interest.

*Unclean Hands, Laches and Unjust Enrichment*

Defendants' seventh through ninth affirmative defenses are equitable defenses of unclean hands, laches and unjust enrichment. These defenses do not apply to plaintiff's first cause of action, which is a claim at law for breach of contract. In addition, they are not directed to the validity of the Agreement, which is at issue in plaintiff's motion. Further, both the laches and unclean hands defenses are insufficient, and are dismissed.

Unclean hands requires a showing of "immoral, unconscionable conduct" (*see Columbo v Columbo*, 50 AD3d 617, 619 [2d Dept 2008] [quotation marks and citation omitted]; *Kopsidas v Krokos*, 294 AD2d 406 [2d Dept 2002]). The only allegations in the answer that could possibly support such defense is Nachem's alleged fraudulent inducement of Maloney to sign the Agreement, which defense is dismissed above. However, Maloney's negligent failure to read the Agreement bars this defense under the circumstances here.

The laches defense also is dismissed. A laches defense is unavailable in an action at law commenced within the limitations period (*Matter of American Druggists' Ins. Co.*, 15 AD3d 268 [1st Dept], *lv dismissed* 5 NY3d 746 [2005]). This action was timely commenced. Therefore, the seventh and eighth affirmative defenses are dismissed.

*Nachem v. Property Markets Group, Inc. et al.*                Index No. 603145/07

Page 26

The issue raised in defendants' papers, that Nachem's 20% interest is based on 20% of the promoted interest and not 20% of an absolute interest in the MacDougal Project, and that it should not attach to Maloney's "money" membership interest, will be determined after discovery is conducted with regard to damages. In light of the determination above, that the Agreement is valid and binding, the branch of plaintiff's motion seeking an order compelling defendants to respond to Plaintiff's Request for Discovery and Inspection, dated February 21, 2008, is granted.

## Order

Accordingly, it is

ORDERED that the branch of plaintiff's motion for partial summary judgment as to liability on the first cause of action, establishing the validity of the Agreement dated June 25, 2003 between plaintiff and defendant PMG, is granted, and the first through eighth, and the tenth affirmative defenses and the first through third counterclaims are dismissed; and it is further

ORDERED that the branch of plaintiff's motion to compel is granted; and it is further

*Nachem v. Property Markets Group, Inc. et al.*                    Index No. 603145/07
                                                                              Page 27

ORDERED that defendants shall respond to Plaintiff's Request for Discovery and

Inspection, dated February 21, 2008, seeking discovery regarding the issue of damages,

on or before September 7, 2010; and it is further

ORDERED that the defendants' cross motion is denied; and it is further

ORDERED that the action shall continue as to the second, third, and fourth causes

of action; and it is further

ORDERED that counsel are directed to appear for a status conference in Room

442 on September 14, 2010, at 10:00 a.m.

This constitutes the decision and order of the court.


Dated: New York, New York
       July ___, 2010
       August 2, 2010

                                        ENTER:

                                        Hon. Eileen Bransten, J.S.C.