## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CERVECERÍA MODELO DE MÉXICO, S. DE R.L. DE C.V., and TRADEMARKS GRUPO MODELO, S. DE R.L. DE C.V.,

                    Plaintiffs,

        v.

CB BRAND STRATEGIES, LLC, CROWN IMPORTS LLC, and COMPAÑÍA CERVECERA DE COAHUILA, S. DE R.L. DE C.V.,

                    Defendants.

No. 1:21-CV-01317-LAK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THIRD AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs Cervecería Modelo de México, S. de R.L. de C.V. ("Cervecería Modelo") and Trademarks Grupo Modelo, S. de R.L. de C.V. ("Trademarks Grupo Modelo" and, together with Cervecería Modelo, "Modelo" or "Plaintiffs"), by and through their undersigned attorneys, file this Third Amended Complaint against Defendants CB Brand Strategies, LLC, Crown Imports LLC, and Compañía Cervecera de Coahuila, S. de R.L. de C.V. (together, "Constellation" or "Defendants"), and allege as follows on knowledge as to their own acts and on information and belief as to all others:

### INTRODUCTION

1.     Modelo brings this action to prevent Constellation from continuing to misuse and misappropriate Modelo's valuable trademarks in connection with Defendants' unlicensed sugar-based hard seltzer products. Defendants began their campaign of misappropriation with the release in February 2020 of the first four Corona Hard Seltzer flavors (later named "Corona Hard Seltzer Variety Pack #1"), and have repeatedly expanded their

misappropriation of Modelo's valuable trademarks even since this lawsuit was filed. So far, during the course of this litigation, Constellation has launched Corona Hard Seltzer Variety Pack #2; Corona Hard Seltzer Limonada; Corona Hard Seltzer Seltzerita; and now, in November 2021, the "Modelo Ranch Water" hard seltzer.[1] These, together with any future sugar-based hard seltzer products using Modelo's U.S. trademarks, shall be collectively referred to as the "Hard Seltzer Products."

2.     For their own commercial profit, Defendants continue to misappropriate Modelo's highly valuable trademarks that Modelo created, over the course of nearly a century, to identify its iconic portfolio of Mexican-style beers that have become highly-recognized global brands. Modelo's brand portfolio of Mexican-style beers includes Corona (the world's most popular Mexican beer and the most popular imported beer brand in the United States in 2020), Modelo (Modelo's eponymous brand and one of the fastest-growing imported beers in the United States), Pacífico, and Victoria. These and other beers highlight Modelo's rich Mexican heritage and its commitment to quality and flavor.

3.     In 2013, Marcas Modelo, S. de R.L. de C.V. ("Marcas Modelo"), licensed certain of its U.S. rights in the Corona and Modelo brands, among others, to Constellation pursuant to the "Amended and Restated Sub-License Agreement" (the "Sublicense") (Ex. A). Under the Sublicense, Constellation is licensed certain rights to Modelo's U.S. trademarks, including the CORONA® and MODELO® trademarks, but only in the United States and Guam, and only for the

---

[1]     Constellation's recent launch of "Modelo Reserva" products, which claim to be beers that are "Finished on aged wood from Tequila Barrels" and "Finished on aged wood from Bourbon Barrels," is the subject of a separate, related action pending before this Court. *See Cervecería Modelo de México, S. de R.L. de C.V.* v. *CB Brand Strategies, LLC et al.*, Case No. 21-CV-7316-LAK (S.D.N.Y.).

limited product area of "Beer."  "Beer" is an expressly defined term in the Sublicense:  "'Beer' means beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including non-alcoholic versions of any of the foregoing."  (Ex. A § 1.1 at 4.)

4.  Until 2020, the parties coexisted under this arrangement, and cooperated in Constellation's efforts to extend the licensed brands within the United States.  By 2020, however, Constellation had failed in its attempt to introduce a commercially viable "hard seltzer" into the marketplace and, in February 2020, Constellation launched Corona Hard Seltzer Variety Pack #1 to rectify that failure.

5.  Constellation followed its launch of Corona Hard Seltzer Variety Pack #1 in 2020 by launching four additional Hard Seltzer Products in 2021, each after this lawsuit was filed:  (i) Corona Hard Seltzer Variety Pack #2 in March 2021; (ii) Corona Hard Seltzer Limonada in June 2021; (iii) Corona Hard Seltzer Seltzerita in July 2021; and (iv) Modelo Ranch Water hard seltzer in November 2021.[2]  Corona Hard Seltzer Limonada and Corona Hard Seltzer Seltzerita were each launched on or about the time of this Court's June 16, 2021 ruling on Defendants' motion to dismiss (*see* ECF No. 34).

6.  But Constellation cannot use Modelo's U.S. trademarks for Hard Seltzer Products because they are outside of the Sublicense's express limitation to "Beer."  None of the Hard Seltzer Products is a beer, ale, porter, stout, or malt beverage, or a version or combination of

---

[2]  Corona Hard Seltzer Variety Pack #1 comes in tropical lime, mango, cherry, and blackberry lime flavors; Corona Hard Seltzer Variety Pack #2 comes in pineapple, strawberry, raspberry, and passionfruit flavors; Corona Hard Seltzer Limonada, which has lemon and lime juice, comes in classic lemon lime, strawberry, watermelon, and grapefruit flavors; and Corona Hard Seltzer Seltzerita, which includes lime juice and agave, comes in classic lime, strawberry, mango, and peach flavors.

any of those beverages, nor is it a non-alcoholic version of a beer, ale, porter, stout, or malt beverage.

7.      Constellation spent more than $40 million—its largest-ever single-brand launch investment—on commercials, internet, and print media announcing the introduction of Corona Hard Seltzer Variety Pack #1.  Yet in all of that advertising, Constellation never once called it a beer, instead identifying its new product as a "hard seltzer" or "spiked sparkling water." This is true also for Corona Hard Seltzer Variety Pack #2, Corona Hard Seltzer Limonada, Corona Hard Seltzer Seltzerita, and Modelo Ranch Water.

8.      In its earnings calls both before and after the launch of Corona Hard Seltzer Variety Pack #1, Constellation's executives expressly distinguished Corona Hard Seltzer Variety Pack #1 from "beer."  In January 2020, for example, Constellation's President and CEO Bill Newlands explained that "[s]eltzer is . . . not going to take space from our core beer franchise.  The consumer views it as something different.  The retailer is viewing it as something different."  And in its April 2020 earnings call just after the launch, Newlands reaffirmed that Corona Hard Seltzer Variety Pack #1 "goes into a different space" than beer.  With respect to the Modelo brand, Newlands told the market during Constellation's Q2 2021 earnings call that "I highly doubt that we will do a seltzer under that brand" because "the core essence of that brand focuses much more on full flavored beer."  In November 2021, however, Constellation launched "Modelo Ranch Water" hard seltzer in an attempt to capitalize on the growing popularity of the West Texas "ranch water" cocktail.

