**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CERVECERÍA MODELO DE MÉXICO,
S. DE R.L. DE C.V., and TRADEMARKS
GRUPO MODELO, S. DE R.L. DE C.V.,

               Plaintiffs,

      v.

CB BRAND STRATEGIES, LLC,
CROWN IMPORTS LLC, and
COMPAÑÍA CERVECERA DE
COAHUILA, S. DE R.L. DE C.V.,

               Defendants.

:            No. 21-CV-01317-LAK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MODELO'S MEMORANDUM IN SUPPORT OF ITS MOTION**
**FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

Michael H. Steinberg (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6670
Facsimile: (310) 712-8870
steinbergm@sullcrom.com

Marc De Leeuw
Akash M. Toprani
Adam R. Rahman
Colin O. Hill
Kirandeep K. Mahal (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 291-9113
deleeuwm@sullcrom.com

*Counsel for Plaintiffs*

August 5, 2022

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

THE UNDISPUTED FACTS ................................................................................................... 6

    A.    The Parties ................................................................................................ 6

    B.    In 2006 and 2007, Modelo and Constellation Negotiated Joint
        Venture Agreements to Import Modelo "Beer," Which Constellation
        Publicly Represented Was Limited to "Malt-Based" Beverages ........................... 6

    C.    To Obtain DOJ Approval of the ABI-Modelo Merger, Modelo in
        2013 Granted Constellation a Sublicense to Sell "Beer" in the U.S.
        Under the Modelo Brands, Using the Same Definition of "Beer"
        From the Joint Venture Agreements ..................................................................... 9

    D.    Constellation Launched—With Modelo's Support—New
        Innovations  Using Modelo's Brands That Compete Directly
        With ABI Products ............................................................................................ 10

    E.    Seeking to Capitalize on the Explosive Growth of Hard Seltzers,
        Constellation Changed Its Decade-Old Understanding of the
        Sublicense and Launched a Sugar-Based Hard Seltzer Under the
        Corona Brand in 2020 ...................................................................................... 11

    F.    The Contrasts Between Beer and Sugar-Based Hard Seltzer ............................. 12

    G.    ██████████████████████████████
        ███████████████████████████████
        ██████████████████ ..................................................................... 14

    H.    Even After This Action Was Brought ███████████████
        █████████████, Constellation Introduced New
        Sugar-Based Products ....................................................................................... 14

THE STANDARDS ON THIS MOTION .................................................................................. 15

    A.    New York Law Requires a Focus on Plain and Ordinary Meaning .................... 15

    B.    Summary Judgment Is Appropriate in Contract Cases ...................................... 17

ARGUMENT ......................................................................................................18

I.      CORONA HARD SELTZER IS NOT A "BEER," "MALT BEVERAGE,"
        OR "VERSION" OF EITHER ...................................................................18

II.     CONSTELLATION'S ATTEMPTS TO DISREGARD THE PLAIN MEANING
        OF THE SUBLICENSE FAIL ON THE LAW AND UNDISPUTED FACTS...............20

        A.      The IRC/TTB Definition of "Beer" Cannot Supplant the Plain and
                Ordinary Meaning of the Sublicense ....................................................21

                1.      IRC and TTB Definitions Conflict With the
                        Express Terms of the Sublicense ................................................22

                2.      The IRC/TTB Definitions of "Beer" Are Not "General,
                        Uniform and Unvarying" in Law or Industry, as Would Be
                        Required to Read Them Into the Sublicense...............................24

        B.      Constellation's Alternative "Beer Category" Theory Likewise Fails...................30

III.    EVEN IF THE COURT DETERMINES THAT THE SUBLICENSE IS
        AMBIGUOUS, NO REASONABLE JURY COULD FIND THAT "BEER"
        IN THE SUBLICENSE INCLUDES SUGAR-BASED HARD SELTZERS ..................32

CONCLUSION...................................................................................................33

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*10 Ellicott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*,
    634 F.3d 112 (2d Cir. 2011)........................................................................2, 16, 18

*Am. Health Prod. Co.* v. *Hayes*,
    574 F. Supp. 1498 (S.D.N.Y. 1983).....................................................................24

*In re AXA Equitable Life Ins. Co. COI Litig.*,
    2022 WL 976266 (S.D.N.Y. Mar. 31, 2022) ..................................................16, 21

*Beazley Ins. Co., Inc.* v. *ACE Am. Ins. Co.*,
    880 F.3d 64 (2d Cir. 2018)...........................................................................16, 21, 29

*Brooke Grp. Ltd.* v. *JCH Syndicate 488*,
    87 N.Y.2d 530 (1996) ...........................................................................................15

*Chalet Liquors, Inc.* v. *Supervalu, Inc.*,
    2004 WL 885356 (Minn. Ct. App. Apr. 27, 2004) ................................................19

*Charron* v. *Sallyport Glob. Holdings, Inc.*,
    2014 WL 7336463 (S.D.N.Y. Dec. 24, 2014) .......................................................15

*China Privatization Fund (Del), L.P.* v. *Galaxy Ent. Grp. Ltd.*,
    95 A.D.3d 769 (1st Dep't 2012) ...........................................................................15

*Compagnie Financiere de CIC et de L'Union Europeenne* v. *Merrill Lynch,*
    *Pierce, Fenner & Smith Inc.*,
    232 F.3d 153 (2d Cir. 2000)..................................................................................17

*Consarc Corp.* v. *Marine Midland Bank, N.A.*,
    996 F.2d 568 (2d Cir. 1993)..................................................................................15

*Deverho Const. Co.* v. *State of New York*,
    407 N.Y.S.2d 399 (Ct. Cl. 1978) .........................................................................29

*Donohue* v. *Cuomo*,
    38 N.Y.3d 1 (2022) ..............................................................................................20

*E.G.L. Gem Lab Ltd.* v. *Gem Quality Inst., Inc.*,
    90 F. Supp. 2d 277 (S.D.N.Y. 2000).....................................................................18

*Faulkner* v. *Nat'l Geographic Soc.*,
    452 F. Supp. 2d 369 (S.D.N.Y. 2006)....................................................................17

*Goat Fashion Ltd.* v. *1661, Inc.*,
  2020 WL 5758917 (S.D.N.Y. Sept. 28, 2020)..................................................................16

*Goldman Sachs Lending Partners, LLC* v. *High River Ltd. P'ship*,
  34 Misc. 3d 1209(A) (Sup. Ct. N.Y. Cnty. 2011)..........................................2, 16, 18

*Greenfield* v. *Phillies Recs., Inc.*,
  98 N.Y.2d 562 (2002) .....................................................................................................6

*Hayes* v. *City of N.Y.*,
  2014 WL 4626071 (S.D.N.Y. Sept. 15, 2014)...............................................................17

*Hugo Boss Fashions, Inc.* v. *Fed. Ins. Co.*,
  252 F.3d 608 (2d Cir. 2001)....................................................................................16, 21

*J.P. Morgan Inv. Mgmt. Inc.* v. *AmCash Grp., LLC*,
  106 A.D.3d 559 (2013) .............................................................................................16, 20

*Kaung* v. *Bd. of Mgrs. of Biltmore Towers Condo. Ass'n*,
  22 Misc. 3d 854 (Sup. Ct. Westchester Cty. 2008).................................................16

*Kelly* v. *Downing*,
  42 N.Y. 71 (1870) .............................................................................................................2

*Kelly* v. *Honeywell Int'l, Inc.*,
  933 F.3d 173 (2d Cir. 2019)...........................................................................................17

*Law Debenture Tr. Co. of N.Y.* v. *Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010)............................................................................... *passim*

*Lucente* v. *IBM*,
  310 F.3d 243 (2d Cir. 2002)...........................................................................................15

*Nutrilab, Inc.* v. *Schweiker*,
  713 F.2d 335 (7th Cir. 1983) ........................................................................................24

*Nycal Corp.* v. *Inoco PLC*,
  988 F. Supp. 296 (S.D.N.Y. 1997)  ...............................................................................17

*S. Coal Corp.* v. *Drummond Coal Sales, Inc.*,
  28 F.4th 1334 (11th Cir. 2022) ......................................................................................16

*Schron* v. *Troutman Sanders LLP*,
  20 N.Y.3d 430 (2013) .....................................................................................................15

*Sleght* v. *Hartshorne*,
  2 Johns. 531 (N.Y. 1807)..................................................................................................2

*Tchrs. Ins. & Annuity Ass'n of Am.* v. *CRIIMI MAE Servs. Ltd. P'ship*,
    763 F. Supp. 2d 665 (S.D.N.Y. 2011) ...................................................................17

*Time Warner Ent. Co., L.P.* v. *Brustowsky*,
    221 A.D.2d 268 (2d Dep't 1995) .........................................................................29

*U.S. Bank Nat'l Ass'n* v. *DLJ Mortg. Cap., Inc.*,
    2022 WL 801440 (N.Y. Mar. 17, 2022) ..................................................................2

*United States* v. *Balde*,
    943 F.3d 73 (2d Cir. 2019) ....................................................................................4

*United States* v. *Gotti*,
    771 F.Supp. 535 (E.D.N.Y.1991) .........................................................................30

*United States* v. *Ten Cartons, Ener-B Nasal Gel*,
    888 F. Supp. 381 (E.D.N.Y. 1995) .......................................................................24

**Statutes**

21 U.S.C. § 321(f) ........................................................................................................24

26 U.S.C. § 5052(a) .............................................................................21, 22, 24, 29

26 U.S.C. § 5402(a) ....................................................................................................23

27 U.S.C. § 211(a)(7) .....................................................................................22, 28

37 Okla. St. Ann. § 506(5) (2013) .............................................................................29

Ark. Code Ann. § 3-5-202(1) ....................................................................................28

Cal. Bus. & Prof. Code § 23006 (2013) ...................................................................29

Del. Code Ann. tit. 4, § 101(5) ..................................................................................28

**Regulations**

27 C.F.R. § 25.11 ...............................................................................................21, 29

27 C.F.R. § 25.15 ........................................................................................................21

**Other Authorities**

5 Corbin on Contracts § 24.26 ...................................................................................29

# GLOSSARY

**ABA:** Alternative Beverage Alcohol

**ABI:** Anheuser-Busch InBev SA/NV

**CBI:** Constellation Brands, Inc.

**CBP:** United States Customs and Border Protection

**Constellation:** Defendants CB Brand Strategies LLC, Crown Imports LLC, and Compañía Cervecera de Coahuila, S. de R.L. de C.V.

**CHS:** Corona Hard Seltzer

**Corona Hard Seltzer Products:** Corona Hard Seltzer, Corona Hard Seltzer Limonada, Corona Hard Seltzer Seltzerita, Modelo Ranch Water

**DOJ:** United States Department of Justice

**Ex.:** Exhibit to the August 5, 2022 Declaration of Marc De Leeuw

**FMB:** Flavored Malt Beverage

**IRC:** Internal Revenue Code

**Modelo:** Plaintiffs Cervecería Modelo de México, S. de R.L. de C.V. and Trademarks Grupo Modelo, S. de R.L. de C.V.

**SEC:** United States Securities Exchange Commission

**SOF:** Modelo's Rule 56.1 Statement of Undisputed Material Facts, dated August 5, 2022

**Sublicense:** Amended and Restated Sub-License Agreement, dated June 7, 2013 (Ex. 124)

**TTB:** Alcohol and Tobacco Tax and Trade Bureau

## PRELIMINARY STATEMENT

This is a simple case about what is a beer, and what is not. Dictionaries consistently define beer as an alcoholic beverage made with malted grain ("malt"), water, and yeast, and flavored with hops.[1]  In 2020, Constellation launched an alcohol beverage lacking beer's essential characteristics:  a "Corona Hard Seltzer" made without any malt or hops flavoring.  In fact, Constellation wanted its Corona Hard Seltzer to be different from a Corona beer, a point conceded by the executive who launched the product:  ████████████████████████████████ ████████████████████████████████████████████████████ (SOF ¶ 58; ████████████████████████████████) As one Constellation expert testified, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ )

A malt-free, no-hops-flavor drink emulating a vodka and soda is not a beer, nor is it some version of a beer.  Fundamentally, Constellation's legal position is an assault on New York

---

[1]     *See* SOF ¶ 4; Ex. 9 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2004)) (defining "beer" as an "alcoholic beverage usually made from malted cereal grains (as barley), flavored with hops, and brewed by slow fermentation" ); Ex. 10 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2014)) (same); Ex. 11 (WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)) (defining "beer" as "a malted and hopped somewhat bitter alcoholic beverage"); Ex. 12 (RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001)) (defining "beer" as "an alcoholic beverage made by brewing and fermentation from cereals, usually malted barley, and flavored with hops and the like for a slightly bitter taste"); Ex. 13 (WEBSTER'S II NEW COLLEGE DICTIONARY (1999)) (defining "beer" as "[a] fermented alcoholic beverage brewed from malt and flavored with hops"); Ex. 14 (WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (1983)) (defining "beer" as "a mildly alcoholic drink made from any farinaceous grain, but generally from barley, which is first malted and ground, and its fermentable substance then extracted by hot water.  This extract or infusion is boiled in caldrons, and hops or some other substance of an agreeable bitterness added.  The liquor is then allowed to ferment in vats"); Ex. 15 (AMERICAN HERITAGE DICTIONARY (5th ed. 2011)) (defining "beer" as "a fermented alcoholic beverage brewed from malt and flavored with hops"); Ex. 16 (NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010)) (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavored with hops"); Ex. 17 (THE OXFORD COMPACT ENGLISH DICTIONARY (2nd ed. rev. 2003)) (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavoured with hops"); Ex. 21 (DICTIONARY.COM) (defining "beer" as "an alcoholic beverage made by brewing and fermentation from cereals, usually malted barley, and flavored with hops and the like for a slightly bitter taste"); Ex. 20 (GOOGLE DICTIONARY, Powered by Oxford Languages) (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavored with hops").

law.  For centuries, New York law has required that courts interpret a contract term according to its "plain and ordinary meaning," which means enlisting dictionary definitions.[2]  Because Constellation's products are indisputably not plain-meaning "beers," summary judgment on liability is appropriate.

In 2013, Constellation and Modelo executed the Sublicense that provided Constellation with an irrevocable, perpetual license to use certain Modelo U.S. trademarks (including for the Corona, Modelo, Victoria, and Pacifico brands) for the sale and marketing of "Beer," a defined term.  Under the Sublicense, "Beer" is defined to mean "beer, ale, porter, stout, malt beverages and versions and combinations of the foregoing, including non-alcoholic versions of any of the foregoing."  (SOF ¶¶ 2, 34; Ex. 124 (Sublicense) § 1.1 at 4.)  Constellation concedes that its hard seltzer is not a plain-meaning beer, ale, porter, stout, or malt beverage.[3]  And although Constellation nominally argues that its hard seltzer is a malt-free, no-hops-flavor "version" of a "beer" or "malt beverage," its own definition of "version" dooms the argument: Constellation's dictionary definitions of "version" confirm it is a "a particular form of something differing in certain respects from an earlier form or other forms of the same type of thing."[4]  Because the malt-free, no-hops-flavor Corona Hard Seltzer is neither a "beer" nor a "malt beverage," it cannot be a

---

[2]        In the Second Circuit, "it is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract."  *10 Elliott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011). *See also Kelly* v. *Downing*, 42 N.Y. 71, 78 (1870) ("the ordinary course of construction [is] that words are to receive their plain and ordinary meaning"); *Sleght* v. *Hartshorne*, 2 Johns. 531, 540 (N.Y. 1807) ("[I]t is now considered as a settled rule, that no parol proof is to be admitted to vary, impugn or explain a written contract of plain and obvious meaning."); *U.S. Bank Nat'l Ass'n* v. *DLJ Mortg. Cap., Inc.*, 2022 WL 801440, at *1 (N.Y. Mar. 17, 2022) ("Applying well-settled principles of contract interpretation and giving effect to the plain meaning of the contract language . . . ."); *Goldman Sachs Lending Partners, LLC* v. *High River Ltd. P'ship*, 34 Misc. 3d 1209(A), *7 (Sup. Ct. N.Y. Cnty. 2011) ("plain and ordinary means as defined by a dictionary").

