## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CERVECERÍA MODELO DE MÉXICO,
S. DE R.L. DE C.V., and TRADEMARKS
GRUPO MODELO, S. DE R.L. DE C.V.

               Plaintiffs,

       v.

CB BRAND STRATEGIES, LLC,
CROWN IMPORTS LLC, and
COMPAÑÍA CERVECERA DE
COAHUILA, S. DE R.L. DE C.V.

               Defendants.

: : : : : : : : : : : : : : : :

No. 21-CV-01317-LAK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MODELO'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON LIABILITY

Michael H. Steinberg (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6670
Facsimile: (310) 712-8870
steinbergm@sullcrom.com

Marc De Leeuw
Akash M. Toprani
Adam R. Rahman
Colin O. Hill
Kirandeep K. Mahal (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 291-9113
deleeuwm@sullcrom.com

*Counsel for Plaintiffs*

August 5, 2022

# TABLE OF CONTENTS

I. THE UNDISPUTED FACTS RELEVANT TO THE  PLAIN MEANING OF THE SUBLICENSE ........................................................................................................1

    A.    Constellation's Limited Right Under the Sublicense to Use Modelo's Trademarks Only for "Beer" ...................................................1

    B.    The Plain Meaning of Beer, Malt Beverages, and Version ....................................2

    C.    Constellation's Hard Seltzer Products Are Not "Beer," "Malt Beverages," or a "Version" of Either Within the Plain Meaning of Those Terms...........................................................................................5

II. THE UNDISPUTED FACTS RELEVANT TO NEGOTIATION  OF THE SUBLICENSE ........................................................................................................7

    A.    In 2006 and 2007, Modelo and Constellation Negotiated Joint Venture Agreements to Import Modelo "Beer," Which Constellation Publicly Represented Was Limited to "Malt-Based" Beverages...........................7

    B.    To Obtain DOJ Approval of the ABI-Modelo Merger, Modelo in 2013 Granted Constellation a Sublicense to Sell "Beer" in the U.S. Under the Modelo Brands, Using the Same Definition of "Beer" From the  Joint Venture Agreement.......................................................11

III. THE UNDISPUTED TERMS OF THE SUBLICENSE .................................................14

IV. THE UNDISPUTED FACTS CONCERNING THE PARTIES' CONDUCT  AFTER EXECUTION OF THE SUBLICENSE.............................................................................17

    A.    Constellation Launched—With Modelo's Support—New Innovations Using Modelo's Brands That Compete Directly With ABI Products.............................................................................17

    B.    Seeking to Capitalize on the Explosive Growth of Hard Seltzers, Constellation Changed Its Decade-Old Understanding of the Sublicense and Launched a Sugar-Based Hard Seltzer Under the Corona Brand in 2020 .........................................................................18

    C.    ████████████████████████████████████ .................22

V.      IT IS UNDISPUTED THAT NEITHER THE IRC DEFINITION OF "BEER"  NOR
        THE "BEER CATEGORY" IS GENERAL, UNIFORM AND UNVARYING IN THE
        ALCOHOLIC BEVERAGE INDUSTRY.........................................................................23

        A.      The IRC Definition of "Beer" Is Not General, Uniform and
                Unvarying in the Alcoholic Beverage Industry. ....................................................23

        B.      The "Beer Category" Is Not General, Uniform and  Unvarying in the
                Alcoholic Beverage Industry. ................................................................................27

Pursuant to Civil Rule 56.1(a) of the Local Rules of Civil Procedure for the Southern District of New York, Plaintiffs Cervecería Modelo de México, S. de R.L. de C.V. and Trademarks Grupo Modelo, S. de R.L. C.V. ("Modelo") respectfully submit this Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment.[1]

## I.   THE UNDISPUTED FACTS RELEVANT TO THE PLAIN MEANING OF THE SUBLICENSE[2]

### A.   Constellation's Limited Right Under the Sublicense to Use Modelo's Trademarks Only for "Beer"

1.     On June 7, 2013, Marcas Modelo, S. de R.L. de C.V. and Constellation Beers Ltd. entered into an Amended and Restated Sub-License Agreement (the "Sublicense").[3]   (Ex. 124 (Sublicense).)

