**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CERVECERÍA MODELO DE MÉXICO,
S. DE R.L. DE C.V. and TRADEMARKS
GRUPO MODELO, S. DE R.L. DE C.V.,

        Plaintiffs,

    v.

CB BRAND STRATEGIES, LLC, CROWN
IMPORTS LLC, and COMPAÑÍA
CERVECERA DE COAHUILA, S. DE R.L.
DE C.V.,

        Defendants.

Case No. 1:21-cv-01317-LAK

**ECF Case**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
THE OPINIONS, REPORT, AND TESTIMONY OF KENNETH G. ELZINGA**

**KIRKLAND & ELLIS LLP**
Sandra C. Goldstein, P.C.
Stefan Atkinson, P.C.
Daniel R. Cellucci
Amal El Bakhar
Jenny Lee
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
daniel.cellucci@kirkland.com
amal.elbakhar@kirkland.com
jenny.lee@kirkland.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Background .................................................................................................................... 2

Legal Standard .............................................................................................................. 6

Argument ...................................................................................................................... 7

     I.    Elzinga Is an Improper Rebuttal Expert and His Expert Report Should Be
Treated as an Untimely Affirmative Report. ............................................ 7

          A.    Elzinga's Opinions Do Not Rebut Evidence on the "Same Subject"
of Constellation's Experts. ...................................................... 7

          B.    Elzinga's Affirmative Expert Report Is Untimely and Should Be
Excluded. .......................................................................... 12

     II.    Elzinga Offers Inappropriate Conclusions Regarding DOJ Intent and
Contract Interpretation, which Should Be Excluded as Improper and
Prejudicial. ..................................................................... 14

          A.    Elzinga's Testimony Exceeds the Bounds of Proper Expert
Testimony. ......................................................................... 15

          B.    Any Probative Value of Elzinga's Opinion Is Outweighed by Its
Potential to Cause Undue Prejudice to Constellation and Confuse
and Conflate the Issues. ........................................................ 17

          C.    Elzinga's Interpretation of the Sublicense Should Be Excluded
Because Experts Are Prohibited from Opining on the Meaning of
Terms of the Contract at Issue in the Case. ..................................... 19

Conclusion .................................................................................................................. 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)..................................................................6

*Daubert v. Merrell-Dow Pharms., Inc.*,
    509 U.S. 579, 113 S. Ct. 2786 (1993).....................................................6

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020).........................................15

*Giannone v. Deutsche Bank Sec., Inc.*,
    2005 WL 3577134 (S.D.N.Y. Dec. 30, 2005) ........................................18

*Hart v. BHH, LLC*,
    2018 WL 3471813 (S.D.N.Y. July 19, 2018) ..........................................7

*Highland Cap. Mgmt., L.P. v. Schneider*,
    551 F. Supp. 2d 173 (S.D.N.Y. 2008).....................................................16

*Joffe v. King & Spalding LLP*,
    2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019).........................................17

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*,
    14 F. Supp. 2d 391 (S.D.N.Y. 1998).......................................................19

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137, 119 S. Ct. 1167 (1999).......................................................6

*Lidle v. Cirrus Design Corp.*,
    2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ...................................8, 13

*Marx & Co. v. Diners' Club Inc.*,
    550 F.2d 505 (2d Cir. 1977)....................................................................19

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
    643 F. Supp. 2d 482 (S.D.N.Y. 2009).....................................................15

*Navigators Ins. Co. v. Goyard, Inc.*,
    2022 WL 2205596 (S.D.N.Y. June 21, 2022) ...................................6, 19

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)......................................................................6

*Rekor Sys., Inc. v. Loughlin*,
2022 WL 2063857 (S.D.N.Y. June 8, 2022) ..............................................7, 12, 13

*In re Rezulin Prod. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y.) ..............................................................................15

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................7

*Sigmon for Hindin v. Goldman Sachs Mortg. Co.*,
2018 WL 1517189 (S.D.N.Y. Mar. 26, 2018) ........................................................19

*Softel, Inc. v. Dragon Med. & Sci. Commc'n, Inc.*,
118 F.3d 955 (2d Cir. 1997).......................................................................12, 13, 14

*U.S. v. Awadallah*,
401 F. Supp. 2d 308 (S.D.N.Y. 2005), *aff'd*, 436 F.3d 125 (2d Cir. 2006) ...........18

*U.S. v. Casamento*,
887 F.2d 1141 (2d Cir. 1989)....................................................................................7

*U.S. v. Perez*,
2002 WL 31368100 (S.D.N.Y. Oct. 21, 2002) ......................................................18

*U.S. v. Quattrone*,
441 F.3d 153 (2d Cir. 2006).....................................................................................17

**Rules**

Fed. R. Civ. P. 26 ............................................................................................ *passim*

Fed. R. Evid. 403 ............................................................................................ *passim*

Fed. R. Evid. 702 .......................................................................................................5, 6

Defendants CB Brand Strategies, LLC, Crown Imports LLC, and Compañía Cervecera de Coahuila, S. de R.L. de C.V. (collectively, "Constellation") respectfully submit this memorandum of law in support of their motion to exclude the testimony of Kenneth G. Elzinga, a proposed rebuttal expert of Plaintiffs Cervecería Modelo de México, S. de R.L. de C.V. and Trademarks Grupo Modelo, S. de R.L. C.V. (collectively, "ABI").