9.      In early August 2020, Cervecería Modelo (the successor to Marcas Modelo) notified Constellation that Constellation and its affiliates were infringing Cervecería Modelo's CORONA® trademarks and in breach of the Sublicense.  Cervecería Modelo insisted that

Constellation cease importing, advertising, promoting, marketing, and selling Corona Hard Seltzer Variety Pack #1 and enter into negotiations regarding other relief to which Cervecería Modelo believes it is entitled.  Yet Constellation continued its unlicensed acts.

10.     Constellation has and continues to profit from its misconduct.  By October 2020, Constellation boasted that "Corona Hard Seltzer [had] become one of the most successful new product launches in our company's history."  That success merely serves to underscore the value of the Corona brand, and the damages that Modelo has suffered as a consequence of Constellation's improper conduct.

11.     Constellation ignores the plain and unambiguous terms of the Sublicense in an effort to obtain something that neither party bargained for nor received.  Because Constellation refuses to stop, Modelo is left with no choice but to bring this action to address Constellation's infringement of Modelo's trademarks and breach of its contractual obligations.

## THE PARTIES

12.     Cervecería Modelo is a Mexican corporation with its principal place of business at Cerrada de Palomas 22, Piso 6, Reforma Social, Miguel Hidalgo, Mexico City 11650, Mexico.  The predecessor of Cervecería Modelo was founded in 1925 and is famous for having created and brewed many well-loved brands of beer, including Corona, Modelo, Pacífico, and Victoria.  Modelo's Corona Extra is the world's most popular Mexican beer and the most popular imported beer in the United States, and Modelo Especial is the second most popular imported beer in the United States.  Given the popularity of Modelo beers in the United States, Modelo has come to be known as the producer of high-quality Mexican-style beers.

13.     Trademarks Grupo Modelo is a Mexican corporation with its principal place of business in Mexico City, Mexico.  In December 2021, certain intellectual property rights associated with Cervecería Modelo (including the intellectual property rights licensed in the

Sublicense) were transferred from Cervecería Modelo to Trademarks Grupo Modelo. Pursuant to the Mexican Business Companies Act, the transfer of intellectual property rights and assignment of rights and obligations under the Sublicense from Cervecería Modelo to Trademarks Grupo Modelo became enforceable with respect to third parties on February 18, 2022. Trademarks Grupo Modelo is a successor by assignment to Cervecería Modelo, and this latter company a successor by assignment of Marcas Modelo, S. de R.L. de C.V., a signatory to the Sublicense.

14.     Defendant CB Brand Strategies, LLC ("CBBS") is a Delaware corporation with its principal place of business in Zug, Switzerland. CBBS manufactures wines, spirits, beer, and other beverages. CBBS is a successor by assignment to Constellation Beers LTD., a signatory to the Sublicense.

15.     Defendant Crown Imports LLC ("Crown") is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Crown imports and distributes the Modelo and Corona beer portfolios in the United States, and is the U.S. distributor of the Hard Seltzer Products.

16.     Defendant Compañía Cervecera de Coahuila, S. de R.L. de C.V. ("CCC") is a Mexico limited liability company with its principal place of business in Nava, Coahuila, Mexico. CCC produces and packages the Hard Seltzer Products in Mexico, and is responsible for exporting the Hard Seltzer Products from Mexico to the United States.

## JURISDICTION AND VENUE

17.     This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims arising under the laws of the State of New York because they are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18.     This Court has personal jurisdiction over Defendants pursuant to New York General Obligations Law § 5-1402 because the action arises out of an agreement for which a choice of New York law has been made, and which (i) relates to obligations arising out of a transaction covering in the aggregate not less than one million dollars, and (ii) contains a provision whereby such parties agreed to submit to the jurisdiction of the courts of this state.[3]

19.     Venue is proper in this district pursuant to (a) 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District, and (b) the foregoing express forum selection clause.

20.     Modelo has satisfied all of the necessary preconditions required by the Sublicense to commence a judicial action.  A confidential alternative dispute resolution process failed to yield a resolution to this dispute.  (*See* Ex. A § 6.2.)

## RELEVANT FACTS

### Background

21.     With its predecessor founded in Mexico in 1925, Cervecería Modelo is the preeminent brewer of Mexican beers, and is responsible for some of the most well-known beers in the world.  Today, Grupo Modelo (the corporate group that includes Cervecería Modelo) is responsible for around 30,000 jobs, 11 breweries, and 10 production and brewing plants in Mexico. Cervecería Modelo's affiliate, Trademarks Grupo Modelo, owns the rights to many famous

---

[3]     Pursuant to Section 6.2 of the Sublicense, "[Constellation] and [Modelo] irrevocably consent to the exclusive personal jurisdiction and venue of the courts of the State of New York and the federal courts of the United States, in each case sitting in New York County, in connection with any action or proceeding arising out of or relating to this Agreement.  [Constellation] and [Modelo] hereby irrevocably waive, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of such action or proceeding brought in such a court and any claim that any such action or proceeding brought in such court has been brought in an inconvenient forum."

trademarks all over the world, including, for example, Mexican trademarks for "Corona"; "Corona Extra"; "Modelo"; "Modelo Especial"; and the Corona and Modelo bottle labels/designs.

22.     Modelo's flagship brand, Corona, is sold in more than 160 countries and is the leading Mexican beer and the number-one selling imported beer in the United States; Modelo Especial is the second most popular imported beer in the United States.

23.     Modelo became fully part of the world's largest alcohol beverages company, Anheuser-Busch InBev SA/NV ("ABI"), in 2013.

24.     After ABI and Modelo announced their merger, the U.S. Department of Justice ("DOJ") filed a lawsuit claiming that the merger would violate Section 7 of the Clayton Act, which prohibits mergers and acquisitions when the effect "may be substantially to lessen competition, or to tend to create a monopoly." (*United States* v. *Anheuser-Busch InBev SA/NV, et al.*, No. 13-CV-127 (Jan. 31, 2013) (ECF No. 1).)   The DOJ alleged that the ABI-Modelo transaction would substantially lessen competition in the market for "beer." (*Id*. ¶ 7.)   In its Complaint, the DOJ defined "beer" as an "alcoholic beverage[] usually made from a malted cereal grain, flavored with hops, and brewed via a process of fermentation.   Beer is substantially differentiated from other alcoholic beverages by taste, quality, alcohol content, image, and price." (*Id*. ¶ 25.)