[3]        SOF ¶¶ 10-11; Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32-33, 37-38; Ex. 126 (ECF No. 29 (Defs.' Mot. to Dismiss Reply)) at 4.

[4]        SOF ¶¶ 6, 12; Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32 (quoting NEW OXFORD DICTIONARY 2055 (1st ed. 1998)); *see also id.* ("A form or variant of a type or original" (quoting MERRIAM-WEBSTER'S DICTIONARY 1390 (11th ed. 2003))).

version ("particular form") of either.

Constellation breached the terms of the Sublicense by launching a product outside of its scope.  Constellation's defense is that dictionaries have no place in answering what a "beer" is, and raises two (facially and legally inconsistent) theories for why its hard seltzers somehow fit within the Sublicense definition of "Beer."   Both fail as a matter of law, as demonstrated by Constellation's repeated admissions.

*First*, Constellation urges this Court to expand the Sublicense's scope by finding that "Beer" silently imports the statutory definition of "beer" from the Internal Revenue Code ("IRC") and certain regulations promulgated under the IRC (none of which is *anywhere* identified in the Sublicense).  But this invites error:  The Sublicense shows that the parties deliberately *rejected* the importation of the IRC into the definition of "Beer."  These sophisticated parties *knowingly* excluded the portions of the IRC definition of "beer" that are critical to Constellation's malt-free, no-hops-flavor defense.  The Sublicense's definition of "Beer" starts with the same four words as the IRC definition, but then takes a sharp left turn, excluding the crucial language that would allow substitutes for malt central to Constellation's defense.[5]   Further, by including a "construction" clause that set forth how statutory provisions (like the IRC) could be incorporated in the Sublicense, along with an "entire agreement" clause, the parties underscored that IRC rejection and selected New York law, which directs courts to interpret contracts in light of "plain and ordinary meaning."

To be sure, New York law provides a narrow exception to the plain-meaning rule, but only where a term of art is "general, uniform and unvarying" in law or industry.  *Law*

---

[5] ████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
(SOF ¶ 18; ███████████████████████████████████)

*Debenture Tr. Co. of N.Y.* v. *Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010).  But the IRC definition of "beer" is not "general, uniform and unvarying" in either law or industry.  To the contrary, both Constellation ███████████████ *concede* that the IRC definition is *not* uniform in the regulatory backdrop or industry,[6] and Constellation itself has repeatedly defined "beer" at odds with the IRC definition where accuracy matters (including in SEC Form 8-Ks, an answer filed in federal court, and two U.S. trademark applications).  Even the IRC itself  proves there is no "uniformity":  *The IRC's definition of "beer" uses the undefined word "beer" as one of its parts*, indicating that Congress believed that the word "beer" has a common and ordinary meaning.[7]

> *Second*, Constellation makes a separate argument to expand the Sublicense scope based on alleged "industry custom"—but that argument kills *both* of its defenses.  Constellation says that "Corona Hard Seltzer and Modelo Ranch Water are considered [to be within] a segment of the beer category, and are treated as beer products by participants in the U.S. alcohol beverage industry."  (Ex. 25 (3/18/22 Kallenberger Rpt.) ¶ 19.)  The scope of Constellation's "beer category" though is *different* from the IRC definition of "beer."  In other words, because "beer" in the IRC is different from Constellation's "beer" in "beer category," neither can be "uniform" or "unvarying" as required to depart from plain meaning.  Further, the Sublicense directly establishes that any "Beer" only refers to the *liquid* placed in a "Container," not the "segment" of the "beer industry." ████████████████████████████████████████████████

---

[6]      SOF ¶¶ 66, 72; Ex. 126 (ECF No. 29 (Defs.' Mot. to Dismiss Reply)) at 9; ████████████
████████████

[7]      The same could be said of the dozens of state legislatures who, in their statutory or regulatory definitions of "beer" often use "beer" without any definition.  *See infra* pp. 28-29; App'x A (listing state statutes that, among other things, include plain-meaning "beer" in their definitions).  In interpreting statutes like these and the IRC, courts give effect to the plain meaning of the words used.  *See, e.g.*, *United States* v. *Balde*, 943 F.3d 73, 81 (2d Cir. 2019) (rejecting interpretation of statute that "would invert the normal plain meaning rule of statutory interpretation by substituting a technical term-of-art meaning for the ordinary meaning of a straightforward English word").

████████████████████████ (SOF ¶ 77; ████████████████████████),

making this argument legally irrelevant.  *Law Debenture*, 595 F.3d at 466.

The plain meaning of the Sublicense is, under New York law, dispositive here. Constellation's suggestion that plain meaning should be ignored is not only wrong as a matter of law, but fatally flawed because Constellation offers no *reasonable* competing interpretation.  Even if this Court could find some ambiguity, summary judgment would still be appropriate: Undisputed evidence demonstrates that Constellation's interpretation distorts the parties' intent as *actually expressed* in negotiations. ████████████████████████

████████████████████████ (SOF ¶ 20;

████) Following that rejection, Constellation's conduct confirmed the rejection of the IRC definition:  In two Form 8-K SEC filings, Constellation made clear that the definition of "Beer" was restricted to "malt-based" beverages, which fundamentally differs from the IRC definition.[8] Moreover, at the same time that Constellation was negotiating changes to the Sublicense, it *admitted* in an answer filed in the U.S. District Court—in response to the DOJ lawsuit that gave rise to the Sublicense[9]—that that "beer" is "alcoholic beverage[] usually made from a malted cereal grain, flavored with hops, and brewed via a process of fermentation."[10]  Nowhere did Constellation put anyone on notice that it had a definition of "Beer" or "beer" that was co-extensive with the IRC or some other industry categorization, to the exclusion of plain meaning. ████████████████████████

████████████████████████

---

[8]      SOF ¶¶ 22-23; Ex. 122 (Constellation 7/17/2006 Form 8-K) at 5; Ex. 123 (Constellation 1/02/2007 Form 8-K) at 6.

[9]      The DOJ sued to enjoin the merger of ABI and Modelo.  In response to that lawsuit, Constellation filed an answer and the parties subsequently settled with the entry of a Final Judgment and multiple agreements including the Sublicense.  *See* SOF ¶¶ 25-32; Ex. 104 (Constellation Motion to Intervene and Proposed Answer).

[10]     SOF ¶ 27; Ex. 104 (Constellation Motion to Intervene and Proposed Answer) at 9.

███████████████████████████████████████████

██████[11]

New York law requires this Court to decide this case based on the undisputed plain meaning of the parties' unambiguous agreement. On the undisputed facts, the plain meaning warrants granting Modelo summary judgment. But even if the Court were to conclude that the Sublicense is ambiguous, no reasonable jury could rule in favor of Constellation.

## THE UNDISPUTED FACTS

### A.    The Parties

For nearly a century, Modelo has created many of the most beloved Mexican-style beers sold around the world, including Corona Extra, Corona Light, Modelo Especial, and Negra Modelo. (Ex. 67 (Press Release) at 278.) Modelo owns the globally recognized trademarks associated with beer brands including Modelo, Corona, Pacifico, and Victoria. (SOF ¶¶ 3, 33.)

Constellation began as a bulk wine producer in 1945. (Ex. 101.) Constellation eventually acquired various other brands, including spirits and beers. In 2006, Constellation and Modelo agreed to create a joint venture, to be known as Crown Imports LLC ("Crown"), to distribute Modelo branded beers in the United States. (SOF ¶ 13.)

### B.    In 2006 and 2007, Modelo and Constellation Negotiated Joint Venture Agreements to Import Modelo "Beer," Which Constellation Publicly Represented Was Limited to "Malt-Based" Beverages.

The definition of "Beer" at issue originated in 2006, with the Crown joint venture that was responsible for importing and distributing Modelo "Beer" in the U.S.[12] (SOF ¶¶ 13, 37.) Constellation's attorneys prepared the first draft of the agreements to form a joint venture (the "JV

---

[11]    SOF ¶¶ 61-62; ████████████████████████████████████.

[12]    This negotiation history is only relevant to the extent that the Court deems the Sublicense's definition of "Beer" to be ambiguous. *See Greenfield* v. *Phillies Recs., Inc.*, 98 N.Y.2d 562, 569 (2002) ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous. . . .").

Agreements") and provided those to Modelo's counsel in April 2006.  (SOF ¶ 14.)  That draft

defined "Beer" as "beer, ale, porter, stout, malt beverages, and any other versions or combinations

of the foregoing, including, without limitation, non-alcoholic versions of any of the foregoing."

(*Id*.) ███████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████ (SOF ¶ 15.) ██████████████████████████████

██████████████████████████████████████████████████████

████████████████████ ████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

      ██████████████████████████████████████████
      ██████████████████████████████████████████
      ██████████████████████████████████████████
      ██████████████████████████████████████████
      ██████████████████████████████████████████
   ████████ ████

            ████████████████████████████████████████████████████

---

[13] ███████████████████████████████████ (*See, e.g.*, SOF ¶ 16;
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████ █ ██████████████████████████
████████████████████████████████████████ (*See, e.g.*, SOF ¶ 17;
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

[14]      *Compare* Ex. 119 (April 2006 Draft JV Agreements) at 217 *with* Ex. 3 (IRC Definition of Beer).

███████████████████████████████████████████████████

████████ (SOF ¶ 19.) ████████████████████████████████

███████████████████████████████████████████████████

████████████████ (*Id.* ¶ 20.) ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ (*Id.*)

      █████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████ (SOF ¶ 20.)

      █████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ (SOF ¶ 21.) ████████████████████████

███████████████████████████████████████████████████

██████████████ (*Id.*) █████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ (*Id* ¶ 22.)[15]  Constellation

---

[15]     Specifically, the Form 8-K stated that the parties would "execute and deliver a limited liability agreement for the Company" ("Proposed LLC Agreement") that would contain a non-compete clause prohibiting the parties to the joint venture or their affiliates from competing with Crown in any business that "imports or distributes Beer."  (SOF ¶ 22; Ex. 121 (Agreement to Establish JV) at § 3.3(b) of Ex. B.)  In its Form 8-K, Constellation stated that the Proposed LLC Agreement "will not restrict" the joint venture parties or their affiliates "from engaging in or having an interest

filed the Form 8-K with the United States Securities Exchange Commission (the "SEC") on July 17, 2006, and Constellation and Modelo then worked to close on the JV deal.  (*Id.*)  After the parties negotiated and signed the full slate of JV Agreements, on January 2, 2007, Constellation filed with the SEC a *second* Form 8-K, once again confirming that the definition of "Beer" was confined to "malt-based" beverages.  (*Id.* ¶ 23.)  When presented in this lawsuit with this disparity, Constellation now claims that the limitation to "malt-based" beverages in its SEC filings were "wrong," but has *never* amended its Form 8-Ks.  (*Id.* ¶ 24.)

### C.    To Obtain DOJ Approval of the ABI-Modelo Merger, Modelo in 2013 Granted Constellation a Sublicense to Sell "Beer" in the U.S. Under the Modelo Brands, Using the Same Definition of "Beer" From the Joint Venture Agreements.

In 2012, Anheuser-Busch InBev SA/NV ("ABI") announced that it was acquiring the shares it did not own in Grupo Modelo.  (*Id.* ¶ 25.)  The DOJ expressed concern that the deal could harm competition and, ███████████████████████████, the DOJ filed suit to enjoin the proposed merger.  (*Id.* ¶ 26.)  In its complaint, the DOJ alleged that the proposed merger would hinder competition in the product market for "beer," which it defined as "alcoholic beverages usually made from a malted cereal grain, flavored with hops, and brewed via a process of fermentation."  (SOF ¶ 27; Ex. 102 (DOJ Complaint) at 8.)  In fact, in connection with the proposed resolution of the DOJ's complaint, Constellation intervened in the action and filed an answer, where it *admitted* to the DOJ's definition of "beer" quoted above. (SOF ¶ 27; Ex. 104 (Constellation Motion to Intervene and Proposed Answer) at 9.)

ABI, Modelo, and Constellation, in consultation with the DOJ, ultimately proceeded with the merger while addressing the DOJ's competition concerns.  (SOF ¶ 28.)  The

---

in the production, sale or distribution of any alcoholic beverage that is not ***malt-based***, an ale, a porter or a stout." (SOF ¶ 22; Ex. 122 (Constellation 7/17/2006 Form 8-K) at 5 (emphasis added).)  In other words, Constellation confirmed that the definition of "Beer" excluded products that were "not malt-based."

final remedy had Modelo (i) sell a new, state-of-the-art Modelo brewery to Constellation, (ii) grant a perpetual trademark sublicense to Constellation for use of the Modelo brands on "Beer" in the U.S., and (iii) sell Modelo's stake in the Crown JV to Constellation.  (*See* SOF ¶ 29; Ex. 111 (Final Judgment) at 10.)   In the Sublicense, Modelo provided Constellation with a license to use trademarks and recipes for the products covered by the agreement, all of which were beers made with malt and flavored with hops.  (SOF ¶¶ 29, 33.)   The Sublicense also included rights for Constellation to innovate by modifying existing recipes and creating new ones, but in all cases, the right to innovate was limited to "Beer," which was defined the same as in the 2006/2007 Joint Venture Agreement.[16]  (SOF ¶¶ 35-37.)  The court-ordered Final Judgment reflected the resolution of the DOJ's lawsuit.  (SOF ¶ 32.)

### D.    Constellation Launched—With Modelo's Support—New Innovations Using Modelo's Brands That Compete Directly With ABI Products.

Following execution of the Sublicense, Modelo and Constellation maintained a relatively cooperative relationship.[17]  Constellation also exercised its right under the Sublicense to innovate, creating new products using the Modelo brands, with Modelo's support.  For example, in 2018, Constellation launched Corona Premier, a low-carb, light lager, which competes directly against ABI products like Michelob Ultra.  (SOF ¶ 44.)  And in 2019, Constellation launched

---

[16]    The Sublicense definition of "Beer" had a minor change from the JV Agreements, ███████████ ████████████████████████████████████  In the latter, "Beer" was as "beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including ***without limitation***, non-alcoholic versions of any of the foregoing." (Ex. 121 (Agreement to Establish JV) § 1.1 at 2 (emphasis added).)  The Sublicense definition of "Beer" cut the words "without limitation," but separately defined the term "including" to mean "include, without limitation."  (Ex. 124 (Sublicense) § 1.2(a)(v) at 10.)

[17]    SOF ¶ 43.  ████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████

without objection Corona Refresca, a flavored malt beverage.  (*Id.*)

   **E.    Seeking to Capitalize on the Explosive Growth of Hard Seltzers,
          Constellation Changed Its Decade-Old Understanding of the Sublicense and
          Launched a Sugar-Based Hard Seltzer Under the Corona Brand in 2020.**

   "Hard seltzers" did not exist at the time the Sublicense was negotiated.  By 2018,

the popularity of a new alcoholic beverage, sold as "hard seltzers" exploded, ███████

██████████████████ (SOF ¶ 45.)  In June 2018, Constellation tried launching its first hard seltzer,

using the "Svedka" vodka brand.  (*Id.* ¶ 46.)  Svedka seltzer quickly failed.  (*Id.*)

   Constellation next turned to the Corona brand to break into the highly competitive

hard seltzer market.  (SOF ¶ 47.)[18] ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ (SOF ¶ 48.) ███████████

████████████████████████████████████████████████

███████████████████ (*Id.* ¶ 49.) █████████████████████

████████████████████████████████████████████████

(*Id.*) █████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ (*Id.* ¶ 50.)