2.     Under the terms of the Sublicense, Constellation can sell products bearing certain U.S. "Trademarks," including the Corona and Modelo trademarks, but only if the products are "Importer Products."  (*Id.* § 2.1(a) at 11.)  Under the Sublicense, an "Importer Product" must be a "Beer" (*id.* § 1.1 at 4, 6, 8), which is in turn defined as "beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including non-alcoholic versions of any of the foregoing" (*id.* § 1.1 at 4).

---

[1]     All citations to "Ex. __" refer to the exhibits attached to the Declaration of Marc De Leeuw in Support of Plaintiffs' Motion for Summary Judgment on Liability, dated August 5, 2022.

[2]     As explained in Modelo's Memorandum in Support of Its Motion for Summary Judgment on Liability, summary judgment should be entered for Modelo because it is undisputed that the products at issue are not licensed under the plain meaning of the contract at issue (the Sublicense).  Thus, Modelo sets forth the undisputed facts on this subject in Section I.  Modelo respectfully submits that the undisputed facts in Section I are alone sufficient for the Court to grant summary judgment to Modelo.

[3]     Plaintiff Trademarks Grupo Modelo and Defendant CB Brand Strategies, LLC are successors to the signatories to the Sublicense, and CB Brand Strategies, LLC granted certain sublicenses under the Sublicense to Defendants Crown Imports LLC and Compañía Cervecera de Coahuila, S. de R.L. de C.V.  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 12.)  Defendants are all subsidiaries of Constellation Brands, Inc.  (Ex. 99 (Ex. 2.1 to CBI FY 2022 10-K).)  For simplicity, Defendants are collectively referred to herein as "Constellation."

3.      Modelo retained ownership of all of the Trademarks licensed to Constellation, including exclusive right to use the Trademarks except as specifically granted to Constellation. (*Id.* at 918; ████████████████████████████)

**B.      The Plain Meaning of Beer, Malt Beverages, and Version**

4.      The plain meaning of "beer" is an alcoholic beverage made with malted grain, water and yeast, and flavored with hops.

- Ex. 9 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2004)) at 3 (defining "beer" as an "alcoholic beverage usually made from malted cereal grains (as barley), flavored with hops, and brewed by slow fermentation");

- Ex. 10 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2014)) (same);

- Ex. 11 (WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)) (defining "beer" as "a malted and hopped somewhat bitter alcoholic beverage");

- Ex. 12 (RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001)) at 3 (defining "beer" as "an alcoholic beverage made by brewing and fermentation from cereals, usually malted barley, and flavored with hops and the like for a slightly bitter taste");

- Ex. 13 (WEBSTER'S II NEW COLLEGE DICTIONARY (1999)) at 3 (defining "beer" as "[a] fermented alcoholic beverage brewed from malt and flavored with hops");

- Ex. 14 (WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (1983)) (defining "beer" as "a mildly alcoholic drink made from any farinaceous grain, but generally from barley, which is first malted and ground, and its fermentable substance then extracted by hot water.  This extract or infusion is boiled in caldrons, and hops or

some other substance of an agreeable bitterness added.  The liquor is then allowed to ferment in vats");

- Ex. 15 (AMERICAN HERITAGE DICTIONARY (5th ed. 2011)) (defining "beer" as "a fermented alcoholic beverage brewed from malt and flavored with hops");

- Ex. 16 (NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010)) at 3 (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavored with hops");

- Ex. 17 (THE OXFORD COMPACT ENGLISH DICTIONARY (2nd ed. rev. 2003)) at 3 (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavoured with hops");

- Ex. 18 (DICTIONARY.COM) (defining "beer" as "an alcoholic beverage made by brewing and fermentation from cereals, usually malted barley, and flavored with hops and the like for a slightly bitter taste");

- Ex. 19 (GOOGLE DICTIONARY, Powered by Oxford Languages) (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavored with hops").