## <u>INTRODUCTION</u>

The expert report and opinions of Kenneth G. Elzinga should be excluded in full. At the outset, Elzinga's opinions should be excluded because they are not proper rebuttal opinions. Elzinga (an antitrust economist) was supposedly proffered as a "rebuttal" expert to address the opinions of Constellation's two affirmative expert witnesses, John D. Messinger (an alcohol beverage regulatory expert) and Michael Kallenberger (a beer industry expert). Elzinga does not claim to be qualified to address alcohol beverage regulations or industry custom. In fact, Elzinga *admitted* that he is not rebutting the opinions of any of Constellation's experts. Rather, through Elzinga, ABI is belatedly attempting to inject affirmative testimony into this case in the guise of a "rebuttal" report. This effort should be rejected.

Independent of this timeliness issue, Elzinga's opinions should be excluded because Elzinga purports to offer testimony concerning the purported intent of the Department of Justice ("DOJ") in 2013. It is improper for Elzinga to speculate on DOJ intent. Even if Elzinga could offer testimony on the intent and motives of a government agency, which he cannot, ███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████ As such, Elzinga has no plausible basis on which to opine on DOJ's intent. Moreover, any glancing relevancy of DOJ's supposed intent is substantially outweighed by the prejudice that

admitting Elzinga's testimony — which purports essentially to speak for DOJ — would cause Constellation undue prejudice as it risks misleading and confusing the jury.[1]

Finally, certain of Elzinga's opinions are impermissible contract interpretation. For example, Elzinga provides his view of the meaning of the term "Beer" in the Sublicense.[2] (*E.g.*, Elzinga Report ¶ 42 n.58.[2]) Elzinga also offers improper and inaccurate testimony concerning the meaning of certain ███████████████████████████ provisions that are not at issue in this case. (*E.g.*, *id.* ¶ 60 ("████████████████████████████████

████████████"); *see also id.* ¶¶ 63-69.) At his deposition, Elzinga confirmed that █

████████████████████████████████████████████████████████

████████████████████. (Elzinga Dep. Tr. 259:7-10.[3]) Under controlling Second Circuit law, experts cannot offer testimony as to the meaning of a contractual term.

For these reasons, Elzinga's report and opinions fall short of the legal standards to admit expert testimony and should be excluded.

## BACKGROUND

The dispute between the parties centers on a straightforward question: whether the broad innovation rights granted to Constellation under the Sublicense permit it to manufacture, import, market, and sell the Corona Hard Seltzer and Modelo Ranch Water products. The parties diverge on, among other issues, their interpretation of the term "Beer" and whether Corona Hard Seltzer and Modelo Ranch Water meet that definition. (*See* Sublicense § 1.1 (defining "Beer").)

---

[1]    A true and correct copy of the Amended and Restated Sub-License Agreement Between Marcas Modelo, S. De. R.L. De C.V. and Constellation Beers Ltd., dated June 2013, is attached as Exhibit A to the Declaration of Mason E. Reynolds, filed contemporaneously with this motion.
[2]    A true and correct copy of the Expert Report of Kenneth G. Elzinga, dated May 2, 2022, is attached as Exhibit B to the Declaration of Mason E. Reynolds.
[3]    A true and correct excerpted copy of the Deposition Transcript of Kenneth Elzinga, dated June 15, 2022, is attached as Exhibit C to the Declaration of Mason E. Reynolds.

Pursuant to Federal Rule of Civil Procedure 26(a) and the Joint Stipulation and Scheduling Order issued by the Court on November 22, 2021 (Dkt. 68), the parties timely identified their respective affirmative experts and exchanged written reports on March 18, 2022. Constellation submitted affirmative reports from John D. Messinger, who opines on the topic of federal and state regulatory schemes applicable to alcohol beverages, and Michael Kallenberger, who opines on alcohol beverage industry custom and usage.[4] None of Constellation's affirmative experts purport to opine on antitrust economics, DOJ's analysis of the anticompetitive issues related to the ABI-Modelo merger, or DOJ's intent or motive behind approving the 2013 Sublicense.

On May 2, 2022, the parties submitted rebuttal reports. Among ABI's submission was Elzinga's supposed "rebuttal" report, purporting to respond to the opinions of Messinger and Kallenberger. But Elzinga is neither an alcohol beverage regulations nor a beer industry expert, and he does not address any of the opinions offered by Messinger and Kallenberger. Instead, the two questions Elzinga opines on are (i) what product market did DOJ apply in evaluating the competitive issues in the ABI-Modelo merger and how did that market definition relate to the DOJ-directed divestiture and (ii) whether there are procompetitive reasons for Modelo to enforce its purported rights under the Sublicense. (Elzinga Report ¶ 6.)

Neither of Constellation's affirmative experts offer any opinions even arguably on the same issues addressed by Elzinga. Elzinga actually highlights this divergence in his own report:

> Neither [Kallenberger or Messinger] addresses the question of how hard seltzer should be categorized, and whether it is "beer," ***by reference to the DOJ's contemporaneous competitive concerns regarding the actual ABI/Modelo merger***. Nor do they provide any arguments or evidence related to the question of what procompetitive motives Modelo may have to enforce its rights under the Sublicense related to hard seltzer. Neither Mr. Messinger nor

---

[4]    True and correct copies of the Second Amended Expert Report of John D. Messinger, dated June 15, 2022, and the Expert Report of Michael Kallenberger, dated March 18, 2022, are attached as Exhibits D and E to the Declaration of Mason E. Reynolds.