25.     To address the DOJ's concerns about the anticompetitive effect in this "beer" market, ABI and Modelo agreed to divest Modelo's beer business in the United States through a license to Constellation.   The terms and conditions of the resolution of the DOJ action are memorialized in the October 21, 2013 Final Judgment (the "Final Judgment"), so-ordered by the United States District Court for the District of Columbia in *United States* v. *Anheuser-Busch InBev SA/NV, et al.*, No. 13-CV-127 (ECF No. 48); and the terms of the Modelo-Constellation

license are set forth in the Sublicense (attached as an exhibit to the Final Judgment (ECF No. 45-2 at 73)).  Notably, DOJ, ABI, Modelo, and Constellation chose *different* definitions of "Beer" in the Final Judgment and Sublicense, each of which relate to separate issues and govern different conduct.

26.     Modelo sold and Constellation acquired, for approximately $4.75 billion, various assets related to Modelo's U.S. beer business and the right to use certain intellectual property in accordance with the terms and conditions of the Sublicense.

### The Sublicense

27.     The Sublicense[4] identifies multiple U.S. trademarks for existing beers that are owned by Modelo and licensed to Constellation.  Thus, for instance, in the Sublicense Constellation received a license to sell beers branded with Modelo (*e.g.*, Registration Nos. 2,631,391, and 2,631,390), Pacífico (*e.g.*, Registration Nos. 2,885,751 and 2,862,190), and Victoria (*e.g.*, Registration Nos. 4,146,768 and 4,146,767).

28.     The most valuable trademarks, given its popularity worldwide and in the United States, were for the Corona brand.  These included those consisting of the Corona "Crown Design" and the word "Corona" (*e.g.*, Registration Nos. 2,634,004, 2,817,872, and 3,388,558); variants of and/or additions to that word (*e.g.*, Registration Nos. 2,600,236, 3,388,566, and

---

[4]     Trademarks Grupo Modelo and CBBS are the successors to the signatories to the Sublicense.  Pursuant to Section 2.6 of that agreement, CBBS has granted sublicenses under the Sublicense to its affiliates Crown and CCC; those sublicenses bind Crown and CCC to the Sublicense.  (*See* Ex. A § 2.6(a).)

3,549,260); and/or stylized versions of those word(s) (*e.g.*, Registration Nos. 1,681,366, 2,489,710, and 2,687,262).[5]

       29.    The licensed U.S. trademarks, which are set forth in Exhibits B and D to the Sublicense and include any amendments or supplements to those exhibits and "Brand Extension Marks," are defined in the Sublicense as "Trademarks." (*See* Ex. A §§ 1.1 at 4, 10, 2.15(b).) The federally registered CORONA®- and MODELO®-related Trademarks (and additional federally registered CORONA®- and MODELO®-related marks asserted here) for alcoholic beverages that are active today are listed in Appendix 1 (the "CORONA® Marks") and Appendix 2 (the "MODELO® Marks") (collectively, the "Marks").

       30.    Modelo granted Constellation an exclusive license "to use the Trademarks solely in connection with:  (i) importing, advertising, promoting, marketing and selling Importer Products and Interim Products in [the United States and Guam]; and (ii) the application of the Trademarks to Importer Products in the course of manufacturing, bottling and packaging of Importer Products in the applicable Brewing Territory . . . ." (*Id*. §§ 1.1 at 4, 9, 2.1.)

       31.    An "Importer Product" is a "Product or Brand Extension Beer produced in the Brewing Territory by Constellation Beers or on behalf of Constellation Beers . . . "; in turn, "Product" is defined as "Beer packaged in Containers bearing one or more of the Trademarks." (*Id*. § 1.1 at 6, 8.) As stated above, the Sublicense defines "Beer" as "beer, ale, porter, stout, malt

---

[5]    Under Section 2.10(a), "[o]wnership of the Trademarks and of the goodwill associated therewith shall at all times remain in and inure solely to the benefit of [Modelo], and any trademark rights or goodwill with respect thereto which may accrue as a result of advertising or sales of Importer Products or Interim Products shall be the sole and exclusive property of [Modelo]." (Ex. A § 2.10(a).) All of the Trademarks were transferred to, and now owned by, Trademarks Grupo Modelo.

beverages, and any other versions or combinations of the foregoing, including non-alcoholic versions of any of the foregoing."  (*Id*. § 1.1 at 4.)

32.     Notably, the parties to the Sublicense chose not to adopt any statutory or regulatory definition of "Beer" (which differ around this country and the world) to govern their relationship.  This can be seen clearly in that the Sublicense definition begins by mirroring the first four words of an Internal Revenue Code ("IRC") definition, 26 U.S.C. § 5052(a), but then rejects the rest of that definition and instead deliberately uses other language to delineate the licensed products:

> ***beer, ale, porter, stout,*** ~~and other similar fermented beverages (including saké or similar products) of any name or description containing one-half of 1 percent or more of alcohol by volume, brewed or produced from malt, wholly or in part, or from any substitute therefor~~ <u>malt beverages, and any other versions or combinations of the foregoing, including non-alcoholic versions of any of the foregoing</u>

*Id*. § 1.1 at 4 (emphasis on language in both IRC and Sublicense definitions; language from the IRC definition that was not included in the Sublicense is struck and in red; and language in the Sublicense definition but not in the IRC definition is underlined and in blue).  In other words, the Sublicense definition expressly rejects the broader language of the IRC definition, such that alcohol beverages like "saké or similar products" are *not* "Beer" under the Sublicense even though they may be taxed as such.  And "non-alcoholic versions" are included in the Sublicense definition of "Beer" but not in the IRC (and other) definitions.  The "Beers" defined in the Sublicense and the "beers" permitted under the IRC (and other regulatory and statutory definitions) are different— and they differ because the parties intended a different outcome.

33.     Constellation did not acquire and does not have unlimited rights to innovate using the Marks.  It may innovate and bring to market any product it likes, but if it is to bear a licensed Modelo U.S. trademark, the innovation must be within the scope of the Sublicense.  The parties in the Sublicense laid out a specific path for Constellation to innovate using the Marks

when Constellation wanted to extend the brand.  They agreed to the concept of a "Brand Extension Beer," which is defined as "Beer packaged in Containers bearing a . . . Mark that is a derivative of one or more of the Trademarks for use in the marketing, merchandising, promotion, advertisement (including sponsorship activities in connection with the foregoing), licensing, distribution and sale of Mexican-style Beer."  (*Id*. § 1.1 at 4.)  "Mexican-style Beer" is defined as "Beer bearing the Trademarks that does not bear any trademarks, trade names or trade dress that would reasonably be interpreted to imply to consumers in the Territory an origin other than Mexico." (*Id*. § 1.1 at 7.)