   In contrast with Constellation's transparency with prior products, Constellation

shrouded Corona Hard Seltzer's ingredients in mystery.  ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[18] Constellation's CEO Bill Newlands explained that Constellation "decided to put the Corona brand name on [their] new seltzer" because "Corona carries unbelievably strong brand equity . . . [and] we felt that if we're going to enter this category, we would do it with a brand that had deep trust with the consumer."  (SOF ¶ 47; Ex. 82 (Constellation's Q2 2020 Earnings Call Tr.) at 4, 17.)

████████████████████ (SOF ¶¶ 51-52.)   Constellation's trademark application described its intent to use the "Corona Hard Seltzer" mark as follows:  "Alcoholic beverages, ***except beer***; Hard seltzer; Flavored ***malt-based*** alcoholic beverages, ***excluding beer***."  (*Id.* ¶ 52.)

████████████████████████████████████████

████████████████.[19]  (SOF ¶¶ 49, 53.)

When Constellation actually launched Corona Hard Seltzer in February 2020 (SOF ¶ 54), Modelo for the first time learned that CHS was neither a beer nor a malt beverage.  Instead, it was a seltzer, lacking malt or hops flavor, with its alcohol created from a sugar base.  After evaluating its rights (during which period the COVID-19 pandemic vastly disrupted Modelo's operations), Modelo gave notice to Constellation in August 2020 that Constellation was in breach of the Sublicense.  (SOF ¶ 59.)

## F.    The Contrasts Between Beer and Sugar-Based Hard Seltzer

Brewing beer starts with "malting" (*i.e.*, soaking, germinating, and drying) a grain, usually barley.  (SOF ¶ 5;  Ex. 24 (Shellhammer Rpt.) ¶¶ 15, 24; Ex. 23 (Daniels Rpt.) ¶¶ 27-29.)  Malting releases enzymes that break down the starches in the grain into simpler "fermentable sugars" that are consumed by the yeast to make the alcohol.  (Ex. 24 (Shellhammer Rpt.) ¶¶ 14-19, 24; Ex. 23 (Daniels Rpt.) ¶ 31.)  During malting, other grain-derived elements are extracted that contribute to beer's flavor, color, mouthfeel, and foam.  (Ex. 24 (Shellhammer Rpt.) ¶¶ 14, 24, 57; Ex. 23 (Daniels Rpt.) ¶¶ 27, 33, 35-36, 39.)  The malted grain is then mixed with water— called the "wort"—and then boiled.  (Ex. 24 (Shellhammer Rpt.) ¶ 25.)  During boiling, hops are added, which contributes aroma, flavor (usually bitterness), and other properties of beer.  (Ex. 24

---

[19]    Constellation even amended that trademark description months later, but still described the product as "Hard Seltzer; Flavored ***malt-based*** alcoholic beverages, ***excluding beers***."  (SOF ¶ 54; Ex. 44 (CORONA HARD SELTZER Trademark Application Amendment) at 806 (emphasis added).)

(Shellhammer Rpt.) ¶¶ 25, 35-37; Ex. 23 (Daniels Rpt.) ¶¶ 37-38.)  After boiling, certain solids like spent hops are removed from the wort, the wort is cooled, and yeast is added to convert fermentable sugars into alcohol, carbon dioxide, and yeast-derived flavor compounds.  (Ex. 23 (Shellhammer Rpt.) ¶ 25.)  Post-fermentation, the liquid is usually filtered to remove yeast, bacteria, and/or haze.  (*Id.* ¶¶ 27-29.)

In contrast, █████████████████████████████████████

██████████████████████████████ (SOF ¶¶ 8, 49; ███████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████ (SOF ¶ 9.) █████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ ███████████

████████████████████████████████████████████████████████████████████

██████████████████████████████ (*Id.* ¶¶ 9 n.4, 57.) ███████████████████

██████████████████████████████ (*Id.*) █████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ Neither malt, nor hops, nor hop acid is identified as an ingredient of Corona Hard Seltzer.  (SOF ¶¶ 9, 56.)

---

[20] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

**G.** ██████████████████████████████████
██████████████████████████████████████
████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████ (SOF ¶ 60; ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████ (SOF ¶ 61.) ████

██████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████

(SOF ¶ 62; ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████ SOF ¶ 63.) ███████████████████████████████████

██████████████████████████████████████████████

████████████ *(Id.* ¶ 64.)

**H.    Even After This Action Was Brought** ████████████████
████████████████**, Constellation Introduced New Sugar-Based Products.**

Undeterred by either the commencement of this action, ████████████████

████████████████████, Constellation has pushed forward.  In April 2021, Constellation

moved to dismiss Modelo's Complaint.  (ECF No. 17.)  The Court denied the motion from the bench in July 2021, but stated that it "could imagine records that would be very strong one way or the other" on summary judgment.  (ECF No. 37 at 37:3-4.) Since that ruling, Constellation has launched Corona Hard Seltzer Limonada, Corona Hard Seltzer Seltzerita, and Modelo Ranch Water, none of which are made with malt nor flavored with hops.[21]

## THE STANDARDS ON THIS MOTION

### A.    New York Law Requires a Focus on Plain and Ordinary Meaning.

The first step in interpreting a contract is for this Court to determine if the contract is ambiguous—*i.e.*, whether "on its face it is reasonably susceptible of more than one interpretation."  *China Privatization Fund (Del), L.P.* v. *Galaxy Ent. Grp. Ltd.*, 95 A.D.3d 769, 770 (1st Dep't 2012).  To make this threshold determination, courts examine (i) "the context of the entire integrated agreement," *Lucente* v. *IBM*, 310 F.3d 243, 257 (2d Cir. 2002), and (ii) "the words and phrases used by the parties" according to "their plain meaning," *Brooke Grp. Ltd.* v. *JCH Syndicate 488*, 87 N.Y.2d 530, 663 (1996).  "Ambiguity must be determined on the face of the contract; extrinsic evidence may not be introduced in an attempt to create ambiguity," *Charron* v. *Sallyport Glob. Holdings, Inc.*, 2014 WL 7336463, at *16 (S.D.N.Y. Dec. 24, 2014).[22]  Neither party here contends the Sublicense is ambiguous.[23]

If a contract is "subject to only one reasonable interpretation," then as a matter of law it is unambiguous and "must be enforced according to the plain meaning of the language

---

[21]    SOF ¶¶ 7-9. ████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

[22]    *See also Schron* v. *Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013) ("Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract."); *Consarc Corp.* v. *Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) ("[E]xtrinsic evidence may not be used to create an ambiguity in an otherwise unambiguous agreement.").

[23]    *See* Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss) at 18, 20-21); Ex. 130 (ECF No. 104 (Third Am. Compl.) ¶ 11).

chosen by the contracting parties." *See Goat Fashion Ltd.* v. *1661, Inc.*, 2020 WL 5758917, at \*6 (S.D.N.Y. Sept. 28, 2020). "[T]he interpretation of [contract's] provisions in accordance with their plain meaning is a matter of law for the Court." *Kaung* v. *Bd. of Mgrs. of Biltmore Towers Condo. Ass'n*, 22 Misc. 3d 854, 869 (Sup. Ct. Westchester Cty. 2008), *aff'd*, 70 A.D.3d 1004 (2d Dep't 2010). And, as New York courts have explained, "plain and ordinary means as defined by a dictionary." *Goldman Sachs Lending Partners*, 34 Misc. 3d 1209(A), \*7; *see 10 Ellicott Square Ct.*, 634 F.3d at 120 ("It is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract.").

A limited exception to this "plain meaning rule" exists, but it is constrained to instances where a "potentially vague" contractual term has a meaning that is "well-established in the case law or industry." *Hugo Boss Fashions, Inc.* v. *Fed. Ins. Co.*, 252 F.3d 608, 617, 620 (2d Cir. 2001).[24] To read an extra-contractual definition into a contract, it must be "general, uniform and unvarying" within a body of law or industry. *Law Debenture Tr. Co. of N.Y.* v. *Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010); *see In re AXA Equitable Life Ins. Co. COI Litig.*, 2022 WL 976266, at \*9 (S.D.N.Y. Mar. 31, 2022). While the extra-contractual definition does not require "complete unanimity" in law or industry, its acceptance must be "overwhelming" and shared by the "vast majority" of courts or industry participants. *Beazley Ins. Co., Inc.* v. *ACE Am. Ins. Co.*, 880 F.3d 64, 69 (2d Cir. 2018); *see Hugo Boss*, 252 F.3d 619 & n.8 (same); *J.P. Morgan Inv. Mgmt. Inc.* v. *AmCash Grp., LLC*, 106 A.D.3d 559, 559-60 (2013) (use of extra-contractual definition appropriate only where "there is no question that the intention of the parties was to follow, rather than depart from, the particular industry custom at issue").

---

[24]    *S. Coal Corp.* v. *Drummond Coal Sales, Inc.*, 28 F.4th 1334, 1342 (11th Cir. 2022) (applying New York law and describing *Hugo Boss* as the "exception" to the ordinary rule on contractual interpretation).

If the court makes a finding of ambiguity, "extrinsic evidence of the parties' intent may be looked to as an aid to construing the contractual language," *Kelly* v. *Honeywell Int'l, Inc.*, 933 F.3d 173, 185 (2d Cir. 2019), but only if the evidence speaks to the "mutual intent" of the parties, *Faulkner* v. *Nat'l Geographic Soc.*, 452 F. Supp. 2d 369, 379 n.51 (S.D.N.Y. 2006) (Kaplan, J.). Unexpressed statements of intent are irrelevant: "[O]ne party's subjective interpretation of [a] contract, which was not communicated to the other party until litigation commenced, cannot be used to establish that [the] parties had such intent and understanding when they entered into the contract." *Id.*

**B.    Summary Judgment Is Appropriate in Contract Cases.**

"Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Tchrs. Ins. & Annuity Ass'n of Am.* v. *CRIIMI MAE Servs. Ltd. P'ship*, 763 F. Supp. 2d 665, 668 (S.D.N.Y. 2011) (Kaplan, J.). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hayes* v. *City of N.Y.*, 2014 WL 4626071, at *3 (S.D.N.Y. Sept. 15, 2014) (Kaplan, J.).

"Summary judgment on a contract interpretation dispute is clearly permissible when the language of the contract provision in question is unambiguous." *Nycal Corp.* v. *Inoco PLC*, 988 F. Supp. 296, 298 (S.D.N.Y. 1997) (Kaplan, J.). It is also appropriate where the extrinsic evidence on an ambiguous contract "is so one-sided that it does not create a genuine issue of material fact." *Id.*; *see Compagnie Financiere de CIC et de L'Union Europeenne* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 159 (2d Cir. 2000) (Sotomayor, J.).

-17-

## ARGUMENT

The undisputed evidence shows that Constellation's hard seltzer products are not a "Beer" as defined in the Sublicense and Constellation has thereby exceeded the scope of its rights. Modelo is entitled to partial summary judgment on its claims for breach of contract and trademark infringement.[25]

## I.    CORONA HARD SELTZER IS NOT A "BEER," "MALT BEVERAGE," OR "VERSION" OF EITHER UNDER THE PLAIN MEANING OF THOSE WORDS.

To qualify as a "Beer" under the Sublicense, Constellation's Corona Hard Seltzer Products must be a "beer," a "malt beverage," or a "version" of either.  (SOF ¶ 2.)  Importantly, it is ***undisputed*** that sugar-based hard seltzers are neither "beers" nor "malt beverages" within the plain meaning of those terms.  (SOF ¶¶ 10-11.)  And while Constellation contends that its products are "versions" of a "beer" or "malt beverage" (Ex. 26 (ECF No. 29 (Defs.' Mot. to Dismiss Reply) at 4), the parties agree on the plain and ordinary meaning of "version"—a "particular form" or "type" of something (SOF ¶ 6)—and Constellation's contention is flatly inconsistent with that undisputed meaning.  That alone is all that is required here.

***Beer.***  New York courts derive the plain meaning of terms from dictionaries,[26] which define "beer" as an alcoholic beverage made with malted grain, water and yeast, and flavored with hops.[27]  This was also exactly the definition adopted by the only court to have

---

[25]    *See* Ex. 124 (Sublicense) § 2.12 at 21 (providing that Constellation breaches the Sublicense by using the licensed trademarks on products that are not "Beer"); *E.G.L. Gem Lab Ltd.* v. *Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 293 (S.D.N.Y. 2000) (Kaplan, J.) ("sales of goods . . . under [a] license mark which are outside the area of consent granted in the license are regarded as infringements of the mark"), *aff'd*, 4 F. App'x 81 (2d Cir. 2001).

[26]    *See 10 Elicott Square Ct.*, 634 F.3d at 120 ("It is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract."); *Goldman Sachs Lending Partners*, 34 Misc. 3d 1209(A), *7 ("plain and ordinary means as defined by a dictionary").

[27]    *See* SOF ¶ 4; *supra* p. 1 n.1.

considered the interpretation of "beer" in a contract (to Modelo's knowledge), holding that this definition was the "plain, ordinary, fair, usual, and popular sense of 'beer.'"  *Chalet Liquors, Inc.* v. *Supervalu, Inc.*, 2004 WL 885356, at *5 (Minn. Ct. App. Apr. 27, 2004).  Because it is undisputed that Constellation's sugar-based hard seltzers are made without malt, they are not "beer" within the plain meaning of that term.[28]

      *Malt Beverage.*  A malt beverage, quite plainly, is a beverage made with malt. (SOF ¶ 5.)  It is uncontested that Constellation's products are made without malt.  (*Id.* ¶ 8.)

      *Version.*  The parties agree on the definition of "version" (taken from a dictionary): It is "a particular form of something differing in certain respects from an earlier form or other forms of the same type of thing."  (*Id.* ¶ 9.)  An essential part of this definition is that all "versions" must be a "form" or "type" of the particular "thing."  As an example, there are many different versions of a car—like the various trims of the Honda Civic, each with different features.  A Honda motorcycle, meanwhile, is not a "version" of a car.  In some abstract sense, a motorcycle is "similar" to a car, in that it is a mode of transportation on wheels with an engine, but to call it a "version" of a car does violence to the word.

      The same common-sense logic applies here.  A "version" of a "beer" must still be a type of "beer," and a "version" of a "malt beverage" must still be a type of "malt beverage."  For instance, there are hundreds of versions of beers, from light lagers to dark ales, which vary in terms of color, flavor, and aroma—but which all share the common features of being made with malt,

---

[28]     Constellation's sugar-based hard seltzers are not flavored with hops either, despite Constellation's tortured argument to the contrary.  It is undisputed that the at-issue sugar-based hard seltzers ████████████ ████████████████████████████████ (*See* SOF ¶ 9.)  Nevertheless, according to Constellation, ████████████████████ ███████████████████████████████████████████████████  This argument defies common sense— ███████████████████████████████████████████████  However, the Court need not reach this issue given the parties' agreement that Constellation's products lack malt and therefore do not fit within the plain meaning of "beer." (SOF ¶ 8.)

water, yeast and flavored with hops.  While hard seltzer in some abstract sense is "similar" to a beer in that it is an alcoholic beverage, it lacks the key defining features of a beer (or malt beverage) and therefore cannot be a version of one.