5.      The plain meaning of "malt beverage" is a beverage made with malt.  "Malt" is a grain (usually barley) that has been steeped in water, germinated, and kiln dried.

- Ex. 9 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2004)) at 4 (defining "malt" as "grain (as barley) softened by steeping in water, allowed to germinate, and used especially in brewing and distilling");

- Ex. 12 (RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001) at 4 (defining "malt" as "germinated grain, usually barley, used in brewing and distilling");

- Ex. 13 (WEBSTER'S II NEW COLLEGE DICTIONARY (1999)) at 4 (defining "malt" as "[g]rain, usually barley, that has been allowed to sprout, used chiefly in brewing and distilling");

- Ex. 16 (NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010)) at 4 (defining "malt" as "barley or other grain that has been steeped, germinated, and dried, especially for brewing or distilling and vinegar-making");

- Ex. 17 (THE OXFORD COMPACT ENGLISH DICTIONARY (2003)) at 4 (defining "malt" as "barley or other grain that has been steeped, germinated, and dried, used for brewing or distilling");

- Ex. 21 (DICTIONARY.COM) (defining "malt" as "germinated grain, usually barley, used in brewing and distilling");

- Ex. 20 (GOOGLE DICTIONARY) ("barley or other grain that has been steeped, germinated, and dried, used for brewing or distilling and vinegar-making."); (*see also* Ex. 128 (Defs.' Am. R&Os to Pls.' First RFAs) at RFA No. 1 & n.1.)

6.     The plain meaning of "version" is a "a particular form of something differing in certain respects from an earlier form or other forms of the same type of thing." (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32 (quoting NEW OXFORD DICTIONARY 2055 (1st ed. 1998)); *see also id.* ("A form or variant of a type or original" (quoting MERRIAM-WEBSTER'S DICTIONARY 1390 (11th ed. 2003));

**C.    Constellation's Hard Seltzer Products Are Not "Beer," "Malt Beverages," or a "Version" of Either Within the Plain Meaning of Those Terms.**

7.      Constellation has sold the following products (including their various flavors) bearing certain of the Trademarks specified in the Sublicense:  Corona Hard Seltzer, Corona Hard Seltzer Limonada, Corona Hard Seltzer Seltzerita, and Modelo Ranch Water (together, the "Hard Seltzer Products").  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶¶ 4, 5, 40, 46, 47; ███████████████████████████████████████)

8.      The Hard Seltzer Products are not made with any malt.  (Ex. 128 (Defs.' Am. R&Os to Plfs.' First RFAs) at RFA Nos. 1-9; ██████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

9.      The Hard Seltzer Products are not flavored with hops.  Hops is not identified as an ingredient on the packaging of the Hard Seltzer Products.  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶¶ 46, 47; Ex. 100 (Photo of Ingredients on Modelo Ranch Water Packaging) at 2.) ████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

[REDACTED]

*see also* Ex. 1 (21 C.F.R. 101.100(a)(3)).)

10.     The Hard Seltzer Products are not "beer" within the plain meaning of the term.  (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 37-38.)  Constellation conceded that the "average person on the street" would not consider its sugar-based hard seltzers to be beer.  (*Id.*)

11.     The Hard Seltzer Products are not "malt beverages" within the plain meaning of the term.  (*See* Ex. 125 (ECF. No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32-33, 37-38; Ex. 128 (Defs.' Am. R&Os to Pls.' First RFAs) at RFA Nos. 1-9.)