> Mr. Kallenberger purports to analyze this issue on the basis of the market conditions in place in 2013, at the time of the proposed merger. For this and other reasons, ***my analysis is very different from theirs***.[5]

(Elzinga Report ¶ 7.) Elzinga fully acknowledges that "[n]either of the Defendants' expert reports addressed the question of what DOJ's antitrust concerns with the ABI-Modelo merger were and what the relevant product for evaluating competitive effects from the merger should be." (Elzinga Report ¶ 27.) In discussing Kallenberger's report, Elzinga notes that, aside from a reference in the Background section of Kallenberger's report to the fact that DOJ investigated the ABI-Modelo merger, "[t]he remainder of his report … makes no further reference to DOJ's competitive concerns." (Elzinga Report ¶ 27.) Elzinga admits openly that "Mr. Kallenberger's description of his assignment also suggests that his analysis and opinions do not pertain to DOJ's competitive concerns in the ABI/Modelo merger." (Elzinga Report ¶ 27.) Elzinga even testified that Kallenberger's report ███████████████████████████████████████████." (Elzinga Dep. Tr. 72:1-2.) Similarly, Elzinga, quoting Messinger, notes that DOJ's "views on alcohol beverage classification, if any, is beyond the scope of his report." (Elzinga Report ¶ 27.) At his deposition, Elzinga testified that, after reading Messinger's report, he asked himself, "███ ████████████████████████████████████████████████████████████ ███████" — both topics of primary focus in Elzinga's report. (Elzinga Dep. Tr. 92:5-7.) Despite Elzinga's own report and deposition testimony confirming that he is not rebutting opinions offered by either Kallenberger or Messinger, ABI proffered Elzinga's report as rebuttal testimony.

Elzinga's proposed "rebuttal" testimony can be contrasted with ABI's two additional rebuttal experts which, while objectionable for other reasons, at least purport to rebut certain of

---

[5]     Unless otherwise noted, internal quotations, alterations, citations, and subsequent history have been omitted and emphasis has been added.

Constellation's affirmative expert opinions. Specifically, in addition to Elzinga, ABI proffered the rebuttal testimony of (i) Neal Fortin to rebut Messinger's opinions on alcohol beverage regulation and (ii) Mike Mitaro to rebut Kallenberger's opinions on industry custom. There is no place in this case for a third ABI "rebuttal" expert addressing antitrust economic analysis, a topic Constellation did not address in any affirmative expert report.

Even if the Court determines that Elzinga's affirmative opinions are timely disclosed rebuttal testimony (they are not), Elzinga's opinions regarding DOJ's anticompetitive concerns and intent in approving the Sublicense exceed the bounds of proper expert testimony and amount to pure speculation. ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ (Elzinga Dep. Tr. 108:7-18.) His opinion conflates the issues and risks juror confusion and should be excluded as unfairly prejudicial. Additionally, Elzinga engages in improper contract negotiation and finishes his report with a bizarre, half-baked legal interpretation of ████████████████████████████████ provisions that are not in dispute in this litigation.

Elzinga is an improper rebuttal expert, and his conclusions extend beyond the scope of proper expert testimony, are unfairly prejudicial, and amount to inappropriate interpretation of the Sublicense. For the reasons explained herein, the entirety of Elzinga's opinions, report, and testimony should be excluded.

**<u>LEGAL STANDARD</u>**

The Supreme Court has defined the "gatekeeping" role of a district court with regard to expert testimony, holding that "the Rules of Evidence — especially Rule 702 — do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell-Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). Federal Rule of Evidence 702 incorporates the principles articulated in *Daubert*. Under Rule 702,

> "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. In *Daubert*, the Supreme Court held that Rule 702 imposes a special obligation on trial judges to ensure that scientific testimony is not only relevant but reliable as well. 509 U.S. at 589, 113 S. Ct. at 2795. The Supreme Court subsequently extended this "gatekeeping" obligation "to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999).

Like all other testimony, expert testimony "is also subject to exclusion under Fed. R. Evid. 403 where its probative value is substantially outweighed by the danger of unfair prejudice or other factors." *Navigators Ins. Co. v. Goyard, Inc.*, 2022 WL 2205596, at *3 (S.D.N.Y. June 21, 2022); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002); *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

# ARGUMENT

Elzinga's opinion and testimony should be excluded in their entirety. *First*, Elzinga fails to offer appropriate rebuttal testimony, and his affirmative expert report is untimely. (Argument I.) *Second*, his opinions should be excluded because his testimony regarding DOJ's intent and motives are improper and prejudicial, and certain of his opinions amount to inadmissible contract interpretation that exceeds the bounds of proper expert testimony. (Argument II.)

## I.     ELZINGA IS AN IMPROPER REBUTTAL EXPERT AND HIS EXPERT REPORT SHOULD BE TREATED AS AN UNTIMELY AFFIRMATIVE REPORT.