34.     Together, these provisions give Constellation the right to (i) commercialize "Beer" using the Marks in the United States and Guam, and (ii) adopt and use trademarks that are derivative of the Marks, but only in connection with the commercialization of "Mexican-style Beer." (*Id.* §§ 1.1 at 4, 7, 9, 2.1, 2.15.)

35.     These restrictions on Constellation's license are restated in Section 2.12, which make it a breach of the Sublicense for Constellation to (i) "use, or authorize any other Person to use, any Trademark or Trade Dress in connection with any . . . good . . . other than an Importer Product" (*i.e.*, a "Beer" or "Mexican-style Beer") "except as expressly permitted by th[e Sublicense]," and (ii) "(except as expressly authorized by th[e Sublicense]) use . . . any Mark or trade dress that includes any of the Trademarks or that is confusingly similar to any of the Trademarks." (*Id.* § 2.12(b), (c).)

36.     The Sublicense conveys the parties' mutual intent.  Section 1.2(d) of the Sublicense states expressly that "[t]he language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent."  The Sublicense also includes an "Entire Agreement" provision (*i.e.*, a "merger" clause), providing that the Sublicense and its

ancillary agreements[6] "constitute the entire agreement among the parties . . . and supersede all prior or contemporaneous agreements and understandings, whether written or oral." (*Id.* § 9.6.)

37.     The parties agreed in the Sublicense that "a breach or threatened breach by them of any provision of this Agreement will result in the other entity suffering irreparable harm which cannot be calculated or fully or adequately compensated by recovery of damages alone. Accordingly, the parties agree that any party may, in its discretion (and without limiting any other available remedies), apply to any court of law or equity of competent jurisdiction for specific performance and injunctive relief . . . in order to enforce or prevent any violations of this Agreement, and any party against whom such proceeding is brought hereby waives the claim or defense that such party has an adequate remedy at law and agrees not to raise the defense that the other party has an adequate remedy at law." (*Id.* § 9.8.)

### Hard Seltzer and the Hard Seltzer Business

38.     At the time the parties negotiated the Sublicense, there were no "hard seltzers" being sold (by beer companies or otherwise).  Since 2016, hard seltzer products have been the subject of explosive growth.  Hard seltzers have been a fast-growing category in the alcohol beverage industry, with 2019 sales of more than $1 billion more than quadrupling in 2020 to $4.5 billion.

---

[6]     The Ancillary Agreements are "the schedules and exhibits [to the Sublicense] . . . the Confidentiality Agreement, dated as of May 26, 2012, by and between Constellation, ABI and solely with respect to Section 2 thereof, Grupo Modelo . . . the Brewery SPA, the Membership Interest Purchase Agreement, and the Restated LLC Agreement (as defined in the Membership Purchase Agreement and solely to the extent Constellation Beers and Constellation do not acquire all of Constellation Beers' Interest (as defined in the Membership Purchase Agreement)), and the Transition Services Agreement and each of the other Transaction Documents." (Ex. A § 9.6.)

39.     Constellation understood that it would be most successful entering the hard seltzer market by using a strong brand.  For example, on its Q2 FY 2020 earnings call on October 3, 2019, the CEO of Constellation Brands, Inc. ("CBI"),[7] Bill Newlands, stated that Constellation "felt that if we're going to enter th[e hard seltzer] category, we would do it with a brand that had deep trust with the consumer."  Despite that, and Newlands' statement that "Corona carries unbelievably strong brand equity," Constellation first attempted to enter the hard seltzer space in June 2018 by introducing "Svedka Spiked Seltzer."

40.     Svedka Spiked Seltzer was a flop, and Constellation stopped selling it in August 2019.  Constellation chose to use the CORONA® Marks for its next attempts at innovation—first with a seltzer look-alike, a flavored malt beverage named Corona Refresca—and then finally with Corona Hard Seltzer Variety Pack #1.

41.     Constellation has and continues to capitalize on the booming hard seltzer market through its unauthorized production and sale of Corona Hard Seltzer Variety Pack #1—"one of the most successful new product launches in [the] company's history"—and the other Hard Seltzer Products introduced by Constellation.  Constellation has shown no signs of slowing down: "Our intention," CBI CEO Newlands explained in an October 1, 2020 earnings call, "is to become a top-three player in the hard seltzer market."  And this remains true even after the Court dismissed Constellation's motion to dismiss on June 16, 2021.  In an August 2021 interview with Beer Business Daily, CBI's CEO Newlands explained that, despite this lawsuit, Constellation's "biggest focus continues to be Corona Hard Seltzer" when it comes to innovations, that Corona Hard Seltzer

---

[7]     Defendants CBBS, Crown, and CCC are subsidiaries of Constellation Brands, Inc.

"is certainly going to be [Constellation's] lead [hard seltzer] brand," and that Constellation's
Corona Hard Seltzer operations remain "business as usual."

**Constellation's Unlicensed Hard Seltzer Products**

42.     On November 4, 2019, Constellation, purportedly acting as Cervecería
Modelo's agent, filed an application to register a CORONA HARD SELTZER mark in the United
States and represented in that application that Corona Hard Seltzer would not be a "beer."  The
application was filed in "Class 33," which is for "alcoholic beverages, except beers,"[8] and
identified the intended product as "[a]lcoholic beverages, except beer; Hard seltzer; Flavored malt-
based alcoholic beverages."

43.     On November 11, 2019, Constellation filed another application for Corona
Hard Seltzer and again stated that it would not be "beer."  That application was also filed in
Class 33 and similarly identifies the intended product as "[a]lcoholic beverages, except beer; Hard
seltzer."

44.     In June 2020, after Corona Hard Seltzer Variety Pack #1 had launched,
Constellation amended both applications and continued to represent that the proposed Corona Hard
Seltzer marks would not be used with a "beer."  Those two applications described the product as
"Hard seltzer; Flavored malt-based alcoholic beverages, excluding beers" and "Alcoholic
carbonated flavored brewed malt beverages, except beer; Hard seltzer."  Despite the shift, no malt
is identified as an ingredient for Corona Hard Seltzer or any of the Hard Seltzer Products.  In fact,
none of the Hard Seltzer Products is a flavored malt beverage.