Constellation's articulation of its argument shows why it cannot be correct. Constellation contends that sugar-based hard seltzers are merely a "gluten-free 'version' of a malt-based malt beverage."  (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss) at 27.)  In the words of Constellation's counsel: a "malt-free malt beverage."  (Ex. 127 (ECF No. 37 (Mot. to Dismiss Hr'g Tr.)) at 13:6.)  The obvious problem with Constellation's reading is that there is no limiting principle.  If a hard seltzer derives its alcohol from sugar and has no malt, it cannot be a "version" of a malt beverage—a beverage whose sole defining feature is that it contains malt.  If Constellation were correct, then ***any*** beverage lacking in malt could be a "version" of malt beverage, from wine to cola to plain-old tap water.  In Constellation's world, a buttery Chardonnay (because it has both water and fermentation) is a "malt-free malt beverage."  Because Constellation's argument equates "version" with "anything," it is plainly wrong.

## II.    CONSTELLATION'S ATTEMPTS TO DISREGARD THE PLAIN MEANING OF THE SUBLICENSE FAIL ON THE LAW AND UNDISPUTED FACTS.

Under New York law, parties to a contract are presumed to say what they mean and mean what they say.  Under very narrow circumstances, court can look beyond the plain meaning of words in a contract if there is a term whose meaning is so universally accepted, in law or industry, that there is "no question" that the parties must have meant to incorporate it.  *AmCash Grp.*, 106 A.D.3d at 559-60.  This exception is narrowly construed; "[w]here a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties specifically did not include."  *Donohue* v. *Cuomo*, 38 N.Y.3d 1, 12 (2022).  According to

-20-

the Second Circuit, an extra-contractual definition of a term can be read into a contract only where it is "general, uniform and unvarying" within a body of law or industry, *Law Debenture*, 595 F.3d at 466, and accepted by the "overwhelming" and "vast majority" of courts or industry participants, *Beazley Ins.*, 880 F.3d at 69; *Hugo Boss*, 252 F.3d 619 & n.8.

Constellation would have this narrow exception permit the term "beer" to be read in light of two (inconsistent) definitions:  (i) the definition of "beer" in the IRC, and certain associated regulations of the Alcohol and Tobacco Tax and Trade Bureau ("TTB")[29]; and (ii) a supposed definition of the "beer category" within the U.S. alcoholic beer industry.  Neither meets the applicable legal standard to be considered in construing the Sublicense, and so this Court can readily disregard Constellation's theories as a matter of law.[30]

### A.    The IRC/TTB Definition of "Beer" Cannot Supplant the Plain and Ordinary Meaning of the Sublicense.

The IRC and TTB definitions of "beer" should not be read into the Sublicense for two principal reasons:  (i) the IRC and TTB definitions conflict with the actual terms of the Sublicense; and (ii) the IRC/TTB definitions are not the uniform definition of "beer" in the alcoholic beverage industry.

---

[29]    Under the IRC, beer is defined as follows:  "**(a) Beer.**  For purposes of this chapter (except when used with reference to distilling or distilling material) the term beer means beer, ale, porter, stout, and other similar fermented beverages (including sake or similar products) of any name or description containing one-half of 1 percent or more of alcohol by volume, brewed or produced from malt, wholly or in part, or from any substitute therefor."  26 U.S.C. § 5052(a) (emphasis added); *see also* 27 C.F.R. § 25.11 (substantially identical definition in TTB regulations). Constellation further relies on a regulation setting out the permissible materials for the production of beer within the IRC definition:  "Beer must be brewed from malt or from substitutes for malt. Only rice, grain of any kind, bran, glucose, sugar, and molasses are substitutes for malt. In addition, you may also use the following materials as adjuncts in fermenting beer: honey, fruit, fruit juice, fruit concentrate, herbs, spices, and other food materials."  27 C.F.R. § 25.15.

[30]    *See, e.g.*, *AXA Equitable Life*, 2022 WL 976266, at *10 ("That evidence, however, does not show that AXA's definition is so 'well settled' and 'uniformly acted upon' as to support judgment for AXA as a matter of law.").

1.    **IRC and TTB Definitions Conflict With the Express Terms of the Sublicense.**

The definition of "Beer" in the Sublicense is materially different from the IRC definition, as shown in the redline on page 7 above.  But Constellation's claim that the parties adopted the IRC (despite rejecting its words, including the "substitution" concept) is even more selective: ████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████  But if that were the parties' goal, they could have expressly referenced the IRC either by invoking the statute or regulations directly, as the "Construction" provision of the Sublicense stated for accomplishing a statutory/regulatory incorporation, and then added additional beverages to expand the definition. But the parties did not do that, and instead chose a bespoke definition of "Beer" that is *different* than the IRC. ████████████████████████████████████ (SOF ¶ 18; ████████████████████████)

Critically, the Sublicense definition *omits* the very portion of the IRC definition that would bring in sugar-based hard seltzers—*i.e.*, "similar fermented beverages . . . produced from malt . . . or any substitute therefor." 27 U.S.C. § 5052(a).[31]  Because the Sublicense does not expressly incorporate a statutory provision—as various other provisions in the parties' agreement does[32]—and omits this very language of the IRC definition, it would be bizarre to read into a definition the language the parties chose not to use.[33]

Constellation avoids that the "Construction" clause of the Sublicense sets forth how

---

[31]    SOF ¶ 38; Ex. 29 (Messinger Rpt.) ¶¶ 54-55.

[32]    *E.g.*, SOF ¶ 40.

[33]    Constellation's incorporation argument is also highly selective.  One component of the Sublicense's "Beer" definition is "malt beverage," which happens to be a term used in the Federal Alcohol Administration Act.  But that definition does not help Constellation, because it requires both malted barley and hops.  27 U.S.C. § 211(a)(7).

-22-

the parties believed incorporation of statutes and regulations should be accomplished—an approach the parties did *not* use for "Beer." (SOF ¶ 40.) Section 1.2(c) of the Sublicense provides that "references to statutes shall include all regulations promulgated thereunder." (Ex. 124 (Sublicense) § 1.2 at 10.) The parties used this approach to incorporate statutes and regulations in other provisions of the Sublicense. (SOF ¶ 40.) Reading a statutory definition—including associated regulations—into the Sublicense definition of "Beer" (without mentioning the statute or regulation) contradicts the methodology expressly contemplated in the Sublicense.[34]

Precisely because the parties did not adopt wholesale regulations from the IRC or the TTB, other sections of the Sublicense would make no sense if definitions from the IRC or TTB regulations were silently (and selectively) incorporated. For example, Section 2.15(c) provides that if Modelo were to market a product that adds distilled spirits to Beer in Mexico or Canada, then Constellation would be permitted to do the same in the U.S. (SOF ¶ 41; (Sublicense) § 2.15(c) at 922.) But under the IRC, the moment *any* spirits are added to a beer—according to Constellation's regulatory expert, even so much as a "drop"—then the liquid ceases to be a "beer" under the IRC and becomes an IRC "distilled spirit." (SOF ¶ 41.) This exposes a fundamental contradiction: The Sublicense provides for the possibility of a "Beer" containing a distilled spirit, but that very beverage would *not* be a "beer" under the IRC and thus, would be outside of the Sublicense, if Constellation's theory were correct.[35]

---

[34]     SOF ¶ 38; *see*, *e.g.*, Ex. 124 (Sublicense) § 2.14 at 22 (citing 15 U.S.C. § 1127)), § 9.11 at 934 (citing 11 U.S.C. §§ 101 *et seq.*).

[35]     There are additional examples. The Sublicense permits Constellation to use the term "Cerveceria Modelo . . . as the fictitious name or 'd/b/a' for its brewery located in Mexico." (SOF ¶ 42; Ex. 124 (Sublicense) § 2.1(e) at 13.) But, again, this leads to conflict: Under the IRC, a "brewery" is defined as "[t]he land and buildings described in the Brewer's Notice, Form 5130.10," which applies only to *domestic* breweries. *See* 26 U.S.C. § 5402(a). ███ ███████████████████████████████████████████████████████████████████████████████ (SOF ¶ 42; ███████████████████) The Sublicense contemplates a "brewery located in Mexico," but that is an oxymoron under the IRC definition of "brewery."

2.    **The IRC/TTB Definitions of "Beer" Are Not "General, Uniform and Unvarying" in Law or Industry, as Would Be Required to Read Them Into the Sublicense.**

Aside from the parties' drafting choice, Constellation's IRC/TTB theory fails at inception because it acknowledges there is no "uniform" definition of beer. (*See* SOF ¶ 66; ECF No. 29 (Defs.' Mot. to Dismiss Reply) at 9.)  Statutes, regulations, and Constellation's own statements prove that there is no basis to allow this defense as a matter of law.

*The IRC, TTB, and Many Other Statutes/Regulations.*  The IRC, TTB, and many other statutes and regulations confirm a plain meaning of "beer" *different* than the term "beer" as defined in those statutes/regulations.  For instance, the IRC states that "[f]or purposes of this chapter . . . the term beer means ***beer***, ale, porter, stout, and other similar fermented beverages . . . ." 26 U.S.C. § 5052(a) (emphasis added).  Where a statute or regulation defines a term that includes within that definition the very same word (*e.g.*, the IRC definition of "beer" includes "beer" as well as other beverages), that indicates two different meanings of the term—one a statutory term of art, and one plain meaning.  This duality of meaning exists in other statutes.  For example, the Federal Food, Drug, and Cosmetic, Act, 21 U.S.C. § 321(f), defines "food" to include "food," and other *non-foods* ("drink," "chewing gum" and additives):

> The statute evidently uses the word "food" in two different ways. The statutory definition of "food" in Section 321(f) is a term of art and is clearly intended to be broader than the common-sense definition of food, because the statutory definition of "food" also includes chewing gum and food additives.

*Nutrilab, Inc.* v. *Schweiker*, 713 F.2d 335, 337 (7th Cir. 1983).[36]  So too here.  The IRC defines

---

[36]    *See also United States* v. *Ten Cartons, Ener-B Nasal Gel*, 888 F. Supp. 381, 391 (E.D.N.Y. 1995), *aff'd sub nom. United States* v. *Ten Cartons, More or Less, of an Article Ener-B Vitamin B-12*, 72 F.3d 285 (2d Cir. 1995) (distinguishing between "common-sense meaning" of "food" in versus the "statutory meaning of 'food'" in section 321(f) of the  Federal Food, Drug, and Cosmetic Act); *Am. Health Prod. Co.* v. *Hayes*, 574 F. Supp. 1498, 1504 (S.D.N.Y. 1983), *aff'd sub nom. Am. Health Prod. Co.* v. *Hayes*, 744 F.2d 912 (2d Cir. 1984) (same).

"beer" as a statutory term of art that is broader than the "common-sense definition" of "beer." Many other statutes and regulations similarly define "beer" to include the "common-sense" definition of "beer" *and* other beverages that are *not* beer.[37]    This proves that the statutory/regulatory definitions of "beer"—as opposed to the "common-sense definition"—is not the single "uniform" and "unvarying" definition required to pursue this argument.[38]

      ***Constellation's Own Public Statements.***    The notion that the Sublicense incorporates the IRC to define "beer" (which allows "substitutes" for malt like "sugar") is directly contradicted by Constellation Form 8-K filings. ████████████████████████████ ████████████████████████████████████ (SOF ¶ 37.)  But in two successive SEC disclosures in 2006 and 2007, Constellation described the scope of "Beer" as being beverages that are "*malt-based*, an ale, a porter, or a stout."[39]  If the IRC were the governing law (given its allowance for malt substitutes), these Form 8-Ks would be materially false and misleading.

      Constellation's contemporaneous answer to the DOJ antitrust complaint that gave rise to the Sublicense confirms that Constellation did not believe "beer" to be equivalent to the IRC definition.  The DOJ's complaint defined "beer" in accordance with its plain and ordinary meaning:  "Beer is comprised of a wide variety of alcoholic beverages usually made from a malted

---

[37]    *See* App'x A (listing state statutes that, among other things, include plain-meaning "beer" in their definitions).

[38]    A prime example of this distinction between the statutory definition and common meaning of beer is a blog post on the website of Constellation's expert Mr. Messinger's law firm.  In the blog post, an attorney at that firm, Frank Knizner, explains that "both malt- and sugar-based hard seltzers are taxed federally as 'beer.'"  (SOF ¶ 76; Ex. 134 (Frank Knizner, "Hard Seltzer TTB Regulatory Considerations") at 1.)  However, he goes on to say in an update: "We were not surprised to see plenty of ***beer*** ads on the Super Bowl yesterday but we were a little surprised to see Bon & Viv"—*i.e.*, a ***hard seltzer***—"in the same expensive place." (*Id.* at 2 (emphasis added).) ████████████ ███████ (SOF ¶ 76; ███████ )

[39]    SOF ¶¶ 22-23; Ex. 122 (Constellation 7/17/2006 Form 8-K) at 5 (emphasis added); Ex. 123 (Constellation 1/02/2007 Form 8-K) at 6; ███████████████████ .

cereal grain, flavored with hops, and brewed via a process of fermentation." (SOF ¶ 27; Ex. 102 (DOJ Complaint) at 8.) Constellation admitted that allegation—which again, would not be accurate if the IRC's definition is how to describe "beer." (SOF ¶ 27)[40]

And in 2019, when applying for the U.S. trademark for Corona Hard Seltzer, Constellation chose to describe it as "Alcoholic beverages, *except beer*; Hard seltzer; Flavored malt-based alcoholic beverages, *excluding beers*." (Ex. 41 (CORONA HARD SELTZER Trademark Application) at 854 (emphasis added).)[41] Constellation amended that trademark description months later, but still described the product as "Hard Seltzer; Flavored malt-based alcoholic beverages, *excluding beers*." (Ex. 44 (CORONA HARD SELTZER Trademark Application Amendment) at 806 (emphasis added).)

*Internal Constellation Documents.* 

---

[40] ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ (SOF ¶ 27 n.5.)

[41]    The USPTO Trademark Manual states that "[t]he identification [of goods] should set forth common names, using terminology that is generally understood. . . . The language used to describe goods and/or services should be understandable to the average person and should not require an in-depth knowledge of the relevant field." (Ex. 8 (USPTO, Trademark Manual of Examining Procedure (Oct. 31, 2018)) § 1402.01.) "The common understanding of words or phrases used in an identification determines the scope and nature of the goods or services. A basic and widely available dictionary should be consulted to determine the definition or understanding of a commonly used word." (*Id.* § 1402.03(4) (citations omitted); *see also id.* § 1402.07(a) (explaining the USPTO's "Ordinary-Meaning Test").)

[42] SOF ¶ 72; █████████████████████████████████████

[43]    SOF ¶ 72; ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

***Constellation's Witnesses and Experts.***  Constellation's own witnesses prove the IRC's narrow reach and establish it is not a "general" definition in the *Law Debenture* sense.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ (SOF ¶ 70; ███████████████████████████)[44] ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ (SOF ¶ 70; ████████

██████████████████████████)

***Other Federal and State Regulators.***  Nor is there any reason why the Sublicense "Beer" definition should be governed by the IRC's regulatory provisions instead of others.  The Sublicense materialized as one part of a remedy to satisfy the DOJ's competition concerns when the DOJ sued to block the ABI-Modelo merger.[45]  There, the DOJ, which was concerned with monopolization of the "beer" market, did not rely on the IRC definition to define "beer."  Instead, DOJ defined the product "beer" to be consistent with its plain meaning: beer is "comprised of a wide variety of alcoholic beverages usually made from a malted cereal grain, flavored with hops,

---

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
[44] ██████████████████████████████████████ (*See* SOF ¶ 70.)
[45] ████████████████████████████████████████████████████
████████████████████████████████████████████████████

and brewed via a process of fermentation."  (SOF ¶ 27; Ex. 102 (DOJ Complaint) at 8.)