12.     Because the Hard Seltzer Products are not a form or type of "beer" or "malt beverage," they are not a "version" of either within the plain meaning of the term.  (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32 (quoting NEW OXFORD DICTIONARY 2055 (1st ed. 1998) & MERRIAM-WEBSTER'S DICTIONARY 1390 (11th ed. 2003)); [REDACTED]

[REDACTED])

[REDACTED]

**II.     THE UNDISPUTED FACTS RELEVANT TO NEGOTIATION
OF THE SUBLICENSE**

**A.     In 2006 and 2007, Modelo and Constellation Negotiated Joint Venture
Agreements to Import Modelo "Beer," Which Constellation Publicly
Represented Was Limited to "Malt-Based" Beverages.**

13.     In 2006, Modelo and Constellation affiliates agreed to form a joint venture, to be
called Crown Imports LLC ("Crown"), that would be the sole importer and distributor of Modelo-
branded beer in the United States.  (Ex. 121 (Agreement to Establish JV); ███████████████
███████████████ )

14.     Constellation's attorneys prepared the first drafts of the agreements to form a joint
venture (the "JV Agreements") and provided those to Modelo's counsel in April 2006.  (Ex. 119
(April 2006 Draft JV Agreements) at 210; ███████████████████████      Those drafts
defined "Beer" as "beer, ale, porter, stout, malt beverages, and any other versions or combinations
of the foregoing, including, without limitation, non-alcoholic versions of any of the foregoing."
(Ex. 119 (April 2006 Draft JV Agreements) at 217, 249, 290, 331, 381, 399.)

15.     ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

16.     ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

17.

19.

20.

21.

22.     The JV Agreements attached to Constellation's draft 8-K stated that the parties would "execute and deliver a limited liability agreement for the Company" (the "Proposed LLC Agreement") and that the Proposed LLC Agreement would contain a non-compete clause prohibiting the parties to the joint venture or their affiliates from competing with Crown in any business that "imports or distributes Beer." Ex. 121 (Agreement to Establish JV) at § 3.3(b) of Ex. B.)

23.     When the parties closed the JV transaction and signed the JV Agreements on January 2, 2007, Constellation filed with the SEC a second Form 8-K, which stated the executed LLC Agreement "does not restrict" the joint venture parties or their affiliates "from engaging in or having an interest in the production, sale or distribution of any alcoholic beverage that is not malt-based, an ale, a porter or a stout," again indicating that the definition of "Beer" excluded products that were "not malt-based."  (Ex. 123 (Constellation 1/02/2007 Form 8-K) at 6.)

24.     Constellation has never amended its July 17, 2006 or January 2, 2007 Forms 8-K issued in connection with the JV Agreements.  (█████████████████████████████████

**B.     To Obtain DOJ Approval of the ABI-Modelo Merger, Modelo in 2013 Granted Constellation a Sublicense to Sell "Beer" in the U.S. Under the Modelo Brands, Using the Same Definition of "Beer" From the Joint Venture Agreements.**

25.     In 2012, Anheuser-Busch InBev SA/NV ("ABI") announced that it was acquiring the shares it did not already own in Grupo Modelo.  (Ex. 67 (Press Release) at 273; ████████ ████████████████)

26.     The United States Department of Justice ("DOJ") expressed concern that the deal could harm competition, █████████████████████████████████████, the DOJ filed suit to enjoin the proposed merger.  (Ex. 102 (DOJ Complaint); ███████████ █████████████

27.     In its complaint, the DOJ alleged that the proposed merger would hinder competition in the product market for "beer," which it defined as "alcoholic beverages usually made from a malted cereal grain, flavored with hops, and brewed via a process of fermentation." (Ex. 102 (DOJ Complaint) at 8.)  Constellation moved to intervene in the action and filed a proposed answer, where it admitted the definition of "beer" in the DOJ's complaint.  (Ex. 104 (Constellation Motion to Intervene and Proposed Answer) at 9.)[5]

28.     ABI, Modelo, and Constellation, in consultation with the DOJ, crafted a remedy that would allow the ABI/Modelo merger to proceed while addressing the competition concerns expressed in the DOJ's complaint. ██████████████████████████████████████

████████████████████████████████████████████████████████████████████

29.     The remedy agreed upon by all parties and the DOJ included the Sublicense, which was designed specifically to address the DOJ's antitrust concerns with respect to a potential lessening of competition in the market for "beer." (

, Ex. 27 (Elzinga Rpt.) ¶¶ 33-39.)

30.



31.