Elzinga does not offer rebuttal testimony, and his report should be excluded in full. *First*, Elzinga's report offers opinions on issues that are unrelated to the reports he allegedly is rebutting. Specifically, Elzinga does not rebut any testimony from either Kallenberger or Messinger. *Second*, ABI provides no explanation for why Elzinga's report fails to meet the standards of rebuttal testimony or why the report was not timely submitted as an affirmative report. Elzinga's report, testimony, and opinions should be excluded as untimely.

### A.     Elzinga's Opinions Do Not Rebut Evidence on the "Same Subject" of Constellation's Experts.

Elzinga's expert report and opinions amount to improper rebuttal testimony under Federal Rule of Civil Procedure 26(a)(2)(D)(ii). Rule 26 allows rebuttal expert testimony "intended solely to contradict or rebut evidence *on the same subject matter*" as the other party's expert report. Fed. R. Civ. P. 26(a)(2)(D)(ii). Accordingly, rebuttal expert testimony is admissible only "when it will explain, repel, counteract or disprove the evidence of the adverse party." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016); *see also U.S. v. Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) ("The function of rebuttal evidence is to explain or rebut evidence offered by the other party."). While "[r]ebuttal experts may rely on new methodologies for the purpose of rebutting or critiquing the opinions of the opposing party's expert witness," *Hart v. BHH, LLC*,

2018 WL 3471813, at *9 (S.D.N.Y. July 19, 2018), "a rebuttal expert report is not the proper place for presenting new arguments." *Rekor Sys., Inc. v. Loughlin*, 2022 WL 2063857, at *7 (S.D.N.Y. June 8, 2022) (excluding an expert report that failed to meet the standards for rebuttal testimony and for being an untimely affirmative report). Courts in this Circuit have made clear that ABI "cannot use the fact that [it] did not address those subjects as an excuse to introduce into the case entirely new opinions on a new subject on the guise that they are rebuttal." *Id.* (excluding rebuttal opinions that were "not addressed to the same subject matter as [the opposing party's affirmative expert report] and[] … [did] not repel, counteract, or disprove of any of the opinions expressed [by the opposing party's affirmative expert]"); *see also Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *4-5 (S.D.N.Y. Dec. 18, 2009) (excluding reply report that "merely rehashe[d] the conclusions reached in [the expert's] opening report" and did not address the specific issues address by defendants' expert, explaining: "[r]ebuttal evidence is confined to new matters adduced by the defense and not to repetition of the plaintiff's theory of the case"). Here, while Elzinga's report mentions the reports of Messinger and Kallenberger (*e.g.*, Elzinga Report ¶ 6), Elzinga does nothing to clarify, respond, or refute their findings. Elzinga should be treated as an affirmative expert and excluded as untimely.

Elzinga's testimony does not address the reports written by either of Constellation's experts. Rather than explain or contradict the testimony of Kallenberger and Messinger, Elzinga opines on two unrelated questions: (i) how the product market considered by DOJ in evaluating the competitive issues in the ABI-Modelo merger supposedly relate to the Sublicense and (ii) whether there are procompetitive reasons for Modelo to enforce its supposed rights under the Sublicense. (Elzinga Report ¶ 6.) By Elzinga's own account, these topics were not addressed by either Kallenberger or Messinger. (Elzinga Report ¶ 73 ("Neither Mr. Messinger nor

Mr. Kallenberger account for DOJ's competitive concerns regarding the ABI/Modelo merger that led to the design of the remedy and associated Sublicense. My analysis does.").) As confirmed by his own report and deposition testimony, it is clear that Elzinga's opinions are not "intended solely to contradict or rebut evidence on the same subject matter" encompassed in the opposing party's expert report. Fed. R. Civ. P 26(a)(2)(d)(ii). Throughout his report, Elzinga refers to his experience and expertise in the field of antitrust economics. (*See* Elzinga Report ¶¶ 9, 31, 35.) However, neither Kallenberger nor Messinger are experts in or address this topic. At his deposition, Elzinga underscored that the task assigned to him by ABI is distinct from the assignments of Kallenberger and Messinger. Elzinga testified that, unlike Kallenberger or Messinger, his analysis regarding ██████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████."

(Elzinga Dep. Tr. 79:8-10, 16-19.)

Likewise, the second part of Elzinga's opinion — the supposed procompetitive reasons Modelo may have for enforcing its purported rights under the Sublicense — is entirely disconnected from both Kallenberger and Messinger's opinions. (Elzinga ¶¶ 57-69.) In the final 11 paragraphs of Elzinga's supposed rebuttal report, he embarks on a tortured analysis of why ABI's efforts to remove a competitor's product in order to shelter its own hard seltzers and pave the way for the release of an ABI-manufactured Corona Hard Seltzer *might* be a good thing for competition.[6] Again, this has nothing to do with the opinions rendered by either Kallenberger or Messinger.

---

[6]    Notably, Elzinga ███████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████" (Elzinga Dep. Tr. 236:2-11.) Elzinga confirmed

By his own account, Elzinga's report is rebuttal testimony only in name (in fact, unlike ABI's other two rebuttal experts, Elzinga's report is not even named a "rebuttal" report). Rather than explain or refute their conclusions, Elzinga attempts to use his rebuttal report as an opportunity to raise new, irrelevant topics.