---

[8]     USPTO trademarks are categorized according to The International Classification of Goods
and Services (the "NICE Classification") system.

45.     Constellation never discussed its plans for the product with Cervecería Modelo or provided Cervecería Modelo with a copy of the recipe for Corona Hard Seltzer Variety Pack #1 or any of the other Corona-branded Hard Seltzer Products.  That stands in stark contrast to how Constellation worked with Cervecería Modelo to launch Corona Refresca, when Constellation consulted with Cervecería Modelo for nearly 18 months prior to launch and provided Cervecería Modelo with the recipe for that flavored malt beverage.  On information and belief, the reason for Constellation's reticence with Corona Hard Seltzer Variety Pack #1 was that it knew the product is not a "Beer" and therefore not permitted under the Sublicense.  Instead, it was best to keep the market believing that Constellation was producing another flavored malt beverage called "Corona Hard Seltzer."  But that was not true.  Corona Hard Seltzer Variety Pack #1 is not a malt beverage.

46.     In late February 2020, Constellation launched "Corona Hard Seltzer" in the United States as a hard/spiked seltzer produced from a sugar base available in four flavors:  tropical lime, mango, cherry, and blackberry lime (*i.e.*, Corona Hard Seltzer Variety Pack #1).  The ingredients listed on the product revealed that it is not a beer or a malt beverage.  Neither hops nor malt, two defining characteristics of beer and malt beverages, is identified as an ingredient.

47.     Constellation's launch of Corona Hard Seltzer Variety Pack #1 has since been followed by, as of the date of this filing, three additional unlicensed Corona-branded Hard Seltzer Products:  (i) its March 2021 launch of Corona Hard Seltzer Variety Pack #2, which includes pineapple, strawberry, raspberry, and passionfruit flavors; (ii) its June 2021 launch of Corona Hard Seltzer Limonada, which has lemon and lime juice and comes in classic lemon lime, strawberry, watermelon, and grapefruit flavors; and (iii) its July 2021 launch of Corona Hard Seltzer Seltzerita, which includes lime juice and agave and comes in classic lime, strawberry,

mango, and peach flavors.  Based on the ingredients listed on the product packaging, all three of Corona Hard Seltzer Variety Pack #2, Corona Hard Seltzer Limonada, and Corona Hard Seltzer Seltzerita are, like Corona Hard Seltzer Variety Pack #1, produced from a sugar base and are devoid of hops and malt.  In turn, they too are neither a beer nor a malt beverage.

48.     Constellation repeatedly has acknowledged that it used Corona for its new hard seltzer products because of the extraordinary value and popularity of the brand.  For example, on Constellation's Q2 FY 2020 earnings call on October 3, 2019, CBI's CEO Newlands explained that Constellation "decided to put the Corona brand name on [their] new seltzer" because "Corona carries unbelievably strong brand equity . . . [and] we felt that if we're going to enter this category, we would do it with a brand that had deep trust with the consumer."

49.     Similarly, during CBI's Q3 FY 2020 earnings call on January 8, 2020, CBI's CEO Newlands again explained that they "decided to put the Corona brand name on our new seltzer" because "Corona carries unbelievably strong brand equity as the number-one most loved brand among both Hispanic and total population drinkers aged 21 to 54."  And during Constellation's Q1 FY 2021 earnings call on July 1, 2020, Newlands explained that Constellation "believe[s] the refreshment attributes of seltzer, combined with the halo effect of the Corona brand, which remains one of the most loved beer brands, provides an opportunity to build one of the strongest hard seltzer brands in our industry."[9]

---

[9]     On July 6 and July 19, 2021, Constellation wrote to Cervecería Modelo purporting to provide notice pursuant to Section 2.2(b) of the Sublicense of its launch of Corona Hard Seltzer Limonada and Corona Hard Seltzer Seltzerita, respectively, as two supposed "Beer Extension Beers [sic]" under the Sublicense, and offering to share their recipes for the two products.  On August 17, 2021, Cervecería Modelo responded (i) that both products, like Corona Hard Seltzer Variety Pack #1, exceed the scope of the Sublicense, as each is a sugar-based hard seltzer and not

50.    With respect to the Modelo brand, during Constellation's Q2 FY 2021 earnings call on October 1, 2020, Constellation told the market that hard seltzer was not a good fit for the Modelo brand because "the core essence of that brand focuses much more on full flavored beer."  When asked whether Constellation "would extend in the Modelo brand into seltzers as well," Newlands stated, "I highly doubt we will do a seltzer under that brand . . . any innovation that we might approach on that particular brand will follow more of the brand essence of the Modelo brand rather than what we have done with Corona, where we feel the whole refreshment platform matches up perfectly with the hard seltzer sub-segment."

51.    Nevertheless, in an attempt to capitalize on a West Texas cocktail trend, Constellation recently decided to try to exploit the Modelo brand to sell yet another Hard Seltzer Product in the United States.  In November, 2021, Constellation launched "Modelo Ranch Water," which Constellation's packaging describes as a "brewed spiked sparkling water" that is "inspired by the refreshing taste of the ranch water cocktail."  Ranch water is a traditional West Texas cocktail that has no meaningful connection to Mexico and is made from tequila, sparkling water, and lime.[10]  Like the Corona-branded Hard Seltzer Products, Modelo Ranch Water is a sugar-based hard seltzer; neither hops nor malt is identified as an ingredient.

---

a "Beer"; (ii) that their continued sale "constitutes an ongoing and independent breach of the Sublicense and independent acts of trademark infringement"; and (iii) that Constellation should "please feel free to provide [their recipes] to [Modelo] for [Modelo's] consideration" if doing so "will help to establish in any way that the [Corona Hard Seltzer] Seltzerita and [Corona Hard Seltzer] Limonada beverages are within the Sublicense."

[10]    Veronica Meewes, *How Ranch Water Became the Unofficial Cocktail of West Texas*, Punch (August 30, 2016), https://punchdrink.com/articles/how-ranch-water-recipe-became-the-unofficial-cocktail-of-west-texas/ ("Ranch Water—a mix of tequila, lime juice and soda water—has long been a West Texas staple, and it's now starting to appear in bars across the state."); Tim McKirdy, *Everything You Need to Know About Ranch Water (and Why Everyone's Drinking It)*,

52.     None of the Hard Seltzer Products is a "Beer" or "Mexican-style Beer." Each is a flavored hard seltzer made with "alcohol from sugar."  The Hard Seltzer Products are not made like "beer" (or any of the other words used to define "Beer" in the Sublicense), do not have the same ingredients, and do not look like, taste like, pour like, or have the aroma of a Beer.