Nor does the regulatory journey for the Corona Hard Seltzer from Mexico to the United States provide regulatory unanimity about what constitutes a "beer."  U.S. Customs and Border Protection ("CBP"), the federal agency responsible for overseeing all imports of alcoholic beverages, rejected any applicability of the IRC's definition to tariff classifications.  In 2020, the makers of the sugar-based hard seltzer, White Claw, asked CBP to classify White Claw as a "Beer Made from Malt."  (SOF ¶ 67.)  CBP declined to do so, and instead classified White Claw as "Other Fermented Beverages."  (*Id.*)  CBP reasoned that "[b]eer is a commonly recognized product," but hard seltzer "does not have the taste, aroma, character or appearance of beer" and is not "sold or marketed as beer."  (*Id.*. ¶ 68)  CBP expressly rejected the argument that the IRC definition should control for tariff purposes, underscoring the limited reach of the IRC.  (*Id.*.)

Finally, there is no "unvarying" and "uniform" definition of "beer" tracking the IRC under various state law statutory schemes.  Of the 50 states, D.C., and Guam—the "Territory" relevant to the Sublicense (SOF ¶ 34)—only 38 define "beer" at all in their statutory schemes.[46]  The remaining 14 jurisdictions use other terms to capture low ABV alcoholic products, like "malt beverage,"[47] "malt liquor."  Of the 38 jurisdictions that define "beer" at all, only 23[48] define "beer" to include sugar-based hard seltzers.[49]  And in 2013—when the Sublicense was executed—even

---

[46]    *See* App'x A (compilation of state statutes).

[47]    State definitions of "malt beverage" are not uniform, but some encompass sugar-based hard seltzers, in conflict with the FAA Act definition of "malt beverage," which requires both malted barley and hops.  27 U.S.C. § 211(a)(7).

[48]    This is a conservative count.  For example, Arkansas defines "beer" as including beverages made from "malt or any substitute therefor," but the Arkansas code or regulations do not specify what counts as a "substitute" for malt.  ARK. CODE ANN. § 3-5-202(1).  However, to give Constellation the benefit of any doubt, this state is counted as one that includes hard seltzers within the definition of "beer."

[49]    Constellation's expert, Mr. Messinger, inflates this count by noting that certain states "treat" hard seltzer the same as beer, even though beer is not actually defined to include hard seltzers.  (Ex. 29 (Messinger Rpt.) ¶ 85.)  For example, Delaware's definition of "Beer" requires "barley malt and hops," and so clearly sugar-based hard seltzers do not count.  DEL. CODE ANN. tit. 4, § 101(5).  But Mr. Messinger observes that sugar-based hard seltzers (defined

fewer (only 15) defined "beer" in a way that would include the yet to be invented sugar-based hard seltzers. Those 15 jurisdictions are neither consistent with each other nor with the IRC—for example, the IRC definition of "beer" includes saké, 26 U.S.C. § 5052(a), but the California and Oklahoma definitions expressly exclude saké. Cal. Bus. & Prof. Code § 23006 (2013); 37 Okla. St. Ann. § 506(5) (2013).

The record shows that use of the IRC definition of "beer" is neither "uniform" nor "overwhelming" in law or industry, *Law Debenture*, 595 F.3d at 466; *Beazley Ins.*, 880 F.3d at 69, and thus, to supplant the plain meaning of the Sublicense would turn New York law on its head.[50] Instead of being able to rely on the plain and ordinary meaning of their chosen words, drafters of contracts would need to scour statutes (and regulations) at every level of government across the country, however unrelated to their contract, to ensure that an unintended definition does not sneak its way into the agreement—even if the agreements contain integration clauses, and even if the statutory or regulatory provisions expressly disclaim application beyond a particular limited context, as is the case here.[51] Constellation's defense fails as a matter of law.[52]

---

under Delaware law as a "Fermented beverage") are subject to the same production, sales and taxation laws as "Beer," and therefore concludes that they are "treated" the same. (Ex. 29(Messinger Rpt.) ¶ 101.) The fact that some states "treat" sugar-based hard seltzers substantively like "Beer," even though they do not fall within the actual definition of "Beer," is irrelevant to finding that there is a uniform definition of "Beer." ███████████████████ ███████████████████████████████████████████████████████████████████████████████████

[50]     *See Time Warner Ent. Co., L.P.* v. *Brustowsky*, 221 A.D.2d 268 (2d Dep't 1995) (affirming trial court's refusal to "charge the jurors on the basis of one isolated statutory definition" including in light of the "conflicting statutory or regulatory definitions" in "the complex Federal and State [regulatory] scheme").

[51]     The IRC definition of "beer" is solely "[f]or purposes of" Chapter 51 of the IRC, 26 U.S.C. 5052(a), which sets forth excise and related tax provisions applicable to beer, wine, and spirits. *See also* 27 C.F.R. § 25.11 (TTB "Beer" definition) (limited to "[w]hen used in this part . . . .").

[52]     *See Deverho Const. Co.* v. *State of New York*, 407 N.Y.S.2d 399, 404 (Ct. Cl. 1978) (explaining "[t]he law . . . is not a silent factor in every contract . . . in the sense that the statutory definitions govern the interpretation of every ambiguous phrase in a private agreement"); 5 Corbin on Contracts § 24.26 ("Statutory glossaries, which give definitions of words and phrases, are intended to be used to interpret the particular statutes and not to interpret contracts made by individuals. Such definitions are therefore not incorporated in a contract unless the parties themselves incorporate them.").

**B.    Constellation's Alternative "Beer Category" Theory Likewise Fails.**

Constellation advances a separate theory concerning a different supposed "industry" definition.  According to Constellation's industry expert, Michael Kallenberger, sugar-based hard seltzers "like Corona Hard Seltzer and Modelo Ranch Water are considered a segment of the beer category, and are treated as beer products by participants in the U.S. alcohol beverage industry."  (Ex. 25 (3/18/2022 Kallenberger Rpt.) ¶ 19.)  The existence of a second supposed understanding of "beer" only underscores that both theories are wrong as a matter of law:  Because the IRC definition does not match the "beer category" ██████████████████████,[53] neither can provide the "general, uniform and unvarying" definition required under the law.  *Law Debenture*, 595 F.3d at 466.  Constellation's two theories are at odds with each other; the existence of them both negates them both.[54]

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████  ████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████ the plain-meaning test of the Sublicense, which states that "Beer" refers to a *liquid*.  (SOF ¶ 36; Ex. 124 (Sublicense) § 1.1 at 4 ("'Brand Extension Beer' means

---

[53] ███████████████████████████████████████████████  ████████████████
████████████████ (SOF ¶ 78; ████████████████████████ )

[54]    *See United States* v. *Gotti,* 771 F.Supp. 535, 540 (E.D.N.Y.1991) ("There is a significant difference between pleading alternative theories of law based upon given facts and pleading alternative statements of fact to support a given principle of law.").

Beer packaged in Containers . . . .").)  In fact, the Sublicense makes clear that "Beer" does not

even include the "Container" in which the Beer is packaged (let alone the marketing, distribution,

and sale of that Container), ███████████████████████████████████████████

███████████████  Again, the parties rejected Constellation's alternative approach.

Not only does the "beer category" theory misread the Sublicense, but it  fails the

*Law Debenture* "uniformity" test. ████████████████████████████████████████

████████████████████████████ (*See* SOF ¶ 75; █████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ ██████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

55 ███████████████████████████ ███████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████ ██ ███████████████████████ ██ ████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████



[REDACTED] [56] (SOF ¶ 75 [REDACTED]

[REDACTED]

[REDACTED] )[57]

Given the lack of relevance to the issues presented, and the lack of uniformity for

Mr. Kallenberger's "beer category," Constellation's back-up theory doubly fails.

## III.    EVEN IF THE COURT DETERMINES THAT THE SUBLICENSE IS AMBIGUOUS, NO REASONABLE JURY COULD FIND THAT "BEER" IN THE SUBLICENSE INCLUDES SUGAR-BASED HARD SELTZERS.

Even if this Court were to entertain a claim that the Sublicense is ambiguous,

summary judgment is appropriate given the undisputed parol evidence in this case.  Looking at the

drafting history of the definition of "Beer," the record evidence tells a simple story:



- Constellation proposed a definition of "Beer" in the JV Agreements that [REDACTED] [REDACTED] (SOF ¶¶ 14, 18-19; [REDACTED]

- [REDACTED] (SOF ¶ 20; [REDACTED] ) [REDACTED]

- There is ***no other evidence*** of negotiation history about the definition of "Beer" in the Sublicense.[58]

---

[56]      *See* SOF ¶ 77 n.6; Ex. 29 (Messinger Rpt.) ¶ 6 ("Since 2014, I have been a member of the Brewer's Association, an American trade group of over 5,400 brewers, breweries in planning, suppliers, distributors, craft beer retailers.").

[57]      For example, the Brewers Association organizes a beer competition called the World Beer Cup.  (SOF ¶ 69.) The eligibility guidelines for the World Beer Cup are restricted to "commercially available, fermented malt beverages ***conforming to the trade understanding of 'beer'*** [and] brewed by a permitted commercial brewery."  (*Id.*; Ex. 133 (World Beer Cup – Eligibility & Fees) at 1.)  And, the Brewers Association makes clear that "seltzers . . . are not eligible to be entered in the World Beer Cup."  (*Id.* at 2.)

[58]      [REDACTED]



No reasonable jury could overcome these undisputed facts to rule for Constellation.

## CONCLUSION

The Court should grant Modelo's motion for partial summary judgment.



Dated:    August 5, 2022                Respectfully submitted,
          New York, New York

_____
Michael H. Steinberg (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6670
Facsimile: (310) 712-8870
steinbergm@sullcrom.com

Marc De Leeuw
Akash M. Toprani
Adam R. Rahman
Colin O. Hill
Kirandeep K. Mahal (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 291-9113
deleeuwm@sullcrom.com

*Counsel for Plaintiffs Cervecería Modelo de*
*México, S. de R.L. de C.V.* and *Trademarks*
*Grupo Modelo, S. de R.L. de C.V.*

Appendix:  State Law Definitions[1]

1.  **States That Do Not Define "Beer" (References to the Word "beer" Undefined Within a Definition Are Separately Italicized).**

**14 States**:  Colorado, Georgia, Kentucky, Maine, Massachusetts, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Vermont, Wisconsin, Wyoming

| State | Current Definition |
|---|---|
| **Colorado** | "As used in this article 3 [Alcohol Beverages] and article 4 [Fermented Beverages] of this title 44, unless the context otherwise requires: . . .<br><br>(30)(a) 'Malt liquors' includes *beer* and means any beverage obtained by the alcoholic fermentation of any infusion or decoction of barley, malt, hops, or any other similar product, or any combination thereof, in water containing not less than one-half of one percent alcohol by volume."<br><br>COLO. REV. STAT. ANN. § 44-3-103(30)(a) (Title 44 – Activities Regulated by the Department of Revenue). |
| **Georgia** | "As used in this title, the term: . . .<br><br>(13) 'Malt beverage' means any alcoholic beverage obtained by the fermentation of any infusion or decoction of barley, malt, hops, or any other similar product, or any combination of such products in water, containing not more than 14 percent alcohol by volume and including ale, porter, brown, stout, lager beer, small beer, and strong beer. The term does not include sake, known as Japanese rice wine."<br><br>GA. CODE ANN. § 3-1-2(13) (Title 3 – Alcoholic Beverages). |
| **Kentucky** | "As used in KRS Chapters 241 to 244, unless the context requires otherwise: . . .<br><br>(39) 'Malt beverage' means any fermented undistilled alcoholic beverage of any name or description, manufactured from malt wholly or in part, or from any substitute for malt, and includes weak cider."<br><br>KY. REV. STAT. ANN. § 241.010(39) (Title XX – Alcoholic Beverages). |
| **Maine** | "As used in this Title, unless the context otherwise indicates, the following terms have the following meanings. . . .<br><br>18. Malt liquor.  'Malt liquor' means liquor produced by the fermentation of malt, wholly or partially, or from any malt substitute, which contains 1/2 of 1% of alcohol or more by volume.  'Malt liquor' includes, but is |

---

[1]     Includes the District of Columbia and Guam as Sublicense includes those jurisdictions in the "Territory."  (SOF ¶ 34.)

| State | Current Definition |
|---|---|
| | not limited to, ale, *beer*, porter and stout. 'Malt liquor' includes beverages made with malt liquor, but to which no spirits are added." <br><br> ME. REV. STAT. tit. 28-A, § 2(18) (Title 28-a – Liquors). |
| **Massachusetts** | "The following words as used in this chapter, unless the context otherwise requires, shall have the following meanings: . . . <br><br> 'Malt beverages', all alcoholic beverages manufactured or produced by the process of brewing or fermentation of malt, with or without cereal grains or fermentable sugars, or of hops, and containing not more than twelve per cent of alcohol by weight." <br><br> MASS. GEN. LAWS ch. 138, § 1 (Chapter 138 – Alcoholic Liquors). |
| **North Carolina** | "As used in this Chapter, unless the context requires otherwise: . . . <br><br> (9) 'Malt beverage' means *beer*, lager, malt liquor, ale, porter, and any other brewed or fermented beverage or alcohol consumable except unfortified or fortified wine as defined by this Chapter, containing at least one-half of one percent (0.5%), and not more than fifteen percent (15%), alcohol by volume. Any malt beverage containing more than six percent (6%) alcohol by volume shall bear a label clearly indicating the alcohol content of the malt beverage." <br><br> N.C. GEN. STAT. ANN. § 18B-101 (Chapter 18B – Regulation of Alcoholic Beverages). |
| **Oregon** | "As used in this chapter [471 – Alcoholic Liquors Generally] and ORS chapter 473 [Wine, Cider and Malt Beverage Privilege Tax]: . . . <br><br> (6)(a) 'Malt beverage' means *beer*, ale, porter, stout and other similar fermented beverages that contain more than one-half of one percent and not more than 16 percent of alcohol by volume and that are brewed or produced from malt, wholly or in part, or from rice, grain, bran, glucose, sugar or molasses as a substitute for malt. <br><br> (b) 'Malt beverage' does not include cider, mead, sake or wine." <br><br> OR. REV. STAT. § 471.001(6) (Title 37 – Alcoholic Liquors). |
| **Pennsylvania** | "The following words or phrases, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section: . . . <br><br> 'Malt or Brewed Beverages' shall mean any *beer*, lager beer, ale, porter or similar fermented malt beverage containing one-half of one per centum or more of alcohol by volume, by whatever name such beverage may be called, and shall mean alcoholic cider, fermented fruit beverage and mead." |