[black redaction bar]

32.     The court-ordered Final Judgment marked the resolution of the DOJ's lawsuit.  (Ex.

111 (Final Judgment).)  In the Final Judgment, [black redaction bar]

[black redaction bar] "Beer" was defined as

"any fermented alcoholic beverage that (1) is composed in part of water, a type of starch, yeast,

and a flavoring and (2) has undergone the process of brewing" (Ex. 111 (Final Judgment) at 4.)

## III.     THE UNDISPUTED TERMS OF THE SUBLICENSE

33.     As part of the Sublicense, Modelo provided Constellation with U.S. trademarks and

recipes for the existing products covered by the agreement, all of which were beers—made with

malt and flavored with hops.  (Ex. 124 (Sublicense) at 40-42; *see also*, *e.g.*, Ex. 31 (1987 U.S.

Trademark Registration for Corona); Ex. 32 (1992 U.S. Trademark Registration for Corona); Ex.

33 (1992 U.S. Trademark Registration for Corona); Ex. 30 (1975 U.S. Trademark Registration for

Modelo); Ex. 36 (2018 U.S. Trademark Registration for Modelo); Ex. 34 (1992 U.S. Trademark

Registration for Pacifico).)

34.     The Sublicense grants Constellation the right to use the licensed trademarks solely

in connection with the importing, advertising, promoting, marketing, and selling of "Beer" in the

"Territory," *i.e.*, "the fifty states of the United State of America, the District of Columbia and

Guam."  (Ex. 124 (Sublicense) § 1.1 at 9, § 2.1(a) at 11.)

35.     The Sublicense includes rights for Constellation to innovate by modifying existing

recipes and creating new ones, but any new innovation is limited to "Beer" as defined in the

Sublicense.  (*Id*. at 23-25.)

36.     The Sublicense defines "Beer" as "beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including non-alcoholic versions of any of the foregoing."  (Ex. 124 (Sublicense) § 1.1 at 4.)  The Sublicense definition of "Beer" refers only to the liquid, not the container or packaging of the product.  (*See* Ex. 124 (Sublicense) § 1.1 at 4 ("'Brand Extension Beer' means Beer packaged in Containers . . ."), 903 ("'Container' means the bottle, can, keg or similar receptacle in which the Beer *is directly placed*.") (emphasis added).)

37.     The definition of "Beer" in the Sublicense is identical to the definition of "Beer" in the JV Agreements, with the exception of one non-substantive change.  (███████████████████ ████████████████████████████████  In the earlier JV Agreements, "Beer" was defined as "beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including, without limitation, non-alcoholic versions of any of the foregoing."  (Ex. 121 (Agreement to Establish JV) at 2.)  The Sublicense definition of "Beer" cut the words "without limitation," but this change had no impact because the Sublicense's "Construction" clause already defined "including" to mean "include, without limitation."  (Ex. 124 (Sublicense) § 1.2(a)(v) at 10; ████████████████████.)

38.     The Sublicense definition of "Beer" differs from the IRC definition of "beer."  The first four words are the same, and then the wording of the Sublicense definition diverges from the IRC definition.  (*Compare* Ex. 124 (Sublicense) § 1.1 at 4 *with* Ex. 3 (IRC Definition of Beer).)  The IRC definition of "beer" includes "similar fermented beverages . . . produced from malt . . . or from any substitute therefor," which is the portion of the definition that captures sugar-based hard seltzers.  (Ex. 29 (Messinger Rpt.) ¶¶ 54-55; Ex. 3 (IRC Definition of Beer).)  The Sublicense definition of "Beer" does not include "similar fermented beverages . . . produced from malt . . . or from any substitute therefor."  (Ex. 124 (Sublicense) § 1.1 at 4.)

39.     The "Construction" clause of the Sublicense addresses incorporation of statutes and regulations.  Section 1.2(c) of the Sublicense provides that "references to statutes shall include all regulations promulgated thereunder."  (Ex. 124 (Sublicense) § 1.2(c) at 10.)