> *a.*     *Elzinga Does Not Offer Rebuttal Testimony of the Kallenberger Report.*

Kallenberger's testimony has nothing to do with DOJ, antitrust economics, or whether ABI's conduct is anticompetitive. To the contrary, in his affirmative report, Kallenberger states that the scope of his assignment was:

> [T]o offer an opinion on the beer industry and its practices; whether or not products brewed from base such as malt, grain, or cane sugar, and sometimes marketed using terms such as hard seltzer, spiked sparkling water, or ranch water … are in practice viewed as a segment of the beer, wine, or spirits categories (or something else altogether); and to opine on various terminology utilized by beer industry participants. (Kallenberger Report ¶ 16.)

Elzinga readily acknowledges the complete disconnect between his and Kallenberger's assignments, stating: "[Kallenberger] does not conduct an economic analysis of whether allowing Constellation to develop hard seltzer products under its Sublicense is consistent with the competitive concerns that the DOJ had in requiring and approving the Sublicense." (Elzinga Report ¶ 7.) At his deposition, Elzinga testified that, after reading Kallenberger's report, he thought that "███████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████." (Elzinga Dep. Tr. 72:1-2; 74:7, 10-11.) In other words, Elzinga does not address any aspect of Kallenberger's report, including the subject matter.

---

that ████████████████████████████████████████████████████████████
████████████████████████████ (*Id.* 240:11-241:21.)

Indeed, Elzinga and Kallenberger do not even share expertise that would enable Elzinga to rebut Kallenberger's opinions. Kallenberger is not an antitrust economics expert. (Elzinga Dep. Tr. 84:12.) Rather, Kallenberger is a beer industry expert with 40 years of experience in the industry. (Kallenberger Report ¶ 1.) ██████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ (Elzinga Dep. Tr. 61-62; 68:19-22; 69:1-2.) Thus, not only is the substance of Elzinga's report starkly different from that of Kallenberger's, his background and area of expertise is distinct and not responsive to Kallenberger's opinions.

b. *Elzinga Does Not Offer Rebuttal Testimony of the Messinger Report.*

Similarly, Elzinga's opinions are outside the bounds of Messinger's report, which focuses on the federal and state regulatory frameworks applicable to alcohol beverages. Elzinga admitted that after reading Messinger's report he asked himself, ████████████████████████████ ██████████████████████████████████████████████████" (Elzinga Dep. Tr. 92:5-7; *see also* Elzinga Report ¶ 7 (noting that DOJ's classification of hard seltzer — a topic discussed at length in the Elzinga Report — is "explicitly" described as "beyond the scope" of Messinger's report).) Nonetheless, Elzinga's report inappropriately ventures into topics not addressed by either of Constellation's experts.

Again, Elzinga and Messinger do not share expertise that would enable Elzinga to rebut Messinger's opinions. Messinger is a lawyer with many years of experience in the alcohol beverage regulatory field, with a focus on labeling, formulation, classification, and licensing and permitting. Messinger has handled the review and related compliance work for more than 3,500 formulations and over 10,000 labels for a variety of alcohol products. This work requires liaising with alcohol beverage regulators, and the Alcohol and Tobacco Tax and Trade Bureau ("TTB").

(Messinger Report ¶¶ 3-4.)  During his deposition, Elzinga confirmed that ████████████

████████████████████████████████████████████████████████

████████████████████████████████.  (Elzinga Dep. Tr. 69:7-10; 70:6-9.)

As described below, Elzinga's foray into topics not covered by either Kallenberger or Messinger's opening reports is unjustified and highly prejudicial.  Elzinga's opinions do not "contradict or rebut evidence on the same subject matter."  Fed. R. Civ. P. 26(b)(2)(D)(ii).  Instead, Elzinga covers new topics that by his own admission are "very different" from the matters discussed by either Kallenberger or Messinger.  (Elzinga Report ¶ 7.)  Therefore, Elzinga exceeds the bounds of proper rebuttal and should be treated as an affirmative report.

B.    Elzinga's Affirmative Expert Report Is Untimely and Should Be Excluded.

Parties are required to disclose the identity of an expert witness "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  The deadline set by the Court was March 18, 2022.  (Joint Stipulation and Scheduling Order, Dkt. 157.)  ABI submitted its disclosure of Elzinga as an expert witness on May 2, 2022, over six weeks after the Court's deadline and therefore failed to comply with the discovery schedule.  The Elzinga report is untimely and should thus be excluded.

In considering whether to exclude a witness from testifying for failure to follow the requirements of Rule 26, courts in this Circuit consider the following factors:  "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Softel, Inc. v. Dragon Med. & Sci. Commc'n, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997).  Application of these factors weighs in favor of precluding Elzinga's testimony.

With respect to the first *Softel* factor, ABI has no viable explanation for its failure to comply with the Court's scheduling order. ABI's only plausible argument here is the unfounded claim that Elzinga's antitrust testimony is "rebutting" Kallenberger and Messinger. As shown above, however, Elzinga's opinions are unrelated to the content of the reports he was supposed to rebut.

The second *Softel* factor weighs in favor of exclusion because Elzinga's proposed testimony is not important to Plaintiffs' presentation of the merits of their case. Exclusion is warranted where the proposed untimely testimony is "not particularly relevant" to the dispute. *Rekor Sys., Inc.*, 2022 WL 2063857 at *9. As discussed in more detail below, Elzinga's opinions conflate the issues, are prejudicial, and attempt to inject confusion and ambiguity into the analysis of an unambiguous contract. The proposed testimony should not be shown to a trier of fact; it certainly is not important to the resolution of this case.