53.     Constellation has never once used the word "beer" (or any of the other words used to define "Beer" in the Sublicense) in any of its tens of millions of dollars in television commercials for the Hard Seltzer Products.  Each of the Hard Seltzer Products is prominently identified as a "hard seltzer" or "spiked sparkling water."  (*See* Figure 1.)  While the containers for all of the Hard Seltzer Products do include the word "BEER" on them, Constellation only makes this disclosure in two-millimeter font beside the government-mandated health warning on the back of each container (*see* Figure 2), as it is required by the IRC (and similar statutory and regulatory tax and licensing rules) in order for Constellation to be taxed on the Hard Seltzer Products at the lowest rate available for alcohol beverages.  *See* 27 C.F.R. § 25.142.

---

VinePair (August 7, 2020), https://vinepair.com/articles/what-is-ranch-water-recipe/ ("[I]t's in the Lone Star State and not south of the border that the simple cocktail known as Ranch Water has become a cultural icon."); M. Carrie Allan, *How to make Ranch Water, the tequila-lime cocktail that keeps so many Texans cool*, Washington Post (July 27, 2021), https://www.washingtonpost.com/food/2021/07/27/ranch-water-recipe/ ("[A]fter sloshing around Texas for decades [Ranch Water] has recently galloped around the country at such speeds that entrepreneurs are betting their ranches on it.").

Figure 1



Figure 2



54.     Constellation has repeatedly described hard seltzers—including the Corona- and Modelo-branded Hard Seltzer Products—as a distinct category of alcohol beverages, separate from and different than beer.  For example, in its January 8, 2020 earnings call, Newlands explained that "[s]eltzer is, in all likelihood, not going to take space from our core beer franchise. *The consumer views it as something different. The retailer is viewing it as something different* . . . and we believe that will continue."  Three months later, in its April 3, 2020 investor call, Newlands reaffirmed that "[s]eltzer . . . is one of the fastest-growing sub-segments within the alcohol beverage business" and that "[Corona Hard Seltzer] . . . goes into a *different space*" than beer.  And in July 2020, Newlands told shareholders that Constellation's "introduction of Corona Hard Seltzer [was] a great example of leveraging a tremendously strong brand *into a new category*," and stated that it was "important to not simply lump seltzer in with beer" because "[seltzer] is not necessarily a direct trade-off with beer."

55.     Corona Hard Seltzer Variety Pack #1 is also devoid of any meaningful indicia of the Corona brand's Mexican heritage and tradition.  The only mention or hint of Mexico on a can of Corona Hard Seltzer Variety Pack #1 is in the bottom-right corner, in tiny font: "IMPORTED FROM MEXICO."  That disclosure is likewise required by federal "country of origin"

-20-

regulations.  *See* 19 C.F.R. § 102.0; 19 C.F.R. § 134.0.  Spiked sparkling waters/hard seltzers were created in the United States and mostly featured (so far) in the U.S. market and "hard seltzer" is a distinctly English-language term, and thus the "trademarks*,* trade names [and] trade dress" used with Corona Hard Seltzer is "reasonably . . . interpreted to imply to consumers in the [United States] an origin other than Mexico" (Ex. A § 1.1 at 7).

56.     Corona Hard Seltzer Variety Pack #1's advertisements make no additional references to it being a product of or being made in Mexico.  The only references to Mexico on the packaging and containers for Corona Hard Seltzer Variety Pack #1 are required by U.S. law.  And their inclusion does not transform Corona Hard Seltzer Variety Pack #1 into a "Mexican-style" anything, let alone a Mexican-style Beer.  The Sublicense requires that any such beverage not bear *any* Trademarks, Trade Names, or Trade Dress that can reasonably be interpreted to imply to consumers an origin other than Mexico, and Corona Hard Seltzer Variety Pack #1's references to "hard seltzer," "spiked sparkling water," and its flavors may be reasonably interpreted to do just that.

57.     As Constellation implicitly recognized when it acknowledged that launching a hard seltzer product using the MODELO® Marks would not be consistent with the "core essence of that brand,"  Modelo Ranch Water represents an attempt by Constellation to take Modelo's brands even farther away from Modelo's authentic Mexican heritage and the "Mexican-style" requirement in the parties' Sublicense.  As noted above, ranch water is a cocktail with strong West Texas origins and no meaningful history in or connection with Mexico.  The Ranch Water trade name and trade dress of Modelo Ranch Water is "reasonably . . . interpreted to imply to consumers in the Territory an origin other than Mexico" and thus not permitted under the Sublicense (Ex. A § 1.1 at 7).

**Modelo's Notice and Complaint**

58.     In early August 2020, Cervecería Modelo notified Constellation that Constellation and its affiliates were infringing Cervecería Modelo's CORONA® trademarks and in breach of the Sublicense.  Cervecería Modelo insisted that Constellation cease importing, advertising, promoting, marketing and selling Corona Hard Seltzer, and enter into negotiations regarding other relief to which Modelo believes it is entitled.

59.     A confidential alternative dispute resolution process, a prerequisite to suit here, failed to yield a resolution to this dispute.

60.     Cervecería Modelo filed its original Complaint in this action (ECF No. 1) on February 15, 2021.  Constellation moved to dismiss on April 5, 2021.  That motion was denied from the bench following oral argument on June 16, 2021.  Constellation subsequently filed its Answer (ECF No. 40) on July 20, 2021.

**FIRST CAUSE OF ACTION**

**Trademark Infringement (15 U.S.C. § 1114)**

61.     Modelo realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 60 of this Complaint.

62.     Trademarks Grupo Modelo is the owner of the U.S. federal trademark registrations for the Marks.

63.     The Marks are valid and subsisting trademarks in full force and effect.

64.     By its registration and extensive use and promotion of the federally registered Marks, Modelo has established a strong association in the public mind between the Marks and the goods and services offered by Modelo.

65.     Without Modelo's authorization or consent, Constellation has reproduced, copied, or otherwise used the Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of the Hard Seltzer Products.

66.     Constellation's conduct has caused or is likely to cause confusion, mistake, or deception among relevant consumers that Constellation is authorized to produce and distribute the Hard Seltzer Products or that the Hard Seltzer Products are rendered, sponsored, or otherwise approved by Modelo.

67.     Constellation's unlawful acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

68.     As a direct and proximate result of Constellation's conduct, Modelo has suffered and will continue to suffer monetary damages as a result of Constellation's unlawful acts in an amount to be determined at trial.