| State | Current Definition |
|---|---|
| | 47 Pa. Stat. Ann. § 1-102 (Title 47 – P.S. Liquor, Chapter 1 – Liquor Code). |
| | *      *      * |
| | "The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning: . . . |
| | 'Malt or Brewed Beverages.'  Alcoholic beverages, which include *beer*, lager beer, ale, porter or similar fermented malt liquor, containing one-half of one per cent or more of alcohol, by whatever name such liquors may be called." |
| | 72 Pa. Stat. Ann. § 9002 (Chapter 5 –Tax Reform Code of 1971, Article XX – Malt Beverage Tax). |
| **Rhode Island** | "As used in this title, unless the context otherwise requires: . . . |
| | (11) 'Malt beverage' means any beverage that is usually produced at breweries, as distinguished from distilleries." |
| | 3 R.I. Gen. Laws Ann. § 3-1-1(11) (Title 3 – Alcoholic Beverages). |
| **South Carolina** | "The following are declared to be nonalcoholic and nonintoxicating beverages: |
| | (1) all *beers*, ales, porters, and other similar malt or fermented beverages containing not in excess of five percent of alcohol by weight; |
| | (2) all *beers*, ales, porters, and other similar malt or fermented beverages containing more than five percent but less than fourteen percent of alcohol by weight that are manufactured, distributed, or sold in containers of six and one-half ounces or more or the metric equivalent; and |
| | (3) all wines containing not in excess of twenty-one percent of alcohol by volume." |
| | S.C. Code Ann. § 61-4-10 (Title 61 – Alcohol and Alcoholic Beverages, Chapter 4 – Beer, Ale, Porter, and Wine). |
| **South Dakota** | "Terms used in this title mean: . . . |
| | (8) 'Malt beverage,' a beverage made by the alcoholic fermentation of an infusion or decoction, or combination of both, in potable brewing water, of malted barley with hops, or their parts, or their products, or any other similar product, and with or without other malted cereals, and with or |

| State | Current Definition |
|---|---|
| | without the addition of unmalted or prepared cereals, other carbohydrates or products prepared therefrom, and with or without the addition of carbon dioxide, and with or without other wholesome products suitable for human consumption containing not less than one-half of one percent of alcohol by weight." <br><br> S.D. Codified Laws § 35-1-1 (Title 35 – Alcoholic Beverages). |
| Vermont | "As used in this title: . . . <br><br> (25) 'Malt beverages' means all fermented beverages of any name or description manufactured for sale from malt, wholly or in part, or from any malt substitute, known as, among other things, *beer*, ale, or lager, containing not less than one percent nor more than 16 percent alcohol by volume at 60 degrees Fahrenheit." <br><br> Vt. Stat. Ann. tit. 7, § 2(25) (Title 7 – Alcoholic Beverages). |
| Wisconsin | "Except as otherwise provided, in this chapter: . . . <br><br> (6) 'Fermented malt beverages' means any beverage made by the alcohol fermentation of an infusion in potable water of barley malt and hops, with or without unmalted grains or decorticated and degerminated grains or sugar containing 0.5 percent or more of alcohol by volume." <br><br> Wis. Stat. § 125.02(6) (Chapter 125 – Alcohol Beverages). |
| Wyoming | "(a) As used in this title: . . . <br><br> (x) 'Malt beverage' means any fluid, substance or compound intended for beverage purposes manufactured from malt, wholly or in part, or from any substitute therefor, containing at least one-half of one percent (.5%) of alcohol by volume." <br><br> Wyo. Stat. Ann. § 12-1-101(a)(x) (Title 12 – Alcoholic Beverages). |

2. **States That Define "Beer" To Not Encompass Sugar-Based Hard Seltzer (References to the Word "beer" Undefined Within a Definition Are Separately Italicized).**[2]

**14 States and Guam**:  Connecticut, Delaware, Guam, Hawaii, Illinois, Indiana, Kansas, Louisiana, Mississippi, Nebraska, New Hampshire, New Jersey, New Mexico, Ohio, Washington.

| State | Current Definition |
|-------|--------------------|
| Connecticut | "For the purposes of this chapter and section 2 of public act 22-104, unless the context indicates a different meaning: . . .<br><br>(5) 'Beer' means any beverage obtained by the alcoholic fermentation of an infusion or decoction of barley, malt and hops in drinking water."<br><br>CONN. GEN. STAT. § 30-1(5) (Chapter 545 – Liquor Control Act).<br><br>*        *        *<br><br>"Wherever used in this chapter, unless the context otherwise requires: . . .<br><br>*'beer' means any beverage obtained by the alcoholic fermentation of an infusion or decoction of barley, malt and hops in drinking water and containing more than one-half of one per cent of absolute alcohol by volume."*<br><br>CONN. GEN. STAT. § 12-433 (Chapter 220 – Alcoholic Beverage Tax). |
| Delaware | "As used in this title, in addition to their usual meaning: . . .<br><br>(5) 'Beer' means any beverage containing more than ½ of 1% of ethyl alcohol by volume, obtained by the alcoholic fermentation of any infusion or decoction of barley malt and hops in water and includes, among other things, ale, porter, stout and other malt or brewed liquors."<br><br>DEL. CODE ANN. tit. 4, § 101(5) (Title 4 – Alcoholic Liquors). |
| Guam | "Unless the context otherwise requires, the definitions set forth in this part govern the construction of this Chapter."<br><br>. . . |

---

[2]    In his legal opinion, Constellation's regulatory law expert John Messinger contends that sugar-based hard seltzer is "treated" by state regulators the same way as "Beer" in Connecticut, Delaware, Mississippi, Nebraska, New Mexico, and Ohio even though sugar-based hard seltzer does not fall within the state law definition of "Beer."  (Ex. 29 (Messinger Rpt.) ¶¶ 101, 103, 105-106, 108-109.)

| State | Current Definition |
|---|---|
| | "Beer means any beverage obtained by the alcoholic fermentation of an infusion or decoction of barley or other grain, hops and malt in water."<br><br>11 G.C.A. §§ 3101, 3105 (Title 11 – Finance & Taxation, Chapter 3 – Alcoholic Beverage Control). |
| **Hawaii** | "Whenever used in this chapter, unless otherwise apparent from the context: . . .<br><br>'Beer' means any beverage obtained by the alcoholic fermentation of any infusion or decoction of barley or other grain, malt, and hops in water."<br><br>HAW. REV. STAT. § 281-1 (Title 16, Ch. 281 – Intoxicating Liquor).<br><br>\*        \*        \*<br><br>"Wherever used in this chapter, unless the context otherwise requires: . . .<br><br>'Beer' means any alcoholic beverage obtained by the fermentation or any infusion or decoction of barley, malt, hops, or any other similar product, or any combination thereof in water, and includes ale, porter, brown, stout, lager beer, small beer, and strong beer but does not include sake, known as Japanese rice wine, or cooler beverage."<br><br>HAW. REV. STAT. § 244D-1 (Title 14 – Taxation, Chapter 244D – Liquor Tax Law). |
| **Illinois**[3] | "Unless the context otherwise requires, words and phrases are used in [the Liquor Control Act of 1934] in the sense given them in the Sections following this Section and preceding Section 2-1.<br><br>. . .<br><br>'Beer' means a beverage obtained by the alcoholic fermentation of an infusion or concoction of barley, or other grain, malt, and hops in water, and includes, among other things, *beer*, ale, stout, lager beer, porter and the like." |

[3]        In Illinois, sugar-based hard seltzer could be encompassed in the definition of "beer" for tax purposes.  *See* 235 ILL. COMP. STAT. ANN. § 5/8-1 (Chapter 235 – Liquor) ("For purposes of this Section [Tax on manufacture and importation; retailers and distributors; exemptions], 'beer' means *beer*, ale, porter, stout, and other similar fermented beverages of any name or description containing one-half of one percent or more of alcohol by volume, brewed or produced from malt, wholly or in part, or from any substitute for malt.").  It is not, however, encompassed in the definition of "beer" for other liquor regulatory purposes.  *See* 235 ILL. COMP. STAT. ANN. § 5/1-3.04 (Chapter 235 – Liquor).

| State | Current Definition |
|---|---|
|  | 235 ILL. COMP. STAT. ANN. §§ 5/1-3, 5/1-3.04 (Chapter 235 – Liquor). |
|  | *        *        * |
|  | "As used in this Act [Beer Industry Fair Dealing Act]: |
|  | (1) 'Beer' means a beverage obtained by the alcoholic fermentation of an infusion or concoction of barley, or other grain, malt, and hops in water, and includes, among other things, *beer*, ale, stout, lager beer, porter, all beverages brewed or fermented wholly or in part from malt products, and the like; and for purposes of this Act only, the term 'beer' shall also include malt beverage products containing less than one-half of 1% of alcohol by volume and marketed for adult consumption as an alternative beverage to *beer*." |
|  | 815 ILL. COMP. STAT. ANN. § 720/1.1(1) (Act 720 – Beer Industry Fair Dealing Act). |
|  | *        *        * |
|  | "For purposes of this Part: . . . |
|  | 'Beer' means a beverage obtained by the alcoholic fermentation of an infusion or concoction of barley, or other grain, malt and hops in water, and includes, among other things, *beer*, ale, stout, lager beer, porter and the like." |
|  | 86 ILL. ADM. CODE 420.5 (Part 420 – Liquor Control Act). |
| **Indiana** | "The definitions contained in this chapter shall be applied throughout this title unless the context clearly requires otherwise. |
|  | . . . |
|  | The term 'beer' means an alcoholic beverage obtained by the fermentation of (1) an infusion or decoction of (A) barley malt or other cereal; and (B) hops; in water; or (2) cereal byproducts." |
|  | IND. CODE §§ 7.1-1-3-1, 7.1-1-3-6 (Title 7.1 – Alcohol and Tobacco). |
| **Kansas** | "As used in this act, unless the context clearly requires otherwise: . . . |
|  | (d) 'Beer' means a beverage, containing more than 3.2% alcohol by weight, obtained by alcoholic fermentation of an infusion or concoction of barley, or other grain, malt and hops in water and includes *beer*, ale, stout, lager beer, porter and similar beverages having such alcoholic content." |

| State | Current Definition |
|---|---|
| | KAN. STAT. ANN. § 41-102(d) (Chapter 41 – Intoxicating Liquors and Beverages).[4] |
| Louisiana | "A. The following words or phrases, or the plural thereof, whenever they appear in this Chapter, unless the context clearly requires otherwise, shall have the meanings ascribed to them in this Section: . . .<br><br>(3) 'Beer' means a beverage obtained by alcoholic fermentation of an infusion or concoction of barley or other grain, malt, and hops in water."<br><br>LA. STAT. ANN. § 26:802(A)(3) (Chapter 6 – Business Relations – Wholesalers and Suppliers of Beer).<br><br>\*    \*    \*<br><br>"A. For use in these regulations, the following terms are defined.<br><br>Beer – (as used in these regulations) *beer*, porter, ale, or any malt beverage obtained by alcoholic fermentation of an infusion, or concoction of barley, or other grain, malt and hops in water."<br><br>LA. ADMIN CODE tit. 55, Pt. VII, § 101 (Part VII – Alcohol and Tobacco Control, Chapter 1 – Beer Cash Regulations). |
| Mississippi | "When used in this chapter, unless the context indicates otherwise: . . .<br><br>(d) 'Beer' means a malt beverage as defined in the Federal Alcohol Administration Act\* and any rules and regulations adopted pursuant to such act of an alcoholic content of not more than eight percent (8%) by weight."<br><br>MISS. CODE. ANN. § 67-3-3(d) (Title 67 – Alcoholic Beverages, Chapter 3 – Sale of Light Wine, Beer, and Other Alcoholic Beverages).[5] |

---

[4] *See also* KAN. ADMIN. CODE § 14-25-1(b) (Article 25 – Off-Premises Cereal Malt Beverage Retailers) (incorporating definition in KAN. STAT. ANN. § 41-102(d)); KAN. ADMIN. CODE § 14-14-1(b) (Article 14 – Manufactures; Distributors; Nonbeverage Users; Farm Wineries; Microbreweries) (similar definition to KAN. STAT. ANN. § 41-102(d)); KAN. ADMIN. CODE § 14-15-1(a) (Article 15 – Beer and Cereal Malt Beverage Keg Registration) (same); KAN. ADMIN. CODE § 14-19-14(b) (Article 19 – Class A Clubs) (same); KAN. ADMIN. CODE § 14-20-14(b) (Article 20 – Class B Clubs) (same); KAN. ADMIN. CODE § 14-21-1(b) (Article 21 – Drinking Establishments) (same); KAN. ADMIN. CODE § 14-22-1(b) (Article 22 – Caterer) (similar); KAN. ADMIN. CODE § 14-23-1(b) (Article 23 – Temporary Permits) (same).

[5] *See also* MISS. CODE. ANN. § 67-7-5(q) (Chapter 7 – Beer Industry Fair Dealing Act) (incorporating definition in MISS. CODE. ANN. § 67-3-3(d)); MISS. CODE ANN. § 97-5-49(1)(c) (Chapter 5 – Offenses Affecting Children) (same).

| State | Current Definition |
|-------|-------------------|
| | * The Federal Alcohol Administration Act defines "malt beverage" as "a beverage made by the alcoholic fermentation of an infusion or decoction, or combination of both, in potable brewing water, <u>of malted barley with hops</u>, or their parts, or their products, and with or without other malted cereals, and with or without the addition of unmalted or prepared cereals, other carbohydrates or products prepared therefrom, and with or without the addition of carbon dioxide, and with or without other wholesome products suitable for human food consumption." *See* 27 U.S.C. § 211(a)(7) (emphasis added). |
| **Nebraska** | "For purposes of the Nebraska Liquor Control Act, the definitions found in sections 53-103.01 to 53-103.49 apply."<br><br>. . .<br><br>"Beer means a beverage obtained by alcoholic fermentation of an infusion or concoction of barley or other grain, malt, and hops in water and includes, but is not limited to, *beer*, ale, stout, lager beer, porter, near beer, flavored malt beverage, and hard cider."<br><br>NEB. REV. STAT. §§ 53-103, 53-103.03 (Chapter 53 – Liquors, Article 1(a)). |
| **New Hampshire** | "In this title: . . .<br><br>'Beer' means *beer*, specialty beer as defined by RSA 175:1, LXIV-a, lager beer, ale, porter and similar fermented malt beverages."<br><br>N.H. REV. STAT. ANN. § 175:1(VII) (Title XIII – Alcoholic Beverages). |
| **New Jersey** | "As used in this subtitle: . . .<br><br>'Beer' means *beer*, lager beer, ale, stout, porter, and all similar fermented malt beverages having an alcoholic content of one-half of one per centum (1/2 of 1%) or more by volume."<br><br>N.J. STAT. ANN. § 54:41-2 (Title 54 – Taxation, Subtitle 8 – Alcoholic Beverage Tax).<br><br>*        *        *<br><br>"The following words and terms, when used in this chapter shall have the following meanings unless the context clearly indicates otherwise. . . .<br><br>'Beer' means, *beer*, lager beer, ale, stout, porter, and all similar fermented malt beverages having an alcoholic content of one-half of one percent or more by volume." |

| State | Current Definition |
|---|---|
| | N.J. ADMIN. CODE § 18:3-1.2 (Chapter 3 – Alcoholic Beverage Tax Act – State Licensees, Subchapter 1).<br><br>\*    \*    \*<br><br>"1. Beer and other malt beverages means *beer*, lager beer, ale, stout, porter, and all similar fermented malt beverages having an alcoholic content of one-half of one percent or more by volume."<br><br>N.J. ADMIN. CODE. § 18:38-3.1(1) (Chapter 38 – Litter Control Fee, Subchapter 3 – Products Subject to the Fee). |
| **New Mexico** | "As used in the Liquor Control Act: . . .<br><br>B. 'beer' means an alcoholic beverage obtained by the fermentation of any infusion or decoction of barley, malt and hops or other cereals in water, and includes porter, *beer*, ale and stout."<br><br>N.M. STAT. ANN. § 60-3A-3(B) (Chapter 60, Article 3a – Business Licenses, General Provisions).<br><br>\*    \*    \*<br><br>"As used in the Liquor Excise Tax Act: . . .<br><br>B. 'beer' means an alcoholic beverage obtained by the fermentation of any infusion or decoction of barley, malt and hops or other cereals in water and includes porter, *beer*, ale and stout."<br><br>N.M. STAT. ANN. § 7-17-2(B) (West) (Chapter 7 – Taxation, Article 17 – Liquor Excise Tax).<br><br>\*    \*    \*<br><br>"As used in the Domestic Winery, Small Brewery and Craft Distillery Act: . . .<br><br>B. 'beer' means any fermented beverage containing more than one-half percent alcohol obtained by the fermentation of any infusion or decoction of barley, malt and hops or other cereal in water, and includes porter, *beer*, ale and stout."<br><br>N.M. STAT. ANN. § 60-6A-22(B) (Chapter 60 – Business Licenses, Article 6a – State Licenses). |

| State | Current Definition |
|---|---|
| **Ohio** | "(B) As used in this chapter: . . .<br><br>(2) 'Beer' includes all beverages brewed or fermented wholly or in part from malt products and containing one-half of one per cent or more of alcohol by volume."<br><br>Ohio Rev. Code Ann. § 4301.01(B)(2) (Title XLIII. – Liquor, Chapter 4301 – Liquor Control Law).[6] |
| **Washington** | "In this title, unless the context otherwise requires: . . .<br><br>(3) 'Beer' means any malt beverage, flavored malt beverage, or malt liquor as these terms are defined in this chapter. . . .<br><br>(26) 'Malt beverage' or 'malt liquor' means any beverage such as *beer*, ale, lager beer, stout, and porter obtained by the alcoholic fermentation of an infusion or decoction of pure hops, or pure extract of hops and pure barley malt or other wholesome grain or cereal in pure water containing not more than eight percent of alcohol by weight, and not less than one-half of one percent of alcohol by volume. For the purposes of this title, any such beverage containing more than eight percent of alcohol by weight shall be referred to as "strong beer."<br><br>Wash. Rev. Code §§ 66.04.010(3), 66.04.010(26) (Title 66 – Alcoholic Beverage Control).[7] |