40.     In accordance with section 1.2(c), certain portions of the Sublicense incorporate statutes and regulations.  (*See*, *e.g.*, Ex. 124 (Sublicense) § 2.14 at 22 (citing 15 U.S.C. § 1127)), § 9.11 at 36 (citing 11 U.S.C. §§ 101 *et seq.*).)  The Sublicense definition of "Beer" does not reference or expressly incorporate the IRC definition or any other statutes or regulations.  (Ex. 124 (Sublicense) § 1.1 at 4.)

41.     The Sublicense contemplates a potential product that includes distilled spirits and falls within its definition of "Beer."  (Ex. 124 (Sublicense) § 2.15(c) at 24.)  Section 2.15(c) of the Sublicense provides that if Modelo markets a product that adds distilled spirits to "Beer" (as defined in the Sublicense) in Mexico or Canada, then Constellation would be permitted to do the same in the U.S.  (Ex. 124 (Sublicense) § 2.15(c) at 24.)  Such a potential product would not fall within the IRC definition of "beer."  Under the IRC, any product that contains any distilled spirits (*e.g.*, distilled spirits added to a beer) is an IRC "distilled spirit" not an IRC "beer."  ( ██████ ████████████████████████████████████████████████ ████████████████ *see* Ex. 2 (26 U.S.C. § 5002(a)(8)) ("The terms 'distilled spirits,' 'alcoholic spirits,' and 'spirits' mean that substance known as ethyl alcohol, ethanol, or spirits of wine in any form (including all dilutions and mixtures thereof from whatever source or by whatever process produced).").)

42.     The Sublicense permits Constellation to use the term "Cerveceria Modelo . . . as the fictitious name or 'd/b/a' for its brewery located in Mexico."  (Ex. 124 (Sublicense) § 2.1(e) at 13.)  Neither of Constellation's breweries in Mexico is a "brewery" under the IRC; ████████████

-16-

███████████████████████████████████████████████████████

*see* Ex. 4 (26 U.S.C. § 5402(a)).)

## IV.   THE UNDISPUTED FACTS CONCERNING THE PARTIES' CONDUCT AFTER EXECUTION OF THE SUBLICENSE

### A.   Constellation Launched—With Modelo's Support—New Innovations Using Modelo's Brands That Compete Directly With ABI Products.

43.   Following the 2013 execution of the Sublicense, Modelo and Constellation had a ████████████████████ nd worked together to address matters, including Constellation requests for new trademark filings, changes to existing trademarks, and sharing recipes upon request.  (██████████████████████████████████████████

███████████████████████████████████████████████████████

44.   With the support of Modelo, Constellation exercised its right under the Sublicense to innovate, creating new products using the Modelo brands.  In 2018, Constellation launched Corona Premier, a low-carb, light lager, which competes directly against ABI products like Michelob Ultra.  (████████████████████████████████████████ ████████ Ex. 76 (Constellation Q1 2019 Earnings Call Tr.) at 3.)  In 2019, Constellation launched

Corona Refresca, a flavored malt beverage.  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 40.)

> **B.**     **Seeking to Capitalize on the Explosive Growth of Hard Seltzers, Constellation Changed Its Decade-Old Understanding of the Sublicense and Launched a Sugar-Based Hard Seltzer Under the Corona Brand in 2020.**

45.     "Hard Seltzers" did not exist at the time the Sublicense was negotiated.  ██████ ████████████████████████  By 2018, the market for hard seltzer had exploded, ████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████

46.     Constellation launched its first hard seltzer in June 2018, using the "SVEDKA" vodka brand name.  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 39; ████ ███████████████████████████████████████████████████)  Constellation's first hard seltzer was called "Svedka Spiked Seltzer."  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 39; ████████████████████████████████████████████████████████████) Constellation stopped selling Svedka Spiked Seltzer in August 2019 after the product performed poorly.  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 40.)