With respect to the third *Softel* factor, Constellation would plainly be prejudiced if Elzinga's testimony were permitted. Prejudice lies where the party seeking to exclude untimely expert testimony is unable to respond with expert testimony of its own. *See Rekor Sys., Inc.*, 2022 WL 2063857 at *9 (stating that admission of a report the court deemed non-rebuttal testimony "cannot be harmless and would in fact be unfairly prejudicial"); *Lidle*, 2009 WL 4907201 at *7 (similar). Here, Elzinga's opinions regarding DOJ intent confuses the key issues of the case and will carry significant weight with a jury. Such testimony is highly prejudicial. Additionally, Constellation has not retained an expert witness to address antitrust economics or competition matters because neither party proffered affirmative expert testimony on this subject, which is unsurprising given that this is a breach of contract dispute. Retaining an expert to rebut Elzinga's testimony would be logistically burdensome, for all parties, and would cause undue delay. The

parties have submitted summary judgment briefs and discovery is closed. The addition of another expert would only unnecessarily prolong the case.

Finally, the fourth *Softel* factor cannot save ABI's untimely antitrust economic testimony. A continuance and granting Constellation leave to file a surreply expert would not be appropriate because, as explained below, neither party should be proffering expert testimony on DOJ intent, antitrust economics, or contract interpretation in a private contract dispute between ABI and Constellation, particularly where ABI's untimeliness and gamesmanship are entirely responsible for the potential preclusion of its expert.

In sum, Elzinga should have been disclosed as an affirmative expert witness or not at all. ABI's failure to do so is indefensible. The *Softel* factors each weigh heavily in favor of excluding Elzinga's testimony as untimely.

## II. ELZINGA OFFERS INAPPROPRIATE CONCLUSIONS REGARDING DOJ INTENT AND CONTRACT INTERPRETATION, WHICH SHOULD BE EXCLUDED AS IMPROPER AND PREJUDICIAL.

Even if the Court finds that Elzinga's affirmative opinions are timely disclosed rebuttal testimony — which it should not — exclusion is warranted. *First*, Elzinga's report offers testimony regarding DOJ intent, but the Sublicense was a contract negotiated between ABI and Constellation and indisputably covers products beyond Elzinga's opinions regarding what DOJ believed was the "relevant product market" in 2013. (Argument II.A.) *Second*, even if Elzinga could properly opine on DOJ intent and motivation — which he cannot — his conclusions are pure speculation and not based on any reliable sources. (Argument II.A.) *Third*, even if the Court determines that Elzinga's testimony is proper, it should still be excluded under Rule 403 because any probative value is far outweighed by the danger of unfair prejudice and confusion of the issues. (Argument II.B.) *Fourth*, Elzinga engages in inadmissible contract interpretation throughout his "rebuttal" report, which is beyond the scope of proper expert testimony. (Argument II.C.)

14

A.    <u>Elzinga's Testimony Exceeds the Bounds of Proper Expert Testimony</u>.

The bulk of Elzinga's opinion focuses on his conclusions regarding what DOJ believed was the "relevant product market" when DOJ analyzed competitive issues related to the ABI-Modelo merger and the relationship of that market to the remedy DOJ implemented to address those competitive concerns.  Indeed, through Elzinga's testimony, ABI attempts to argue that, rather than deciding this case based on the language of the Sublicense, the Court should view the contract through what Elzinga surmises was DOJ's intent in 2013 when it analyzed the competitive effects of the ABI-Modelo merger and ultimately directed a divestiture that resulted in the Sublicense.  However, Elzinga's opinions regarding DOJ intent and motives in approving ABI's proposed remedy are not an appropriate subject matter for expert testimony and should be excluded.  *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 4251229, at *5 (S.D.N.Y. Feb. 19, 2020) ("The question of a party's knowledge or intent is a classic jury question."); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 545-46 (S.D.N.Y. 2004) (concluding that expert witness testimony "concerning the motive, intent, and state of mind of [the defendant] and others" was inadmissible because opinions regarding "the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise" and "because it describes lay matters which a jury is capable of understanding and deciding without the expert's help"); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 482, 503 (S.D.N.Y. 2009) (excluding any opinions with respect to EPA's motives or intent and noting that "[a]s a mere economic advisor to the EPA, it is unclear whether [the expert] is even qualified to testify about the intent of the EPA.  Second, even if he was privy to the EPA's thought processes, his retrospective and conclusory testimony is impermissibly speculative").

Even if Elzinga was permitted to opine on DOJ's intent in investigating the anticompetitive implications of the ABI-Modelo merger and motive in approving the Sublicense (he cannot), Elzinga's testimony amounts to his best guess as to DOJ's intent and motives and should be excluded for its unreliability. Elzinga's report offers no indication that his opinions are based on anything other than mere speculation. In fact, when asked █████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ Elzinga responded "█████████████████████████████████████████████████████████ ███████████████████████████████████████████." (Elzinga Dep. Tr. 252:6-13.) Moreover, ████████████████████████████████████████████████████████████████████████████████ ████████████████. (Elzinga Dep. Tr. 250:12-17; 256:6-12.) █████████████████████████ ████████████████████████████████████████████████████████████████. (Elzinga Dep. Tr. 108:1-6.) ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████." (Elzinga Dep. Tr. 109:5-7.) ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. (Elzinga Dep. Tr. 271:6-9.) ██ ████████████████████████████████████████████████████████████████████████████████ ██████████████ Elzinga's methodology merely consisted of ████████████████████████ █████████████████████████" (Elzinga Dep. Tr. 108:7-18.)