69.     Modelo and the public will suffer irreparable harm if Constellation's infringement continues.  Modelo is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Constellation to stop infringing Modelo's Marks.

70.     On information and belief, Constellation's acts have been willful, deliberate, and intended to benefit Constellation at Modelo's expense.  Constellation's trademark infringement therefore amounts to an "exceptional case" under 15 U.S.C. § 1117.

71.     Modelo is entitled to recover up to treble the amount of Constellation's unlawful profits and Modelo's damages, and an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Breach of Contract

72.     Modelo realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 71 of this Complaint.

73.     The Sublicense is a valid and binding contract between Modelo and Constellation.

74.     Modelo has fully performed under the Sublicense, including with respect to any preconditions necessary for bringing this suit.

75.     Section 2.12 of the Sublicense states that Constellation shall not (i) "use, or authorize any other Person to use, any Trademark or Trade Dress in connection with any . . . good . . . other than an Importer Product . . ., except as expressly permitted by th[e Sublicense]," and (ii) "(except as expressly authorized by th[e Sublicense]) use . . . any Mark or trade dress that includes any of the Trademarks or that is confusingly similar to any of the Trademarks."

76.     Constellation breached Section 2.12 of the Sublicense by using the Marks in connection with the Hard Seltzer Products because (i) none of the Hard Seltzer Products is an "Importer Product"[11] (ii) the "Corona Hard Seltzer" trademark and related trade dress is confusingly similar to the CORONA® Marks; and (iii) the "Modelo Ranch Water" trade name and related trade dress is confusingly similar to the MODELO® Marks.

77.     Modelo has suffered and will continue to suffer damages as a result of Constellation's breach of the Sublicense in an amount to be proved at trial.

78.     Constellation's breach of the Sublicense is causing immediate and irreparable harm to Modelo and to its goodwill and reputation, and will continue to do so unless

---

[11]     An "Importer Product" must be a "Product" or "Brand Extension Beer" (*id.* § 1.1 at 6); in turn, a "Product" must be a "Beer" and a "Brand Extension Beer" must be a "Mexican-style Beer" (*id.* § 1.1 at 4, 8).

enjoined by this Court.  Modelo is entitled to injunctive relief, as the parties agreed in Section 9.8 of the Sublicense.

79.     Constellation's breach of the Sublicense was and is willful and intentional.

## DEMAND FOR RELIEF

WHEREFORE, Modelo respectfully requests that the Court enter judgment against Defendants as follows:

1.     Declaring that Constellation has no authorization to manufacture, import, advertise, market, or sell any of the Hard Seltzer Products;

2.     Declaring that Constellation has breached the Sublicense;

3.     Declaring that Constellation has infringed the Marks in violation of Modelo's rights under 15 U.S.C. § 1114;

4.     Declaring that Modelo has not consented to any use of the Corona Hard Seltzer trademark with regard to any of the Corona Hard Seltzer Products;

5.     Declaring that Modelo has not consented to any use of the Modelo Ranch Water trade name or trade dress with regard to Constellation's Modelo Ranch Water product;

6.     Enjoining Constellation, its agents, officers, directors, employees, franchisees, licensees, affiliates, principals, subsidiaries, parents, servants, representatives, attorneys, shareholders, divisions, successors, and assigns, and all of those in active concert or participation with them who receive notice of such judgment directly or otherwise, from producing, marketing, and selling any of the Hard Seltzer Products;

7.     Enjoining Constellation, its agents, officers, directors, employees, franchisees, licensees, affiliates, principals, subsidiaries, parents, servants, representatives, attorneys, shareholders, divisions, successors, and assigns, and all of those in active concert or participation with them who receive notice of such judgment directly or otherwise, from using or

authorizing others to use Modelo's intellectual property, including Modelo's U.S. trademarks and/or Trade Dress, except as expressly authorized under the Sublicense; using or authorizing others to use in any manner any service mark, trademark, trade name, domain name, trade dress, words, numbers, abbreviations, designs, colors, arrangements, collocations, or any combinations thereof that would imitate, resemble or suggest Modelo's well known Marks except as expressly authorized under the Sublicense; otherwise infringing Modelo's Marks or trade dress; unfairly competing with Modelo, or otherwise injuring Modelo's business reputation in any manner;

8.    Declaring that Modelo recover its damages and/or lost profits, and/or Constellation's profits, in an amount to be proven at trial;

9.    Declaring that Constellation be required to account for any profits that are attributable to its unauthorized acts, and that Modelo be awarded (i) Constellation's profits and (ii) all damages sustained by Modelo, under 15 U.S.C. § 1117, plus prejudgment interest;

10.    Declaring that the amounts awarded to Modelo pursuant to 15 U.S.C. § 1117 shall be trebled;

11.    Declaring that this is an exceptional case and that Modelo be awarded its costs and disbursements incurred in connection with this action, including Modelo's reasonable attorneys' fees and investigative expenses; and

12.    Any and all such other relief be awarded to Modelo as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial of all issues so triable.

Dated: New York, New York
        March 16, 2022

Respectfully Submitted,

_____

Marc De Leeuw
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004

Telephone:  (212) 558-4000
Facsimile:  (212) 291-9113
deleeuwm@sullcrom.com

Michael H. Steinberg (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067

Telephone:  (310) 712-6670
Facsimile:  (310) 712-8870
steinbergm@sullcrom.com

*Counsel for Plaintiffs Cervecería Modelo de México, S.*
*de R.L. de C.V., and Trademarks Grupo Modelo, S. de*
*R.L. de C.V.*