---

[6]    *See also* Ohio Rev. Code Ann. § 4303.01 (Title XLIII. – Liquor, Chapter 4303 – Liquor Permits) (incorporating definition in Ohio Rev. Code Ann. § 4301.01(B)(2)); Ohio Rev. Code Ann. § 4307.01(A) (Title XLIII. – Liquor, Chapter 4307 – Tax on Bottled Beverages) (same); Ohio Rev. Code Ann. § 5733.065(A)(1) (Additional tax levied on manufacture or sale of litter stream products) (same); Ohio Rev. Code Ann. § 5751.01(F)(2)(s) (Title LVII. Taxation, Chapter 5751 – Gross Receipts Tax) (same); Ohio Rev. Code Ann. § 901.172(A) (Promotion of Ohio-produced agricultural goods for inclusion in beer, cider, and spirituous liquors) (same); Ohio Rev. Code Ann. § 4305.08 (Title XLIII. – Liquor, Chapter 4305 – Tax on Bulk Sales of Malt Beverages – Records, Assessments, and Payment) (same); Ohio Rev. Code Ann. § 2923.121(F)(1) (Possessing firearm in liquor permit premises) (same); Ohio Rev. Code Ann. § 4399.09(A) (Keeping place where intoxicating liquors are sold in violation of law) (same); Ohio Rev. Code Ann. § 1333.82(A) (Title XIII – Commercial Transactions, Chapter 1333 – Trade Practices – Manufacturers, Suppliers, and Distributors of Alcoholic Beverages – Remedies) (same); Ohio Rev. Code Ann. § 3743.01(A) (Title XXXVII – Health--Safety--Morals, Chapter 3743 – Fireworks) (same); Ohio Admin. Code § 4501:4-1-01(A) (Chapter 4501:4-1 – Confiscated Liquor and Alcohol: Use for Training Purposes) (same).

[7]    *See also* Wash. Rev. Code § 66.24.590(10) (Hotel license-Fee--Limitations) (incorporating definitions in Wash. Rev. Code § 66.04); Wash. Rev. Code § 66.24.410(3) (Title 66 – Alcoholic Beverage Control, Chapter 66.24 – Licenses--Stamp Taxes) (same); Wash. Rev. Code § 15.89.020(1) (Title 15 – Agriculture and Marketing, Chapter 15.89 – Washington Beer

3.  **States In 2013 That Defined "Beer" To Not Encompass Sugar-Based Hard Seltzer; Later Amendments Could Capture Sugar-Based Hard Seltzer (References to the Word "beer" Undefined Within a Definition Are Separately Italicized).**

**8 States**:  Alaska, Florida, Michigan, Minnesota, Montana, North Dakota, Texas, and Utah.

| State | Definition in *2013* |
|---|---|
| **Alaska**[8] | "(b) In this title, <br><br> (1) 'alcoholic beverage' means a spirituous, vinous, malt, or other fermented or distilled liquid, whatever the origin, that is intended for human consumption as a beverage and that contains one-half of one percent or more of alcohol by volume, . . ." <br><br> ALASKA STAT. ANN. § 04.21.080(1) (2013) (Title 4 – Alcoholic Beverages). |
| **Florida** | "The terms 'beer' and 'malt beverage' mean all beverages containing malt." <br><br> FLA. STAT. § 563.01 (2013) (Title XXXIV – Alcoholic Beverages and Tobacco, Chapter 564 – Beer) (effective until June 30, 2017). |
| **Michigan** | "Sec. 103.  For the purposes of this act [Michigan Liquor Control Code of 1998], the words and phrases defined in this chapter have the meanings ascribed to them in this chapter, unless the context requires otherwise. <br><br> . . . <br><br> (6) 'Beer' means any beverage obtained by alcoholic fermentation of an infusion or decoction of barley, malt, hops, or other cereal in potable water." <br><br> MICH. COMP. LAWS §§ 436.1103, 436.1105(6) (2013) (Chapter 436 – Alcoholic Beverages) (effective until August 22, 2021). |
| **Minnesota**[9] | "Subpart 1. Scope. The terms used in this chapter have the meanings provided in Minnesota Statutes, chapter 340A, except for the following terms. . . . |

---

[8]     Section 60.310(5) of the Alaska Administrative Code currently defines "beer" as having "the meaning given in 26 U.S.C. 5052(a)," however this definition was not in force in 2013.  *See* 15 ALASKA ADMIN CODE § 60.310(5) (Title 15 – Revenue, Chapter 60 – Excise Tax on Alcoholic Beverages) (amended May 28, 2021).

[9]     In *Chalet Liquors*, the Minnesota Court of Appeals held that "beer" should be defined for purposes of a contract by its "plain, ordinary, fair, usual, and popular sense meaning," and rejected

Commission) (same); WASH. ADMIN. CODE § 314-03-510(5)(b) (Temporary endorsement for sale of growlers through curbside, takeout, or delivery service) (same).

| State | Definition in *2013* |
|-------|----------------------|
| | Subp. 4. Beer. 'Beer' as defined in Code of Federal Regulations and parts 7515.1000 to 7515.1120 means malt beverages or malt liquors."<br><br>MINN. R. 7515.0100(4) (2013) (Chapter 7515 – Liquor) (effective until May 22, 2022). |
| **Montana** | "As used in this code, the following definitions apply: . . .<br><br>(5)(a) 'Beer' means:<br>(i) a malt beverage containing not more than 8.75% of alcohol by volume; or<br>(ii) an alcoholic beverage containing not more than 14% alcohol by volume:<br>(A) that is made by the alcoholic fermentation of an infusion or decoction, or a combination of both, in potable brewing water, of malted cereal grain; and<br>(B) in which the sugars used for fermentation of the alcoholic beverage are at least 75% derived from malted cereal grain measured as a percentage of the total dry weight of the fermentable ingredients.<br>(b) The term does not include a caffeinated or stimulant-enhanced malt beverage."<br><br>MONT. CODE ANN. § 16-1-106(5) (2013) (Title 16 – Alcohol and Tobacco, Chapter 1 – Administration and Taxation).<br><br>*        *        *<br><br>(16) 'Malt beverage' means an alcoholic beverage made by the fermentation of an infusion or decoction, or a combination of both, in potable brewing water, of malted barley with or without hops or their parts or their products and with or without other malted cereals and with or without the addition of unmalted or prepared cereals, other carbohydrates, or products prepared from carbohydrates and with or without other wholesome products suitable for human food consumption."<br><br>MONT. CODE ANN. § 16-1-106(16) (2013) (Title 16 – Alcohol and Tobacco, Chapter 1 – Administration and Taxation) (effective until February 22, 2021). |
| **North Dakota** | "In this title: . . . |

---

the argument that the Court should look to the regulatory definition of beer in MINN. R. 7515.0100(4) to determine whether the at-issue product was a beer under the contract. *See Chalet Liquors, Inc.* v. *Supervalu, Inc.*, 2004 WL 885356, at *5-6 (Minn. Ct. App. Apr. 27, 2004).

| State | Definition in *2013* |
|-------|----------------------|
|  | 3. 'Beer' means any malt beverage containing one-half of one percent or more of alcohol by volume." <br><br> N.D. CENT. CODE ANN. § 5-01-01 (2013) (Title 5 – Alcoholic Beverages) (effective until June 20, 2021). |
| **Texas** | "In this code: <br><br> (15) 'Beer' means a malt beverage containing one-half of one percent or more of alcohol by volume and not more than four percent of alcohol by weight." <br><br> *See* TEX. ALCO. BEV. CODE ANN. § 1.04(15) (2013) (effective until August 31, 2021).[10] |
| **Utah** | "As used in this title: <br><br> (8)(a) Subject to Subsection (8)(d), 'beer' means a product that: <br> (i) contains at least .5% of alcohol by volume, but not more than 4% of alcohol by volume or 3.2% by weight; and <br> (ii) is obtained by fermentation, infusion, or decoction of malted grain. <br> (b) "Beer" may or may not contain hops or other vegetable products. <br> (c) "Beer" includes a product that: <br> (i) contains alcohol in the percentages described in Subsection (8)(a); and <br> (ii) is referred to as: <br> (A) *beer*; <br> (B) ale; <br> (C) porter; <br> (D) stout; <br> (E) lager; or <br> (F) a malt or malted beverage. <br> (d) 'Beer' does not include a flavored malt beverage." <br><br> UTAH CODE ANN. § 32B-1-102(8) (2013) (Title 32b – Alcoholic Beverage Control Act) (effective until May 31, 2022). |

---

[10]    *See also* TEX. ADMIN. CODE § 45.71(1) (2013) (effective until Dec. 31, 2020) (containing same definition as TEX. ALCO. BEV. CODE ANN. § 1.04(15) (2013)).

**4. States That Arguably Defined "Beer" in 2013 (and Currently) to Encompass Sugar-Based Hard Seltzer (References to the Word "beer" Undefined Within a Definition Are Separately Italicized).[11]**

**14 States and District of Columbia**:  Alabama, Arizona, Arkansas, California, District of Columbia, Idaho, Iowa, Maryland, Missouri, Nevada, New York, Oklahoma, Tennessee, Virginia, and West Virginia.

| State | Definition in 2013 |
|---|---|
| **Alabama** | "As used in this title, the following words shall have the following meanings unless the context clearly indicates otherwise: . . .<br><br>(3) BEER, or MALT OR BREWED BEVERAGES. Except as otherwise provided in this subdivision, any *beer*, lager beer, ale, porter, malt or brewed beverage, or similar fermented malt liquor containing one-half of one percent or more of alcohol by volume and not in excess of thirteen and nine-tenths percent by volume, by whatever name the same may be called."<br><br>ALA. CODE § 28-3-1 (2013) (Title 28 – Intoxicating Liquor, Malt Beverages, and Wine) (effective until May 16, 2021).[12] |
| **Arizona** | "In this title, unless the context otherwise requires: . . .<br><br>3. 'Beer' means any beverage obtained by the alcoholic fermentation, infusion or decoction of barley malt, hops, or other ingredients not drinkable, or any combination of them."<br><br>ARIZ. REV. STAT. ANN. § 4-101(3) (2013) (Title 4 – Alcoholic Beverages) (effective until September 28, 2021).[13] |
| **Arkansas** | "As used in this subchapter, unless the context otherwise requires: |

---

[11]     Several states in this category include definitions of "beer" that do not unambiguously include sugar-based hard seltzers, but as a conservative approach and giving Constellation the benefit of the doubt, those states are included in this category.  This includes, for example, states defining "beer" to include alcoholic beverages made from malt substitutes, without specifying that sugar is an acceptable substitute for malt.

[12]     Amended effective May 17, 2021 to add, among other wording, "brewed or produced from malt, wholly or in part, or from rice, grain of any kind, bran, glucose, sugar, or molasses."  *See* ALA. CODE § 28-3-1 (Title 28 –  Intoxicating Liquor, Malt Beverages, and Wine).

[13]     Amended effective September 29, 2021 to add, among other wording, "rice, bran or other grain, glucose, sugar or molasses, or any combination of them."  *See* ARIZ. REV. STAT. ANN. § 4-101(3) (Title 4. Alcoholic Beverages).  *See also* ARIZ. REV. STAT. ANN. § 44-1565(1) (2013) (Title 44 – Trade and Commerce, Article 9 – Beer Franchises) (effective until September 28, 2021) (containing same definition as ARIZ. REV. STAT. ANN. § 4-101(3) (2013).)

| State | Definition in 2013 |
|---|---|
|  | (1) 'Beer' means any fermented liquor made from malt or any substitute therefor and having an alcoholic content not in excess of five percent (5%) by weight." |
|  | ARK. CODE ANN. § 3-5-202 (2013) (Title 3 – Alcoholic Beverages, Subchapter 2 – Beer and Light Wine) (same definition is currently in force).[14] |
| California | "Unless the context otherwise requires, the definitions and general provisions set forth in this chapter govern the construction of this division. . . . |
|  | 'Beer' means any alcoholic beverage obtained by the fermentation of any infusion or decoction of barley, malt, hops, or any other similar product, or any combination thereof in water, and includes ale, porter, brown, stout, lager beer, small beer, and strong beer, but does not include sake, known as Japanese rice wine.  Beer aged in an empty wooden barrel previously used to contain wine or distilled spirits shall be defined exclusively as '*beer*' and shall not be considered a dilution or mixture of any other alcoholic beverage." |
|  | CAL. BUS. & PROF. CODE §§ 23002, 23006 (2013) (Division 9 – Alcoholic Beverages) (effective until December 21, 2019).[15] |
| District of Columbia | "For the purposes of this title, the term: . . . |
|  | (10) 'Beer' means a fermented beverage of any name or description manufactured from malt, wholly or in part, or from any substitute for malt." |

---

[14]    *See also* ARK. CODE ANN. § 3-8-601 (2013) (Title 3 – Alcoholic Beverages, Subchapter 6 – Local Option Election in Defunct Voting District) (containing same definition as ARK. CODE ANN. § 3-5-202 (2013)); ARK. CODE ANN. § 3-5-1202(2) (2013) (Title 3 – Alcoholic Beverages, Subchapter 12 – Microbrewery-Restaurants) (same); ARK. CODE ANN. § 3-5-1403(2) (2013) (Title 3 – Alcoholic Beverages, Subchapter 14 – Arkansas Small Brewery Act) (same); ARK. CODE ANN. § 3-5-227(a)(1) (2013) (Registration of beer kegs for off-premises consumption) (same); ARK. CODE ANN. § 3-7-116(a)(2) (2013) (Title 3 – Alcoholic Beverages, Chapter 7 – Excise Taxes, Subchapter 1 – General Provisions) (same); ARK. CODE ANN. § 3-7-116 (2013) (Tax rebate for qualified manufacturers) (same); ARK. CODE ANN. § 3-5-1302(a) (2013) (Title 3 – Alcoholic Beverages, Subchapter 13 – Nonresident Beer Seller's Permit) (incorporating same definition as ARK. CODE ANN. § 3-5-202 (2013)).