47.     Constellation subsequently decided to launch a hard seltzer using the "CORONA" brand.  (Ex. 82 (Constellation's Q2 2020 Earnings Call Tr.) at 4-5, 17.)  Constellation "decided to put the Corona brand name on [their] new seltzer" because "Corona carries unbelievably strong brand equity" and Constellation wanted "to enter [the hard seltzer] category with a brand that had deep trust with the consumer."  (*Id*. at 4, 17.)

48.     ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████



50.     Prior to the development and launch of Corona Hard Seltzer, every Modelo-branded product Constellation produced was made with malt.

51.

████████████████████████████████

52.     Constellation's trademark application for CORONA HARD SELTZER described the intended product as:  "Alcoholic beverages, ***except beer***; Hard seltzer; Flavored ***malt-based*** alcoholic beverages, ***excluding beer***."   (Ex. 41 (CORONA HARD SELTZER Trademark Application) at 854 (emphasis added); Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 43.)   Constellation also filed a new trademark application for CORONA, and that application also identified the product as being for "Alcoholic carbonated beverages, ***except beer***; Hard seltzer."  (Ex. 42 (PX-109 (CORONA Trademark Application)) at 860 (emphasis added); Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 43.)

53.     ████████████████████████████████

54.     In June 2020, four months after Corona Hard Seltzer was launched, Constellation amended the identification of goods in its CORONA HARD SELTZER trademark application, identifying Corona Hard Seltzer as "Hard Seltzer; ***Flavored malt-based*** alcoholic beverages, ***excluding beers***."  (Ex. 44 (CORONA HARD SELTZER Trademark Application Amendment) at 806 (emphasis added); *see also* Ex. 45 (CORONA Trademark Application Amendment) at 809 (updating CORONA trademark application identification to "Alcoholic carbonated flavored brewed ***malt beverages, except beer;*** Hard seltzer." (emphasis added)); Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 44.)

55.     At the time that the June 2020 product description amendments were made, the only product released as "Corona Hard Seltzer" was not malt-based.  (Ex. 128 (Defs.' Am. R&Os to Plfs.' First RFAs) at RFA Nos. 1-9; ███████████████████████████)

56.     The ingredients listed on the packaging of Corona Hard Seltzer (and all of the other Hard Seltzer Products) does not include malt or hops.  (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶¶ 44, 46, 47; Ex. 100 (Photo of Ingredients on Modelo Ranch Water Packaging).)



The Hard Seltzer Products do not taste like, look like, pour like, or have the aroma of a beer.  (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 30;

59. 

C.

60.

61.

62.



63.

64.

## V.     IT IS UNDISPUTED THAT NEITHER THE IRC DEFINITION OF "BEER" NOR THE "BEER CATEGORY" IS GENERAL, UNIFORM AND UNVARYING IN THE ALCOHOLIC BEVERAGE INDUSTRY.

### A.     The IRC Definition of "Beer" Is Not General, Uniform and Unvarying in the Alcoholic Beverage Industry.

65.     In the United States, alcohol is regulated at the federal, state, and local level by many different statutory schemes and regulatory agencies.  (Ex. 29 (Messinger Rpt.) ¶¶ 23-41; Ex. 28 (Fortin Rpt.) ¶¶ 21-35; Ex. 5 (TTB, "Alcohol Beverage Authorities in United States, Canada, and Puerto Rico").)

66.     There is no uniform regulatory definition of "beer" in the United States.  (Ex. 126 (ECF No. 29 (Defs.' Mot. to Dismiss Reply)) at 9.)

67.     The IRC definition of "beer" has not been adopted uniformly by regulators at the federal level.  For example, in a ruling issued in 2021, U.S. Customs and Border Protection ("CBP"), the federal agency responsible for overseeing all imports of alcoholic beverages, held that the definitions of "beer" in the IRC and TTB regulations "are not determinative" of CBP tariff classifications.  (Ex. 6 (U.S. CBP Tariff Classification of White Claw) at 8-9.)  The ruling was issued in response to a request dated August 3, 2020 by the makers of White Claw Hard Seltzer,

another sugar-based hard seltzer, that CBP classify White Claw Hard Seltzer under the heading 2203 ("Beer Made from Malt") of the U.S. Harmonized Tariff Schedule.  (*Id.* at 6-7.)  CBP determined that White Claw Hard Seltzer is classified under heading 2206 ("Other Fermented Beverages"), not heading 2203.  (*Id.* at 10, 11.)