In sum, Elzinga cannot opine on DOJ's intent or motive with regard ████████████ ████████████████████████████████████████████████████████████. ████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (Elzinga Dep. Tr. 109-110:1;

16

250:12-17.)  Such testimony exceeds the scope of proper expert opinion and therefore should be excluded.

> B.  <u>Any Probative Value of Elzinga's Opinion Is Outweighed by Its Potential to Cause Undue Prejudice to Constellation and Confuse and Conflate the Issues.</u>

Elzinga's opinions and testimony should be excluded because they risk significant juror confusion, such that any probative value of the testimony is substantially outweighed by the danger of unfair prejudice.  Rule 403 states that evidence that meets the relevancy threshold may still "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.  Under Rule 403, evidence is prejudicial "if it 'involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence.'"  *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008); *see also U.S. v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) ("[T]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial."); *Joffe v. King & Spalding LLP*, 2019 WL 4673554, at *12 (S.D.N.Y. Sept. 24, 2019) ("[T]he purpose of Rule 403 is to ensure a fair and efficient jury verdict, not to protect plaintiffs from the extrajudicial consequences of their own litigation.").

Elzinga's opinions on DOJ's opinion as to the scope of the beer market in 2013, with the imprimatur of a purported expert, will prejudice Constellation and confuse the issues. ███████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████.  Elzinga would have the trier of fact believe otherwise.

For example, ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████." (Elzinga Dep. Tr. 143:3-6.)  This statement alone provides a clear indication that Elzinga misunderstands the main issues of this case.  It is also an example of ABI's attempt to inject confusion into an otherwise straightforward breach of contract claim.  As Elzinga has conceded, ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████.  (Elzinga Tr. 150:9-13.)  The Sublicense is a separate agreement with a different definition of "Beer."  Attempts to conflate interpretation of the Sublicense with DOJ's anticompetitive concerns that pre-date the Sublicense should be precluded.

Elzinga's statements regarding ████████████████ (Elzinga Report ¶¶ 8, 53, 54, 56) should also be excluded because it is unfairly prejudicial and risks juror confusion.  Courts routinely recognize the danger of jury confusion and unfair prejudice and have excluded judicial findings, government agency determinations, and other similar evidence pursuant to Rule 403.  *See Giannone v. Deutsche Bank Sec., Inc.*, 2005 WL 3577134, at *3 (S.D.N.Y. Dec. 30, 2005) (excluding finding by government agency that plaintiff's discrimination claim lacked probable cause and evidence that the court previously dismissed some of plaintiff's discrimination claims because "[s]uch evidence would suggest to the jury the imprimatur of a court and an administrative agency to find Plaintiff's claims meritless"); *U.S. v. Awadallah*, 401 F. Supp. 2d 308, 318–19 (S.D.N.Y. 2005), *aff'd*, 436 F.3d 125 (2d Cir. 2006) ("Rule 403 requires that evidence be excluded, even if relevant, if the jury will place undue weight on that evidence, to the neglect of their duty to evaluate the trial evidence for themselves."); *U.S. v. Perez*, 2002 WL 31368100, at *1 (S.D.N.Y. Oct. 21, 2002) (similar).  Here, ABI is attempting to use Elzinga's testimony as a vehicle to introduce ████████████████ to the trier of fact with an added stamp of authority from an antitrust economist.  Such testimony risks confusing the jury and is highly prejudicial.

Constellation respectfully requests that the Court consider the unfair prejudice and potential for confusion likely to occur if Elzinga's opinion and testimony remain in evidence.

Additionally, Elzinga's testimony regarding DOJ's intent and motivations conflates what occurred in 2013 with the current litigation. DOJ's reasoning and analysis of the anticompetitive issues related to the merger do not belong in a discussion regarding the plain language of the Sublicense entered into between ABI and Constellation. ███████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████. (*See, e.g.*, Elzinga Dep. Tr. 145:21-150:17 (stating that "███████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████").) Such testimony that risks juror confusion and conflates the issues is highly prejudicial and should be excluded.

C. <u>Elzinga's Interpretation of the Sublicense Should Be Excluded Because Experts Are Prohibited from Opining on the Meaning of Terms of the Contract at Issue in the Case</u>.

Certain of Elzinga's opinions also should be excluded because Elzinga, who is not a lawyer (*see* Elzinga Dep. Tr. 203:15), purports to interpret the meaning of disputed terms in the Sublicense. It is well established that "an expert may not offer his or her interpretation of a contract." *Navigators Ins.*, 2022 WL 2205596, at *5; *see also Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (holding that the district court erred in permitting an expert witness to give his opinion as to the legal obligations of the parties under the contract); *Sigmon for Hindin v. Goldman Sachs Mortg. Co.*, 2018 WL 1517189, at *4 n.4 (S.D.N.Y. Mar. 26, 2018) ("[I]t is well-settled that contract interpretation is not a proper subject of expert testimony."); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998)

(excluding expert testimony on "his construction of the contract and the parties' obligations thereunder" on the grounds that "that testimony would usurp the role of the [finder of fact]").