APPENDIX 1:  THE CORONA MARKS

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 1. | CORONA (STYLIZED) | Corona | 1681366 |
| 2. | CORONA, CROWN & GRIFFIN DESIGN | Corona | 1689218 |
| 3. | CROWN & GRIFFIN DESIGN | | 1462155 |
| 4. | CORONA EXTRA (STYLIZED) | Corona Extra | 1681365 |
| 5. | CORONA EXTRA LA CERVEZA MAS FINA & DESIGN | Corona Extra LA CERVEZA MAS FINA | 1729694 |
| 6. | LA CERVEZA MAS FINA & DESIGN | LA CERVEZA MAS FINA | 1495289 |
| 7. | CORONA LIGHT & DESIGN | Corona Light | 1727969 |
| 8. | CORONITA EXTRA | | 1729701 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 9. | CORONITA EXTRA LA CERVEZA MAS FINA & DESIGN |  | 1761605 |
| 10. | CORONA LIGHT & DESIGN (HORIZONTAL LINE ABOVE THE WORD LIGHT) |  | 2406232 |
| 11. | CROWN DESIGN |  | 3048028 |
| 12. | CORONA EXTRA LA CERVEZA MAS FINA & BOTTLE DESIGN |  | 3317902 |
| 13. | CORONA EXTRA CERVEZA LA CERVEZA MAS FINA & DESIGN |  | 3544218 |
| 14. | CORONA EXTRA CERVEZA LA CERVEZA MAS FINA & DESIGN |  | 3544217 |
| 15. | CORONA EXTRA | | 3388566 |
| 16. | CORONA | | 3388558 |
| 17. | CORONITA LIGHT | | 3549260 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 18. | CORONA LIGHT | | 3605139 |
| 19. | CORONARITA | | 4594168 |
| 20. | CORONITA | | 4610922 |
| 21. | CORONA FAMILIAR | | 4486445 |
| 22. | CORONARITA | | 4476282 |
| 23. | CORONA DE MAYO | | 4808819 |
| 24. | CORONITA EXTRA & DESIGN |  | 5152772 |
| 25. | CORONA & DESIGN |  | 5152782 |
| 26. | CORONITA LIGHT & DESIGN |  | 5973412 |
| 27. | CORONARITA | | 6008159 |
| 28. | CORONA LIGHT & DESIGN |  | 5638418 |
| 29. | CORONA LIGHT & DESIGN |  | 5576394 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 30. | CORONA LIGHT & DESIGN | | 5336454 |
| 31. | CORONA LIGHT & DESIGN (2016 Horizontal) | | 5908477 |
| 32. | CORONA LIGHT & DESIGN | | 5336461 |
| 33. | CORONA PREMIER | | 5342121 |
| 34. | CORONA LIGHT & DESIGN | | 5991476 |
| 35. | CORONA & DESIGN | | 5565885 |
| 36. | CORONA REFRESCA | | 5686346 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 37. | CORONA PREMIER LABEL DESIGN (COLOR) |  | 5745538 |
| 38. | FIND YOUR BEACH | | 4191028 |
| 39. | LA CERVEZA MAS FINA | | 2963654 |
| 40. | FIND YOUR BRACKET BEACH | | 6159856 |
| 41. | ANOTHER WAY TO FIND YOUR BEACH | | 5829418 |
| 42. | FIND YOUR GAMEDAY BEACH | | 5651679 |

**APPENDIX 2:  THE MODELO MARKS**

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 43. | MODELO | | 1,022,817 |
| 44. | MODELO ESPECIAL | | 1,055,321 |
| 45. | NEGRA MODELO | | 1,217,760 |
| 46. | Design of a lion |  | 3,111,586 |
| 47. | MODELO LIGHT | | 3,183,378 |
| 48. | CERVECERIA MODELO | | 3,896,060 |
| 49. | MODELO ESPECIAL |  | 4060986 |
| 50. | MODELO ESPECIAL CHELADA CERVECERIA MODELO MEXICO |  | 4,606,674 |
| 51. | MODELO ESPECIAL CHELADA CERVECERIA MODELO MEXICO |  | 4,606,676 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 52. | CERVECERIA MODELO MEXICO |  | 4,627,676 |
| 53. | MODELO ESPECIAL CHELADA | | 4,679,536 |
| 54. | MODELO LIGHT |  | 5,003,696 |
| 55. | MODELO LIGHT |  | 5,036,716 |
| 56. | CERVEZA OFICIAL DEL JUEGO BONITO | | 5,038,089 |
| 57. | CELEBRATE CINCO | | 5,041,297 |
| 58. | MODELO LIGHT |  | 5,045,780 |
| 59. | OFFICIAL FAN OF THE BEAUTIFUL GAME | | 5,095,971 |
| 60. | OFFICIAL BEER OF THE BEAUTIFUL GAME | | 5,138,986 |
| 61. | CASA MODELO | | 5,143,147 |
| 62. | MODELO NEGRA | | 5,143,148 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 63. | M CERVEZA MODELO OFFICIAL BEER OF THE BEAUTIFUL GAME |  | 5,297,243 |
| 64. | M CERVEZA MODELO ESPECIAL |  | 5,297,244 |
| 65. | CERVEZA MODELO ESPECIAL |  | 5,307,114 |
| 66. | CERVEZA MODELO ESPECIAL 1925 |  | 5,307,115 |
| 67. | CERVEZA MODELO ESPECIAL 1925 |  | 5,307,116 |
| 68. | CERVEZA MODELO 1925 CERVECERIA MODELO MEXICO |  | 5,307,117 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 69. | CERVEZA MODELO 1925 CERVECERIA MODELO MEXICO |  | 5,307,118 |
| 70. | CERVEZA MODELO 1925 CERVECERIA MODELO MEXICO |  | 5,307,604 |
| 71. | M CERVEZA MODELO CERVEZA OFICIAL DEL JUEGO BONITO |  | 5,317,781 |
| 72. | CERVEZA MODELO NEGRA 1925 |  | 5,330,255 |
| 73. | CERVEZA MODELO NEGRA 1925 |  | 5,330,256 |
| 74. | CERVEZA MODELO NEGRA |  | 5,330,257 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 75. | CHELADA TAMARINDO PICANTE | | 5,331,554 |
| 76. | CERVEZA MODELO ESPECIAL | | 5,346,787 |
| 77. | MODELO CHELADA ESPECIAL | | 5,371,011 |
| 78. | CERVEZA MODELO 1925 | | 5566181 |
| 79. | MODELO CHELADA | | 5,566,361 |
| 80. | CERVEZA MODELO | | 5,570,943 |
| 81. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA ESPECIAL | | 5,578,954 |
| 82. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA TAMARINDO PICANTE | | 5,578,955 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 83. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA TAMARINDO PICANTE |  | 5,578,956 |
| 84. | VIVE EL FOOTBALL | | 5,638,529 |
| 85. | CERVEZA MODELO NEGRA |  | 5,728,221 |
| 86. | ELABORADAS CON UN ESPÍRITU LUCHADOR | | 5,734,983 |
| 87. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA LIMON Y SAL |  | 5,892,160 |
| 88. | CERVEZA MODELO CERVECERIA MODELO MEXICO 1925 CHELADA LIMON Y SAL |  | 5,915,673 |
| 89. | FIGHT FOR GOLD, FIGHT FOR GLORY | | 5,927,191 |
| 90. | MODELITO ESPECIAL | | 6,081,470 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 91. | MANGO Y CHILE |  | 6,174,941 |