[15]    Amended effective January 1, 2020 to include wording "Beer may be produced using the following materials as adjuncts in fermentation: honey, fruit, fruit juice, fruit concentrate, herbs, spices, and other food materials."  *See* CAL. BUS. & PROF. CODE §§ 23002, 23006 (Division 9. Alcoholic Beverages).

| State | Definition in 2013 |
|---|---|
| | D.C. CODE § 25-01(10) (2013) (Title 25 – Alcoholic Beverage Regulation) (same definition is currently in force). |
| **Idaho** | "As used in this chapter:<br><br>(a) The word 'beer' means any beverage obtained by the alcoholic fermentation of an infusion or decoction of barley, malt and/or other ingredients in drinkable water."<br><br>IDAHO CODE ANN. § 23-1001 (2013) (Title 23 – Alcoholic Beverages, Chapter 10 – Beer) (substantially the same definition is currently in force). |
| **Iowa** | "As used in this chapter, unless the context otherwise requires: . . .<br><br>7. 'Beer' means any liquid capable of being used for beverage purposes made by the fermentation of an infusion in potable water of barley, malt, and hops, with or without unmalted grains or decorticated and degerminated grains or made by the fermentation of or by distillation of the fermented products of fruit, fruit extracts, or other agricultural products, containing more than one-half of one percent of alcohol by volume but not more than five percent of alcohol by weight but not including mixed drinks or cocktails mixed on the premises."<br><br>IOWA CODE § 123.3(7) (2013) (Chapter 123 – Alcoholic Beverage Control) (effective until June 30, 2019).[16] |
| **Maryland** | "(a) In this article the following words have the meanings indicated. . . .<br><br>(c)(1) 'Beer' means a brewed alcoholic beverage.<br>(2) "Beer" includes:<br>(i) ale;<br>(ii) porter;<br>(iii) stout;<br>(iv) hard cider that:<br>1. is derived primarily from apples, apple concentrate and water, pears, or pear concentrate and water; and<br>2. contains no other fruit product but contains at least one-half of 1% and less than 8.5% of alcohol by volume;<br>(v) an alcoholic beverage that contains: |

---

[16]    Amended effective July 1, 2019 to change maximum ABV from 5% to 6.25% and remove wording "but not including mixed drinks or cocktails mixed on the premises." *See* IOWA CODE § 123.3(7) (Chapter 123 – Alcoholic Beverage Control, Subchapter I – General Provisions Relating to Alcoholic Beverages). *See also* IOWA CODE § 123A.2 (2013) (Title IV – Public Health, Chapter 123A – Beer Brewers and Wholesalers) (containing same definition as IOWA CODE § 123.3(7) (2013)); IOWA ADMIN. CODE § 567-107.2(455C) (2013) (Title VIII – Solid Waste Management and Disposal, Chapter 107 – Beverage Container Deposits) (same).

| State | Definition in 2013 |
|-------|--------------------|
|       | 1. 6% or less alcohol by volume, derived primarily from the fermentation of grain, with not more than 49% of the alcoholic beverage's overall alcohol content by volume obtained from flavors and other added nonbeverage ingredients containing alcohol; or<br>2. more than 6% alcohol by volume, derived primarily from the fermentation of grain, with not more than 1.5% of the alcoholic beverage's overall alcohol content by volume obtained from flavors and other added nonbeverage ingredients containing alcohol; and<br>(vi) mead."<br><br>MD. AL. BEV. § 1-101(c) (2013) (Alcoholic Beverages; Division 1).[17]<br><br>\*      \*      \*<br><br>"(a) In this title the following words have the meanings indicated. . . .<br><br>(d)(1) 'Beer' means a brewed alcoholic beverage.<br>(2) 'Beer' includes:<br>(i) ale;<br>(ii) porter;<br>(iii) stout;<br>(iv) hard cider, as defined in § 1-101(c) of the Alcoholic Beverages Article; and<br>(v) alcoholic beverages that contain:<br>1. 6% or less alcohol by volume, derived primarily from the fermentation of grain, with not more than 49% of the beverage's overall alcohol content by volume obtained from flavors and other added nonbeverage ingredients containing alcohol; or<br>2. more than 6% alcohol by volume, derived primarily from the fermentation of grain, with not more than 1.5% of the beverage's overall alcohol content by volume obtained from flavors and other added nonbeverage ingredients containing alcohol."<br><br>MD. CODE ANN., Tax-Gen. § 5-101(d) (2013) (Tax-General Title 5 – Alcoholic Beverage Tax) (same definition is currently in force). |
| **Missouri** | "No person, partnership or corporation engaged in the brewing, manufacture or sale of beer as defined, in this chapter, or other intoxicating malt liquor, shall use in the manufacture or brewing thereof, or shall sell any such beer or other intoxicating malt liquor which contains ingredients not in compliance with the following standards: |

---

[17]     Amended effective July 1, 2016, July 1, 2017, and July 1, 2019 to add additional detail regarding hard cider and to add reference to mead.  "Brewed alcoholic beverage" language remains part of the provision.  *See* MD. AL. BEV. §  1-101 (Alcoholic Beverages; Division 1).

| State | Definition in 2013 |
|---|---|
|  | (1) Beer shall be brewed from malt or a malt substitute, which only includes rice, grain of any kind, bean, glucose, sugar, and molasses. Honey, fruit, fruit juices, fruit concentrate, herbs, spices, and other food materials may be used as adjuncts in fermenting beer."<br><br>MO. ANN. STAT. § 311.490 (2013) (Chapter 311 – Liquor Control Law) (effective until May 29, 2019).[18] |
| Nevada | "As used in this chapter, 'beer' means any beverage obtained by the alcoholic fermentation of any infusion or decoction of barley, malt, hops, or any other similar product, or any combination thereof, in water."<br><br>NEV. REV. STAT. ANN. § 369.010 (2013) (Chapter 369 – Intoxicating Liquor: Licenses and Taxes) (same definition is currently in force). |
| New York | "Whenever used in this chapter, unless the context requires otherwise: . . .<br><br>3. 'Beer' means and includes any fermented beverages of any name or description manufactured from malt, wholly or in part, or from any substitute therefor."<br><br>N.Y. ALCO. BEV. CONT. LAW § 3 (2013) (same definition is currently in force).<br><br>*      *      *<br><br>"As used in this article: . . .<br><br>5. 'Beers' mean and include all alcoholic *beer*, lager beer, ale, porter, and stout, and all other fermented beverages of any name or description manufactured from malt, wholly or in part, or from any substitute therefor containing one-half of one per centum, or more, of alcohol by volume."<br><br>N.Y. TAX LAW § 420 (2013) (same definition is currently in force).<br><br>*      *      *<br><br>"(f) Beer means and includes any fermented beverages of any name or description containing one half of one percent or more of alcohol by volume, manufactured from malt, wholly or in part, or from any substitute therefor. Brand label registration is not required for cereal |

---

[18]    Amended effective May 30, 2019 to added, among other wording, "brewed from malt or a malt substitute, which only includes rice, grain of any kind, bean, glucose, sugar, and molasses." *See* MO. CODE REGS. ANN. tit. 11 § 70-2.010(3) (Division 70 – Division of Alcohol and Tobacco Control).

| State | Definition in 2013 |
|-------|--------------------|
| | beverages which contain less than one half of one percent alcohol by volume." |
| | N.Y. Alco. Bev. Con. App. § 84.1 (2013) (Appendix Rules of State Liquor Authority – Part 84 – Labels).  *See also* NY Admin Code § 84.1 (2013). |
| **Oklahoma** | "When used in the Oklahoma Alcoholic Beverage Control Act, the following words and phrases shall have the following meaning: . . . |
| | 5. 'Beer' means any beverage containing more than three and two-tenths percent (3.2%) of alcohol by weight and obtained by the alcoholic fermentation of an infusion or decoction of barley, or other grain, malt or similar products.  'Beer' may or may not contain hops or other vegetable products. |
| | 'Beer' includes, among other things, *beer*, ale, stout, lager beer, porter and other malt or brewed liquors, but does not include sake, known as Japanese rice wine." |
| | 37 Okla. St. Ann. § 506 (2013) (Title 37 – Intoxication Liquors) (effective until September 30, 2018).[19] |
| **Tennessee** | "(b) For purposes of this title, "beer" means *beer*, ale or other malt beverages, or any other beverages having an alcoholic content of not more than five percent (5%) by weight, except wine as defined in § 57-3-101; provided, however, that no more than forty-nine percent (49%) of the overall alcoholic content of such beverage may be derived from the addition of flavors and other nonbeverage ingredients containing alcohol." |
| | Tenn. Code Ann. § 57-5-101(b) (2013) (Title 57 – Intoxicating Liquors) (effective until June 30, 2014).[20] |

---

[19]     Amended effective October 1, 2018 to remove wording "containing more than three and two-tenths percent (3.2%) of alcohol by weight."  *See* Okla. Stat. Ann. tit. 37A, § 1-103 (Title 37a. Alcoholic Beverages).

[20]     Amended effective July 1, 2014 to change maximum alcohol content from 5% by weight to 8% by weight.  *See* Tenn. Code Ann. § 57-5-101(1) (Title 57. Intoxicating Liquors, Chapter 5 - Beer).  *See also* Tenn. Code Ann. § 57-5-603 (2013) (Title 57 – Intoxicating Liquors, Chapter 5 - Beer and Alcoholic Beverages Containing Less than Five Percent Alcohol, Part 6 – Tennessee Responsible Vendor Act of 2006) (incorporating definition in Tenn. Code Ann. § 57-5-101(b) (2013)); Tenn. Code Ann. § 57-6-102(1) (2013) (Title 57 – Intoxicating Liquors, Chapter 6 – Wholesale Taxes, Part 1 – Wholesale Beer Tax) (same); Tenn. Code Ann. § 57-3-101(a)(1)(A) (2013) (Title 57 – Intoxicating Liquors, Chapter 3 –Traffic in Intoxicating Liquors) (same); Tenn. Code Ann. § 57-3-412(a)(3)(A) (2013) (Title 57 – Intoxicating Liquors, Chapter 3 – Local Option--Traffic in Intoxicating Liquors – Crimes and offenses; children and minors; law enforcement officers) (same); Tenn. Code Ann. § 57-5-101(b) (2013) (Title 57 – Intoxicating Liquors, Chapter

| State | Definition in 2013 |
|---|---|
| **Virginia** | "As used in this title unless the context requires a different meaning:<br><br>'Beer' means any alcoholic beverage obtained by the fermentation of an infusion or decoction of barley, malt, and hops or of any similar products in drinkable water and containing one-half of one percent or more of alcohol by volume."<br><br>VA. CODE ANN. § 4.1-100 (2013) (Title 4.1 – Alcoholic Beverage Control Act) (same definition is currently in force). |
| **West Virginia** | "For the purposes of this chapter:<br><br>'Beer' shall mean any beverage obtained by the fermentation of barley, malt, hops, or any other similar product or substitute, and containing more alcohol than that of nonintoxicating beer.<br><br>'Nonintoxicating beer' shall mean any beverage, obtained by the fermentation of barley, malt, hops, or similar products or substitute, and containing not more alcohol than that specified by section two, article sixteen, chapter eleven."<br><br>W. VA. CODE ANN. § 60-1-5 (2013) (Chapter 60 – State Control of Alcoholic Liquors).<br><br>\*    \*    \*<br><br>"For the purpose of this article, except where the context clearly requires differently: . . .<br><br>(8) 'Nonintoxicating beer' means all natural cereal malt beverages or products of the brewing industry commonly referred to as *beer*, lager beer, ale and all other mixtures and preparations produced by the brewing industry, including malt coolers and nonintoxicating craft beers with no caffeine infusion or any additives masking or altering the alcohol effect containing at least one half of one percent alcohol by volume, but not more than nine and six-tenths of alcohol by weight, or twelve percent by volume, whichever is greater. The word "liquor" as used in chapter sixty of this code does not include or embrace nonintoxicating beer nor any of the beverages, products, mixtures or preparations included within this definition. |

---

5 – Beer and Alcoholic Beverages Containing Less than Five Percent Alcohol – Brewers and wholesales; restrictions) (containing same definition as TENN. CODE ANN. § 57-5-101(b) (2013)).

| State | Definition in 2013 |
|---|---|
| | W. Va. Code Ann. § 11-16-3 (2013) (Chapter 11- Taxation, Article 16 – Nonintoxicating Beer) (substantially the same definition is currently in force).<br><br>\*     \*     \*<br><br>"As used in these rules and unless the context clearly requires a different meaning, the following terms shall have the meaning ascribed in this section. . . .<br><br>2.2. 'Beer' means any beverage obtained by the fermentation of barley, malt, hops or any other similar product or substitute and containing more alcohol than that of nonintoxicating beer, including nonintoxicating craft beer, and shall be included in the definition of "liquor" and "alcoholic liquor," as used in chapter eleven, section sixteen and in chapter sixty of the West Virginia code shall not be construed to include or embrace nonintoxicating beer or nonintoxicating craft beer. . . .<br><br>2.16. 'Nonintoxicating Beer' means all cereal malt beverages or products of the brewing industry commonly referred to as *beer*, lager beer, ale and all other mixtures and preparations produced by the brewing industry, including malt coolers and nonintoxicating craft beers containing at least one half of one percent (.5%) alcohol by volume, but not more than nine and six-tenths percent (9.6%) of alcohol by weight, or twelve percent (12%) by volume, whichever is greater, all of which are hereby declared to be nonintoxicating and the word 'liquor' as used in W. Va. Code § 60-1-1 et seq. shall not be construed to include or embrace nonintoxicating beer nor any of the beverages, products, mixtures or preparations included within this definition."<br><br>W. Va. Code. St. R. § 176-1-2  (2013) (Title 176 – Alcohol Beverage Control Commission – Beer, Series 1 – Nonintoxicating Beer Licensing and Operations Procedures).[21]<br><br>\*     \*     \*<br><br>"Definition of terms used. – As used in this rule, unless the context clearly requires otherwise, the following terms shall have the meaning ascribed herein, and shall apply in the singular and in the plural. . . . |

---

[21]    *See also* W. Va. Code. St. R. § 175-5-2 (2013) (Title 175 – Alcohol Beverage Control Commission – Beer, Series 5 – Licensing of Retail Outlets) (containing same definition as W. Va. Code. St. R. § 176-1-2 (2013)).

| State | Definition in 2013 |
| --- | --- |
| | 2.28. 'Nonintoxicating beer' means all cereal malt beverages or products of the brewing industry, commonly referred to as *beer*, lager beer, and ale, and any other mixture or preparation produced by the brewing industry, including malt coolers, containing at least one half of one percent (.5%) alcohol by volume, but not more than four and two-tenths percent (4.2%) of alcohol by weight, or six percent (6%) by volume, whichever is greater, which is designated by W. Va. Code § 11-16-3 to be nonintoxicating. The word "liquor" as used in W. Va. Code § 60-1-1 et seq. does not include or embrace nonintoxicating beer nor any of the beverages, products, mixtures or preparations included within this definition." <br><br> W. VA. CODE. ST. R. § 175-4-2 (2013) (Title 175 – Alcohol Beverage Control Commissioner, Series 4 – Sale of Wine). |