68.    In the ruling, CBP stated that "[b]eer is a commonly recognized product" and "White Claw Hard Seltzer is entirely distinct from beer because it does not have the taste, aroma, character or appearance of beer" and "is not sold or marketed as beer."  (*Id.* at 9.)  The CBP also stated that "[i]n classifying the hard seltzer in heading 2006, HTSUS, we do not take into consideration the presence or absence of malted ingredients—rather, we consider that the alcohol base lacks any beer characteristics, and the hard seltzer is not commonly or commercially recognized as beer."  (*Id.* at 10.)

69.    The Brewers Association, which is a leading beer industry trade group (Ex. 29 (Messinger Rpt.) ¶ 6), organizes a beer competition called the World Beer Cup.  ( ████████████ ████████████ Ex. 133 (World Beer Cup Eligibility) at 1.)  The eligibility guidelines state that "[a]ll World Beer Cup entries must be commercially available, fermented malt beverages conforming to the trade understanding of 'beer' . . . [and] brewed by a permitted commercial brewery."  (*Id.* at 1.)  The guidelines go on to state that "seltzers . . . are not eligible to be entered in the World Beer Cup."  (*Id.* at 2.)

70.    At the state level, there are also many definitions of "beer" in state statutes and regulations.  (*See*, *e.g.*, Plfs.' Br. ISO Mot. for Summary Judgment, App'x A.)  In some states,

there is no regulatory definition of "beer" and instead the state uses some other term to capture alcohol products with a lower alcohol content like the terms "Malt Beverage" or "Malt Liquor." (*See*, *e.g.*, Plfs.' Br. ISO Mot. for Summary Judgment, App'x A.)

71.     The regulatory landscape at the state level is different now than it was in 2013 when the Sublicense was executed because in some states, the statutory or regulatory definition of "beer" has been amended since 2013.  (*See*, *e.g.*, Plfs.' Br. ISO Mot. for Summary Judgment, App'x A; Ex. 29 (Messinger Rpt.) ¶ 120.)

72.     The IRC definition of "beer" is not generally and uniformly known in the alcoholic beverage industry.



73.     Terms like "beer" and "brewer" that are defined in the IRC for regulatory purposes have a common and ordinary outside of the statutory definition.



74.    Industry participants also distinguish between "beer" and "hard seltzers," even though both would fall under the IRC definition of "beer."



75.

76.     Similarly, in a blog post on the website of Mr. Messinger's law firm, an attorney at the firm, Frank Knizner, explains that "both malt- and sugar-based hard seltzers are taxed federally as 'beer.'"  (Ex. 134 (Frank Knizner, "Hard Seltzer TTB Regulatory Considerations") at 1.)  In an update to the post, Mr. Knizner added a sentence making a distinction between beer ads and hard seltzer ads:  "We were not surprised to see plenty of beer ads on the Super Bowl yesterday but we were a little surprised to see Bon & Viv"—*i.e.*, a hard seltzer—"in the same expensive place."  (*Id.* at 2; *see* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

**B.     The "Beer Category" Is Not General, Uniform and Unvarying in the Alcoholic Beverage Industry.**

77.



78. 

Dated:   August 5, 2022                    Respectfully submitted,
         New York, New York

_____
/s/ *Michael H. Steinberg*

Michael H. Steinberg (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone: (310) 712-6670
Facsimile: (310) 712-8870
steinbergm@sullcrom.com

Marc De Leeuw
Akash M. Toprani
Adam R. Rahman
Colin O. Hill
Kirandeep K. Mahal (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 291-9113
deleeuwm@sullcrom.com

*Counsel for Plaintiffs Cervecería Modelo   de
México, S. de R.L. de C.V. and Trademarks
Grupo Modelo, S. de R.L. de C.V.*