Despite this well-settled precedent, and notwithstanding his statement that he "do[es] not have special expertise in contract exegesis," (Elzinga Report ¶ 43), Elzinga purports to interpret provisions in the Sublicense directly at-issue in this case. For example, Elzinga opines that "the Sublicense contained its own definition of the term 'Beer.' The definition of the term is limited to versions of what would be considered beer, as commonly understood." (Elzinga Report ¶ 39.)[7] This paid-for-legal opinion bears no relation to the terms of the Sublicense. Regardless of the merits of Elzinga's incorrect opinion, however, it is improper for a supposed expert to offer interpretation of the Sublicense in the first place. Similarly, Elzinga suggests throughout his report that the defined term "Mexican-style Beer" does not mean what the Sublicense says — "any Beer bearing the Trademarks that does not bear any trademarks, trade names or trade dress that would reasonably be interpreted to imply to consumers in the Territory an origin other than Mexico" — but instead refers to "the type of products for which Modelo is well known," such as Modelo, Pacifico, or Victoria (Elzinga Report ¶¶ 17, 69; *see also id.* ¶ 68 n.85 (referring to "recipe innovations" such as Modelo's spirits-based Corona Agua Rifada as "product lines [Modelo] views as a significant departure from Mexican-style beer").) During his deposition, Elzinga confirmed that ███████████████████████████████████████████████████████████████████. (Elzinga Dep. Tr. 145:10-15.) He explained that ████████████████████████████████ ████████████████████████████████████████. (Elzinga Dep. Tr. 259: 6-10.) The foregoing

---

[7]     *See also* Elzinga Report ¶ 37 ("It follows that the definition of beer in the Sublicense would not be broader than the market in which the DOJ evaluated competitive effects and identified competitive issues."); *id.* ¶ 42 n.58 ("The definition of 'beer' included in the Sublicense agreement extends to flavored malt beverages which may not be considered beer, as commonly understood – however, this definition is explicitly limited to beverages that contain malt. This is consistent with my view of how beer is defined in the industry.")

is entirely inappropriate; exclusion is warranted.

Apart from Elzinga's improper contract interpretation on provisions at issue in this dispute, Elzinga also offers unrelated (and, at times, plainly inaccurate) contract interpretation when purporting to explain ABI's supposed "procompetitive reasons" for filing this lawsuit. Specifically, Elzinga offers opinions on the meaning and intent of the "clauses in the Sublicense" that Elzinga claims "are consistent with Modelo seeking to protect its brands," such as:

- the "Quality Standards" provision (Elzinga Report ¶¶ 64, 67, 68), which does not form the basis of any of Plaintiffs' claims in this case, (*see* Dkt. #104 (Third Amended Complaint making no mention of quality standards)), presumably because (i) the at-issue products are produced consistently, not defective, are merchantable, and meet all regulatory standards (Sublicense § 1.1 (defining "Quality Standards")); (ii) Constellation is entitled to create its own quality standards for new Brand Extension Beers like the products at issue in this case (as opposed to pre-existing products like Corona Extra) (*id.* § 3.14); (iii) any dispute concerning quality issues is subject to specific notice and binding dispute resolution procedures set forth in Section 3.10, which have not been invoked by Plaintiffs;



- the provision governing Constellation's rights to adopt new "Recipes" for "each existing Product" — that is, products not at issue in this case, like Corona Extra or Modelo Especial (Elzinga ¶ 67);

- the provision governing Constellation's rights to adopt new "Brand Extension Marks" that are "*created by Marcas Modelo*," which Elzinga incorrectly claims provides "explicit limitations on how far Constellation can diverge from existing products in its development of 'brand extension marks.'" (Elzinga ¶ 68 (citing Sublicense § 2.15(b)).)[8]

All of the foregoing contract analysis — in addition to being prejudicial and inaccurate — should be excluded because experts are not permitted to interpret contractual terms.

---

[8]    Contrary to Elzinga's opinions, Section 2.15(a) covers Constellation's rights concerning its own development of new Brand Extension Marks; Section 2.15(b) merely addresses Constellation's rights to "adopted a Brand Extension Mark created after the date of this Agreement by Marcas Modelo of Grupo Modelo."

In sum, Elzinga's inappropriate contract analysis should be excluded. The meaning and legal effect of the terms of the Sublicense is a question to be decided either by this Court as a matter of law at summary judgment or by the trier of fact at trial.

## **CONCLUSION**

For the foregoing reasons, Constellation respectfully requests that the Court grant this motion to exclude Elzinga's opinions, report, and testimony in full.

Dated: New York, New York
       August 5, 2022

*/s/ Sandra C. Goldstein*

Sandra C. Goldstein, P.C.
Stefan Atkinson, P.C.
Daniel R. Cellucci
Amal El Bakhar
Jenny Lee
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
daniel.cellucci@kirkland.com
amal.elbakhar@kirkland.com
jenny.lee@kirkland.com

*Counsel for Defendants*