| | |
|---|---|
| CERVECERÍA MODELO DE MEXICO, S. DE R.L. DE C.V., and TRADEMARKS GRUPO MODELO, S. DE R.L. DE C.V.<br><br>        Plaintiffs,<br><br>v.<br><br>CB BRAND STRATEGIES, LLC, CROWN IMPORTS LLC, and COMPAÑÍA CERVECERA DE COAHUILA, S. DE R.L. DE C.V.,<br><br>        Defendants. | CASE NO. 21-CV-01317-LAK |

**DEFENDANTS' RESPONSES AND ADDITIONAL STATEMENT OF FACT IN OPPOSITION TO PLAINTIFFS' RULE 56.1 STATEMENT OF FACTS**

## TABLE OF CONTENTS

**DEFENDANTS' RESPONSES TO PLAINTIFFS' RULE 56.1 STATEMENT…………..1**

**DEFENDANTS' ADDITIONAL RULE 56.1 STATEMENT……………………..…..82**

Pursuant to Rule 56.1(b) of the Local Rules of Civil Procedure for the Southern District of New York, and in opposition to the motion for summary judgment on liability filed by Plaintiffs (ECF Nos. 173, 174, 177, 178, the "Motion"), Defendants hereby submit this response to Plaintiffs' Rule 56.1 Statement (ECF Nos. 179, 181). As required by Rule 56.1(b), Defendants respond only to assertions made in the numbered paragraphs in the statement of Plaintiffs. Defendants do not admit, and specifically dispute, any assertions made in headings, subheadings, and footnotes contained in Plaintiffs' Rule 56.1 Statement, which headings, subheadings, and footnotes are restated herein solely for the convenience of the Court. Further, any assertion of fact in Plaintiffs' Rule 56.1 Statement that is not disputed in these Responses is admitted for purposes of the Motion only. *See* Local Civil Rule 56.1(c). Any assertion of fact or cited evidence in Plaintiffs' Rule 56.1 Statement that is not expressly disputed below is further objected to on the basis of Fed. R. Civ. P. 56(c)(1) and (2).

## **DEFENDANTS' RESPONSES TO PLAINTIFFS' RULE 56.1 STATEMENT**

I. **THE UNDISPUTED FACTS RELEVANT TO THE PLAIN MEANING OF THE SUBLICENSE**

A. **Constellation's Limited Right Under the Sublicense to Use Modelo's Trademarks Only for "Beer"**

1. On June 7, 2013, Marcas Modelo, S. de R.L. de C.V. and Constellation Beers Ltd. entered into an Amended and Restated Sub-License Agreement (the "Sublicense").[3] (Ex. 124 (Sublicense).)

Footnote 3: Plaintiff Trademarks Grupo Modelo and Defendant CB Brand Strategies, LLC are successors to the signatories to the Sublicense, and CB Brand Strategies, LLC granted certain sublicenses under the Sublicense to Defendants Crown Imports LLC and Compañía Cervecera de Coahuila, S. de R.L. de C.V. (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 12.) Defendants are all subsidiaries of Constellation Brands, Inc. (Ex. 99 (Ex. 2.1 to CBI FY 2022 10-K).) For simplicity, Defendants are collectively referred to herein as "Constellation."

**Response:** Not disputed.

2. Under the terms of the Sublicense, Constellation can sell products bearing certain U.S. "Trademarks," including the Corona and Modelo trademarks, but only if the products are "Importer Products." (Id. § 2.1(a) at 11.) Under the Sublicense, an "Importer Product" must be a "Beer" (id. § 1.1 at 4, 6, 8), which is in turn defined as "beer, ale, porter, stout, malt beverages,

and any other versions or combinations of the foregoing, including non-alcoholic versions of any of the foregoing" (id. § 1.1 at 4).

**Response:** Disputed to the extent Paragraph 2 is attempting to provide a complete and accurate statement of Constellation's rights set forth in the Sublicense; Defendants respectfully refer the Court to the Sublicense for a complete and accurate statement of its contents, as it granted Constellation broader rights than the statement contained in Paragraph 2 implies.

3. Modelo retained ownership of all of the Trademarks licensed to Constellation, including exclusive right to use the Trademarks except as specifically granted to Constellation. (*Id.* at 918; ███████████████████)

**Response:** Disputed to the extent that Paragraph 3 implies that Modelo's Trademark rights are "exclusive . . . except as specifically granted to Constellation." Modelo's rights to use the Trademarks in the Territory, if any, are set forth in the Sublicense.

## B. The Plain Meaning of Beer, Malt Beverages, and Version

4. The plain meaning of "beer" is an alcoholic beverage made with malted grain, water and yeast, and flavored with hops.

- Ex. 9 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2004)) at 3 (defining "beer" as an "alcoholic beverage usually made from malted cereal grains (as barley), flavored with hops, and brewed by slow fermentation" );
- Ex. 10 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2014)) (same);
- Ex. 11 (WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)) (defining "beer" as "a malted and hopped somewhat bitter alcoholic beverage");
- Ex. 12 (RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001)) at 3 (defining "beer" as "an alcoholic beverage made by brewing and fermentation from cereals, usually malted barley, and flavored with hops and the like for a slightly bitter taste");
- Ex. 13 (WEBSTER'S II NEW COLLEGE DICTIONARY (1999)) at 3 (defining "beer" as "[a] fermented alcoholic beverage brewed from malt and flavored with hops");
- Ex. 14 (WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (1983)) (defining "beer" as "a mildly alcoholic drink made from any farinaceous grain, but generally from barley, which is first malted and ground, and its fermentable substance then extracted by hot water. This

extract or infusion is boiled in caldrons, and hops or some other substance of an agreeable bitterness added. The liquor is then allowed to ferment in vats");

- Ex. 15 (AMERICAN HERITAGE DICTIONARY (5th ed. 2011)) (defining "beer" as "a fermented alcoholic beverage brewed from malt and flavored with hops");
- Ex. 16 (NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010)) at 3 (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavored with hops");
- Ex. 17 (THE OXFORD COMPACT ENGLISH DICTIONARY (2nd ed. rev. 2003)) at 3 (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavoured with hops");
- Ex. 18 (DICTIONARY.COM) (defining "beer" as "an alcoholic beverage made by brewing and fermentation from cereals, usually malted barley, and flavored with hops and the like for a slightly bitter taste");
- Ex. 19 (GOOGLE DICTIONARY, Powered by Oxford Languages) (defining "beer" as "an alcoholic drink made from yeast-fermented malt flavored with hops").

    **<u>Response</u>:**    Disputed.    First, Paragraph 4 cites from only a selected set of dictionaries; other dictionaries not included in Paragraph 4 define "beer" differently.  For example, the OXFORD ENGLISH DICTIONARY (2d ed. 1989) defines beer as "an alcoholic liquor obtained by fermentation of malt (or other saccharine substance), flavored with hops or other aromatic bitters."[1]  "Saccharine" means "of, relating to, or resembling that of sugar" or "yielding or containing sugar."[2]  Second, multiple of the dictionary definitions cited in Paragraph 4 are inconsistent with Plaintiffs' assertion that "the plain meaning of 'beer' is an alcoholic beverage made with malted grain, water and yeast, and flavored with hops," further emphasizing that there is no common understanding of the term "beer."[3]  For example, Decl. of Mark De Leeuw Exs. 9 and 10 define "beer" as an "alcoholic beverage **<u>usually</u>** made from malted cereal grains (as barley),

---

[1]   AEB Opp'n Decl. Ex. 340, *Beer*, OXFORD ENGLISH DICTIONARY (2d ed. 1989).
[2]   *Saccharine*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/saccharine.
[3]   *See* Decl. of Mark De Leeuw Exs. 9-10, ECF No. 176 (defining "beer" as "usually made from malted grain"); 12 (defining "beer" as "usually made with malted barley"); 12 and 14 (providing for the use of hop substitutes); 11-12, 14 and 18 (defining "beer" as "bitter"); 9, 10, 13, and 15-19 (making no mention of bitterness in the definition of "beer").

flavored with hops, and brewed by slow fermentation."[4]  Similarly, Decl. of Mark De Leeuw Ex. 12 defines "beer" as "an alcoholic beverage made by brewing and fermentation from cereals, **usually** malted barley, and flavored with hops and the like for a slightly bitter taste."[5]  "Usually" does not mean always, and instead confirms that some beer is not made from malted grains and some beer is not flavored with hops.  Indeed, one of Plaintiffs' proposed experts, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Third, eight of the eleven dictionaries cited in Paragraph 4 contain additional definitions of "beer" that are different than those stated in Paragraph 4.  For example, Plaintiffs ignore the second definition of "beer" in Decl. of Mark De Leeuw Ex. 18, which defines "beer" to include non-alcoholic and sugar-based beers.[7]

Further disputed to the extent that Paragraph 4 implies that the dictionary definitions of "beer" can or should be used to define that term as used in the definition of "Beer" in the Sublicense.  To the contrary, "beer" as used in the Sublicense definition of "Beer" is a federal regulatory concept, as made clear by the pairing of that word with "ale, porter, stout," and expansive language "any other versions or combinations," and covers at least all products meeting the federal regulatory definition of "beer" as set forth in IRC and TTB regulations.[8]

> 5.    The plain meaning of "malt beverage" is a beverage made with malt. "Malt" is a grain (usually barley) that has been steeped in water, germinated, and kiln dried.

> - Ex. 9 (MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (11th ed. 2004)) at 4 (defining "malt" as "grain (as barley) softened by steeping in water, allowed to germinate, and used especially in brewing and distilling);

---

[4]  Decl. of Mark De Leeuw Exs. 9-10, ECF No. 176 (emphasis added).
[5]  Decl. of Mark De Leeuw Ex. 12, ECF No. 176 (emphasis added).
[6]  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[7]  Decl. of Mark De Leeuw Ex. 18, ECF No. 176 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[8]  26 U.S.C. § 5052; 27 C.F.R. § 25.11.

- Ex. 12 (RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001)) at 4 (defining "malt" as "germinated grain, usually barley, used in brewing and distilling");
- Ex. 13 (WEBSTER'S II NEW COLLEGE DICTIONARY (1999)) at 4 (defining "malt" as "[g]rain, usually barley, that has been allowed to sprout, used chiefly in brewing and distilling");
- Ex. 16 (NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010)) at 4 (defining "malt" as "barley or other grain that has been steeped, germinated, and dried, especially for brewing or distilling and vinegar-making");
- Ex. 17 (THE OXFORD COMPACT ENGLISH DICTIONARY (2003)) at 4 (defining "malt" as "barley or other grain that has been steeped, germinated, and dried, used for brewing or distilling");
- Ex. 21 (DICTIONARY.COM) (defining "malt" as "germinated grain, usually barley, used in brewing and distilling");
- Ex. 20 (GOOGLE DICTIONARY) ("barley or other grain that has been steeped, germinated, and dried, used for brewing or distilling and vinegar-making."); (*see also* Ex. 128 (Defs.' Am. R&Os to Pls.' First RFAs) at RFA No. 1 & n.1.)

    **Response**:    Disputed. Paragraph 5 does not provide support for the proposition that there is a plain meaning of the term "malt beverage," which is a federal regulatory term defined in the Federal Alcohol Administration Act and TTB regulations.[9] Instead, Plaintiffs cite to dictionary definitions for the term "malt" and do not cite to any definitions or other evidence (whether admissible or not) concerning the meaning of the term "malt beverage," which is the term contained in the Sublicense.[10] Further disputed because the word "malt," in isolation, must be understood with reference to all legally recognized substitutes for malted barley, including "rice, grain of any kind, bran, glucose, sugar, and molasses."[11] Further disputed to the extent Paragraph 5 implies that there is one plain meaning to the term "malt," as Plaintiffs quote from selective dictionaries.

    6.    The plain meaning of "version" is "a particular form of something differing in certain respects from an earlier form or other forms of the same type of thing." (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32 (quoting NEW OXFORD DICTIONARY 2055

---

[9]    AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 21; 27 C.F.R. § 1.10; 27 U.S.C. § 211(a)(7).

[10]    *See* Decl. of Mark De Leeuw Exs. 9, 12, 13, 16, 17, 20, 21, ECF No. 176.

[11]    27 C.F.R. § 25.15.

(1st ed. 1998)); *see also id.* ("A form or variant of a type or original" (quoting MERRIAM-WEBSTER'S DICTIONARY 1390 (11th ed. 2003));

**Response**:    Disputed to the extent Paragraph 6 implies that the definition in the first sentence ("a particular form of something differing in certain respects from an earlier form or other forms of the same type of thing" or "[a] form or variant of a type or original") implies "version" is limited to existing forms. "Version" means "a particular form of something *differing in certain respects* from an earlier form or other forms of the same type of thing," or a "*variant* of a type or original." That means that a "version" must differ in certain respects from "the earlier form." For example, in the Sublicense definition of "Beer," the word "version" is used twice, to include "any other versions" of "beer, ale, porter, stout" or "malt beverages," including "non-alcoholic versions." If, as Plaintiffs assert, the supposed "plain meaning" of "beer" is "an alcoholic beverage made with malted grain, water and yeast, and flavored with hops,"[12] one possible "version" of "beer" under the Sublicense is a beverage that is "non-alcoholic," thereby differing from Plaintiffs' understanding of "beer" because of the absence of alcohol. Other possible versions of "beer" would include beverages that differ in other respects, such as those replacing "malted grain" with a legally-recognized substitute, sugar, 27 C.F.R. § 25.15(a), or replacing hops flavoring with other permissible flavoring additives, 27 C.F.R. § 25.15(a)-(b).[13]

Further disputed to the extent Paragraph 6 implies that "version" in the Sublicense can be viewed in isolation. Sublicense § 1.1 defines "Beer" as "beer, ale, porter, stout, malt beverages, and *any other versions* or combinations of the foregoing, including non-alcoholic versions of any

---

[12]   *Supra* Paragraph 4.
[13]   *See also* AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 82-119.

of the foregoing." "Any" means "one or some indiscriminately of whatever kind" and "other" means "distinct from . . . those first mentioned."[14] Together, the phrase "any other version," when modifying "beer" and "malt beverage" *must* refer to products that are different in some respects from "beer" and "malt beverage."

Further disputed to the extent Paragraph 6 implies that ██████████████████████ ████████████████████████████████████████████████████████████████ While an industry expert's testimony on the meaning of a lay term is not relevant, ██████████ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

## C. Constellation's Hard Seltzer Products Are Not "Beer," "Malt Beverages," or a "Version" of Either Within the Plain Meaning of Those Terms.

7. Constellation has sold the following products (including their various flavors) bearing certain of the Trademarks specified in the Sublicense: Corona Hard Seltzer, Corona Hard Seltzer Limonada, Corona Hard Seltzer Seltzerita, and Modelo Ranch Water (together, the "Hard Seltzer Products"). (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶¶ 4, 5, 40, 46, 47; ████████████████████████████████████

**Response**: Disputed to the extent Paragraph 7 implies that the Corona Hard Seltzer, Corona Hard Seltzer Limonada, and Corona Hard Seltzer Seltzerita (together "Corona Hard Seltzer") are separate "products." ████████████████████████████████████

---

[14]    *Any*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1976).
[15]    AEB Decl. Ex. 135, Michael Kallenberger Rebuttal Report ¶¶ 48-51; █████████████████████
████████████████████████████
[16]    AEB Decl. Ex. 135, Michael Kallenberger Rebuttal Report ¶¶ 48-51; ████████████████████
████████████████████████ Travis Rupp Rebuttal Expert Report ¶ 227.

[redacted]

8.    The Hard Seltzer Products are not made with any malt. (Ex. 128 (Defs.' Am. R&Os to Plfs.' First RFAs) at RFA Nos. 1-9; [redacted]

**Response**:    Disputed.    Corona Hard Seltzer and Modelo Ranch Water (together, the "CBI Products") are made with a legally recognized substitute for malt,[20] as permitted under the Sublicense.[21]

Further disputed to the extent Paragraph 8 implies that malt is a required ingredient in Constellation's Brand Extension Beers, or that the use of malt is a factor as to whether the CBI Products are permitted under the Sublicense.    The Sublicense does not contain any malt requirement.  Instead, Constellation has the right to develop, in its "sole discretion," "entirely new Recipes," including using "entirely new . . . ingredients."[22]    Once a "Recipe" is established (whether for an existing product at the time the Sublicense was executed, or for a new innovation), Constellation may use "functional substitutes or replacements" for *any* ingredient provided the substitution "does not change the finished product."[23]    Constellation's broad discretion is then limited in a few express ways, including the specific rules concerning the use of distilled spirits as

17    [redacted]

18    [redacted]
19    [redacted]
20    27 C.F.R. § 25.15.
21    *E.g.*, AEB Decl. Ex. 6, Sublicense §§ 1.1, 2.15(a), 3.3.
22    *Id.* §§ 1.1, 2.15(a).
23    *Id.* § 3.3.

an ingredient in any Recipe,[24] or the use, sharing, and preservation of yeast.[25] The Sublicense

contains no reference to "malt," "malted barley," or "malted grains." Moreover, it is undisputed

that some "beer" is made without any malt. ABI's corporate representative on negotiations of the

Sublicense, █████████████████████████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

     9.     The Hard Seltzer Products are not flavored with hops. Hops is not identified
as an ingredient on the packaging of the Hard Seltzer Products. (Ex. 130 (ECF No. 119 (Defs.'
Answer to Third Am. Compl.)) ¶¶ 46, 47; Ex. 100 (Photo of Ingredients on Modelo Ranch Water
Packaging) at 2.) ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████ *see also* Ex. 1 (21 C.F.R.
101.100(a)(3)).)

Footnote 4: ██████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

---

[24]  *Id.* § 2.15(c).
[25]  *Id.* §§ 1.1 (defining "Recipe" to include "yeast cultures"), 2.21.
[26]  ███████████████████████████████████████████████████

[27]  AEB Decl. Ex. 130, Ray Daniels Expert Report ¶ 4; █████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

[28]  AEB Decl. Ex. 137, Travis Rupp Rebuttal Expert Report ¶¶ 31, 46, 54-55, 61, 64-65, 67, 69, 70-72, 74-75, 76-
77-80; ██████████████████████

**Response**: Disputed to the extent Paragraph 9 (and footnote thereto) imply that hops are a required ingredient in, or that hops flavoring is a required feature of, Constellation's Brand Extension Beers under the Sublicense. Contrary to any supposed hops requirement, Constellation has the right to develop, in its "sole discretion," "entirely new Recipes," including using "entirely new . . . ingredients."[30] Once a "Recipe" is established (whether for an existing product at the time the Sublicense was executed, or for a new innovation), Constellation may use "functional substitutes or replacements" for *any* ingredient provided the substitution "does not change the finished product."[31] Constellation's broad discretion is then limited in a few express ways, including the specific rules concerning the use of distilled spirits as an ingredient in any Recipe,[32] or the use, sharing, and preservation of yeast.[33] The Sublicense contains no reference to "hops." Moreover, even beers containing hops are not always "flavored with

29

30 AEB Decl. Ex. 6, Sublicense §§ 1.1, 2.15(a).

31 *Id.* § 3.3.

32 *Id.* § 2.15(c).

33 *Id.* §§ 1.1 (defining "Recipe" to include "yeast cultures"), 2.21.

34 AEB Decl. Ex. 131, Thomas Shellhammer Expert Report ¶ 23 ("There are also a few examples of 'hops free' beers that are not well known. For these beers, the brewers use some other plant product (such as spruce tips or

hops," as demonstrated by the craft beer style guidelines ABI and its purported experts rely on heavily in their proposed expert opinions.[35] █████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████

  Further disputed to the extent Paragraph 9 (and footnote thereto) imply that hops are not an ingredient used in the process of producing the CBI Products. ██████████████████



_____

milk thistle) to emulate the taste and aroma of hops.")

[35] *See, e.g.*, AEB Decl. Ex. 130, Daniels Report ¶ 38, 55-59 (citing Beer Judge Certification Program ("BJCP") Style Guidelines, Great American Beer Festival ("GABF") Style Guidelines, and Brewers' Association ("BA") Style Guidelines); AEB Opp'n Decl. Ex. 334, *Eligibility & Participation*, GREAT AMERICAN BEER FESTIVAL, https://www.greatamericanbeerfestival.com/brewers/details-for-entering; AEB Opp'n Decl. Ex. 296, *2021 Style Guidelines*, BEER JUDGE CERTIFICATION PROGRAM (Dec. 2021), https://www.bjcp.org/download/2021_Guidelines_Beer.pdf (describing Dunkles Bock as having "[n]o hop flavor); AEB Opp'n Decl. Ex. 301, *2022 Beer Style Guidelines*, BREWERS ASS'N (Feb. 19, 2022), https://cdn.brewersassociation.org/wp-content/uploads/2022/02/25084047/2022_BA_Beer_Style_Guidelines_Final.pdf (describing that for Belgian-Style Witbier, "[h]op flavor is not present").

[36] ███████████████████████████████████████████████████████████

[37] ███████████████████████████████████████████████████████████
███████████████████████████████

Further disputed as some of the citations are inadmissible evidence.

10.     The Hard Seltzer Products are not "beer" within the plain meaning of the term. (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 37-38.) Constellation conceded that the "average person on the street" would not consider its sugar-based hard seltzers to be beer. (*Id*.)

**Response**:     Disputed.  First, contrary to the first sentence in Paragraph 10, there is no consistent "plain meaning" of the term "beer" that excludes the CBI Products.[39]  Instead, many dictionary definitions of "beer" encompass the CBI Products.[40]  Further disputed to the extent that Paragraph 10 implies that a dictionary definition should be applied to the term "beer" as used in the definition of "Beer" in the Sublicense, which was drafted and negotiated by sophisticated industry players, and uses terms and concepts from the prevailing federal alcohol beverage regulations.

Second, contrary to the second sentence in Paragraph 10, Constellation did not concede that the "average person on the street" would consider the CBI Products to not be beer, but rather, was referencing Plaintiffs' argument regarding "what the average person of the street might  think."

---

[38]

[39]  *Supra* Defendants' Response to Paragraph 4.
[40]  *Id.*
[41]
[42]

Third, contrary to the second sentence of Paragraph 10, consumer perception is not relevant to the meaning of the term "beer" as used in the definition of "Beer" in the Sublicense, which was drafted and negotiated by sophisticated industry players and uses terms and concepts from the prevailing federal alcohol beverage regulations.

11.    The Hard Seltzer Products are not "malt beverages" within the plain meaning of the term. (*See* Ex. 125 (ECF. No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32-33, 37-38; Ex. 128 (Defs.' Am. R&Os to Pls.' First RFAs) at RFA Nos. 1-9.)

**Response**:    Disputed.    Paragraph 11 does not provide any support for the statement that there is a "plain meaning" of "malt beverage,"[46] let alone a definition that should be applied to the term "malt beverage" as used in the definition of "Beer" in the Sublicense, which is an agreement drafted and negotiated by sophisticated industry players, and uses terms and concepts from the prevailing federal alcohol beverage regulations.  Further disputed because, even assuming "malt beverage" means a beverage made with malt, the CBI Products are a gluten-free version of malt beverages that use a legally-recognized substitute for malt, 27 C.F.R. § 25.15.[47]

12.    Because the Hard Seltzer Products are not a form or type of "beer" or "malt beverage," they are not a "version" of either within the plain meaning of the term. (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 32 (quoting NEW OXFORD DICTIONARY 2055 (1st ed. 1998) & MERRIAM-WEBSTER'S DICTIONARY 1390 (11th ed. 2003));

---

[43]    *Id.* at 224:23-226:18.

[44]    

[45]    

[46]    *Supra* Defendants' Response to Paragraph 5.

[47]    Rule 56.1 Statement of Material Facts in Support of Defendants' Motion for Summary Judgment ("Defs.' Rule 56.1 Statement") ¶¶ 194-210, ECF No. 191.

**Response**:   Disputed.   Paragraph 12 does not provide any support for the statement that the CBI Products are not a "form" or "type" of "beer" or "malt beverage."  Plaintiffs selectively focus on the words "form" or "type" (without defining either), but ignore that the definitions of "versions" cited in Paragraph 12 provide that "versions" includes "variants" of an original form or type of something and, in any event, a "version" must "differ in certain respects" from the original form or type.   Accordingly, even if "beer" and "malt beverage" mean "an alcoholic beverage made with malted grain, water and yeast, and flavored with hops,"[48] and "a beverage made with malt,"[49] respectively, the CBI Products are versions of "beer" or "malt beverage" because they are variants of those products that differ in certain respects.  Specifically, the CBI Products meet the prevailing federal definition of "beer" set forth in the IRC and TTB regulations, and also are regulated like any other beer by at least 44 of the States,[50] which means that the CBI Products are (at the very least) one possible version of "beer" that differ from Plaintiffs' proposed definition of "beer" because they are made from cane sugar, which is a legally recognized substitute for malt.[51]  Moreover, Plaintiffs claim that products that do not contain malt or hops, but instead "emulate" a malt-based, hop-forward beer, meet the Sublicense definition of "Beer" as either "beer" or a "version" thereof.[52]  And in turn, Plaintiffs concede that alcoholic beverages that are made from malt, but then filtered to remove *any* malt-associated qualities and dosed with exogenous flavoring (such as a flavored malt beverage, including malt-based hard seltzers) meet the Sublicense definition of "Beer" as a "malt beverage" because such a product is a beverage made with malt.."[53]  Through that lens, the CBI Products are then one version of "malt

---

[48]   *Supra* Defendants' Response to Paragraph 4.
[49]   *Supra* Defendants' Response to Paragraph 5.
[50]   John Messinger Second Amended Expert Report ¶¶ 82-119.
[51]   27 C.F.R. § 25.15(a).
[52]   Defs.' Rule 56.1 Statement ¶¶ 194-210, ECF No. 191.
[53]   *Id.*

beverages" since they emulate flavored malt beverages, and are indistinguishable from malt-based hard seltzers, but differ only in the use of cane sugar in place of malted barley.[54]  And the Sublicense specifically permits Constellation to use *any* functional substitute ingredient in its Recipes.[55]



Mr. Kallenberger provided additional responses and explanations in his

[54]  *Id.*
[55]  AEB Decl. Ex. 6, Sublicense § 3.3.
[56]
AEB Decl. Ex. 155, Michael Mitaro Report ¶ 26;

[57]
[58]
[59]
[60]  AEB Decl. Ex. 135, Michael Kallenberger Rebuttal Report ¶¶ 48-51;

expert reports on the term "version."[61]

██████████████████████████████████

## II. THE UNDISPUTED FACTS RELEVANT TO NEGOTIATION OF THE SUBLICENSE

### A. In 2006 and 2007, Modelo and Constellation Negotiated Joint Venture Agreements to Import Modelo "Beer," Which Constellation Publicly Represented Was Limited to "Malt-Based" Beverages.

13. In 2006, Modelo and Constellation affiliates agreed to form a joint venture, to be called Crown Imports LLC ("Crown"), that would be the sole importer and distributor of Modelo-branded beer in the United States. (Ex. 121 (Agreement to Establish JV); ████████████████████████

**Response**: Disputed to the extent Paragraph 13 implies that the purpose of Crown Imports LLC ("Crown") was limited to the importation and distribution of "Modelo-branded beer" in the United States. ████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

---

[61] AEB Decl. Ex. 135, Michael Kallenberger Rebuttal Report ¶¶ 48-51.
[62] *Id*.
[63] ██████████████████████████ AEB Decl. Ex. 135, Michael Kallenberger Rebuttal Report ¶¶ 48-51; AEB Decl. Ex. 137, Travis Rupp Rebuttal Expert Report ¶ 227.
[64]



14.     Constellation's attorneys prepared the first drafts of the agreements to form a joint venture (the "JV Agreements") and provided those to Modelo's counsel in April 2006. (Ex. 119 (April 2006 Draft JV Agreements) at 210; ████████████████████ Those drafts defined "Beer" as "beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including, without limitation, non-alcoholic versions of any of the foregoing." (Ex. 119 (April 2006 Draft JV Agreements) at 217, 249, 290, 331, 381, 399.)

**Response**:     Not disputed.

████████████████████████████████████████

**Response**:     Not disputed.

████████████████████████████████████████

---

65 [65] Decl. of Mark De Leeuw Ex. 121 § 2.1, ECF No. 176.

[65]   Decl. of Mark De Leeuw Ex. 121 § 2.1, ECF No. 176.
[66]   Decl. of Mark De Leeuw Ex. 121 § 1.1, ECF No. 176.

**Response**: Disputed. Contrary to Paragraph 16, ███████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████ having included the federal

regulatory terminology "beer, ale, porter, stout" from the IRC and TTB regulations and "*any other*

*versions or combinations* of the foregoing."[67] █████████████████████████████



67 ██████████████████████████████████████████████████
68 ██████████████████████████████████████████
69
70 ██████████████████████████
71 █████████



Further disputed to the extent that Paragraph 15 implies that, because the citations like "26 U.S.C. § 5052" or the words "Internal Revenue Code" are not used in the definition of "Beer" in the Joint Venture Agreements, the "Beer" definition cannot be interpreted by reference to the prevailing federal definition of "beer" as set forth in both the IRC and TTB regulations. To the contrary, because the Joint Venture Agreements were governed by New York law and used

---

72
73
74
75
76

terms and concepts firmly rooted in federal alcohol beverage law, the definition of "Beer" must be read to include at least all products meeting the IRC and TTB definition of "beer", along with the New York definition of "Beer".[77]



**Response**: Disputed for the reasons stated in Defendants' Response to Paragraph 16.



---

[77]  *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 618 (2d Cir. 2001).

[78]

[79]

[79]

**Response**: Disputed.

For example, nationally applicable regulations administered by TTB use similar language to describe the full scope of alcohol beverage products that fall within the IRC definition of "Beer," such as 27 C.F.R. § 25.142(a), which details labelling requirements and states: "Each bottle of beer shall show by label or otherwise . . . the nature of the product such as *beer, ale, porter, stout, etc.*" Moreover, the modern IRC definition of "beer" derives from the Revenue Act of 1862, which defined "beer" to mean "beer, lager beer, ale, porter, and other similar fermented liquors"; TTB has explained that this 1862 definition of "beer" has remained "essentially unchanged" to this day.

[81]

---

[80] *See Supra* Defendants' Responses to Paragraphs 15-16.
[81] 26 U.S.C. § 5052(a); AEB Decl. Ex. 6, Sublicense at § 1.1;



**Response**: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[82] 26 U.S.C. § 5052(a); AEB Decl. Ex. 6, Sublicense at § 1.1.
[83]

**Response**: ███████████████████████████

**Response**: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

86 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
87 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
88 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████ Indeed, the Forms 8-K expressly state that

"[t]he above descriptions of the [Joint venture Agreements] are qualified in their entirety by the

terms of the [Joint Venture Agreements]," which were attached as exhibits to those Forms 8-K.[90]

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

███████████████████████████ █ ███████████████████████████████

███████████████████████████████ As another example, the 2006 and 2007 Forms 8-K

provide that Crown will be entitled to "any new products introduced by Modelo in the Territory,"[96]

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

89 ███████████████████████████████████████████

90 *See e.g.*, AEB Opp'n Decl. Ex. 180, Pls.' Ex. 35, Constellation 7/17/2006 Form 8-K at 7 ("The above descriptions of the Joint Venture Agreement, and the agreements attached thereto as exhibits . . . are qualified in their entirety by the terms of the Joint Venture Agreement (and such forms of agreements attached thereto as exhibits) and of the Barton Contribution Agreement, which are attached hereto as Exhibits 2.1 and 2.2, respectively, and incorporated herein by reference.").

91 ███████████████████████████████████████████

92 ███████████████████████████████████████████

93 AEB Opp'n Decl. Ex. 182, Pls.' Ex. 37; AEB Opp'n Decl. Ex. 179, Pls.' Ex. 175.

94 AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41.

95 AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036070; ████████████████████████████
████████████████████

96 AEB Opp'n Decl. Ex. 182, Pls.' Ex. 37; AEB Opp'n Decl. Ex. 179, Pls.' Ex. 175.

---

[97] AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036333 (Importer Agreement) §§ 1.1, 3.41.

[98]

[99] *Id.*

[100] AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036083.

[101] *Id.*

[102] *Id.*

[103] *Id.*



---

[104] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[105] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[106] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[107] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[108] AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_ CHS_ 0036083.

[109] Grupo Modelo & Constellation Brands, Joint Press Release, "Grupo Modelo and Constellation Brands Create a Joint Venture for Beer Importation into the U.S.," July 17, 2006, https://www.sec.gov/Archives/edgar/data/16918/000119312506148222/dex991.htm.



Further disputed as some of the citations are inadmissible evidence.

22.    The JV Agreements attached to Constellation's draft 8-K stated that the parties would "execute and deliver a limited liability agreement for the Company" (the "Proposed LLC Agreement") and that the Proposed LLC Agreement would contain a non-compete clause prohibiting the parties to the joint venture or their affiliates from competing with Crown in any business that "imports or distributes Beer." ████████████████████████████████ ██████; Ex. 121 (Agreement to Establish JV) at § 3.3(b) of Ex. B.)

**Response**:    Disputed for the reasons stated in Defendants' Response to Paragraph 21. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

Further disputed as some of the citations are inadmissible evidence.

23.    When the parties closed the JV transaction and signed the JV Agreements on January 2, 2007, Constellation filed with the SEC a second Form 8-K, which stated the executed LLC Agreement "does not restrict" the joint venture parties or their affiliates "from engaging in or having an interest in the production, sale or distribution of any alcoholic beverage that is not

---

110 ████████████████████████
111 ████████████████████████████████████████
112 ████

malt-based, an ale, a porter or a stout," again indicating that the definition of "Beer" excluded products that were "not malt-based." (Ex. 123 (Constellation 1/02/2007 Form 8-K) at 6.)

> **Response**: Disputed for the reasons stated in Defendants' Response to

Paragraphs 21 and 22.

> Further disputed as some of the citations are inadmissible evidence.

24. Constellation has never amended its July 17, 2006 or January 2, 2007 Forms 8-K issued in connection with the JV Agreements. ███████████████████████

> **Response**: Disputed to the extent Paragraph 24 implies the July 17, 2006 and

January 2, 2007 Forms 8-K are a complete and accurate description of the Joint Venture

Agreements.[113] ████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████

## B. To Obtain DOJ Approval of the ABI-Modelo Merger, Modelo in 2013 Granted Constellation a Sublicense to Sell "Beer" in the U.S. Under the Modelo Brands, Using the Same Definition of "Beer" From the Joint Venture Agreements.

25. In 2012, Anheuser-Busch InBev SA/NV ("ABI") announced that it was acquiring the shares it did not already own in Grupo Modelo. (Ex. 67 (Press Release) at 273; ██ ██████████████████████

> **Response**: Not disputed.

26. The United States Department of Justice ("DOJ") expressed concern that the deal could harm competition, ████████████████████ ██████ the DOJ filed suit to enjoin the proposed merger. (Ex. 102 (DOJ Complaint); ██ ████████████████

---

[113] *Supra* Defendants' Responses to Paragraphs 21-23; *see also* AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036070; ███████████████████████████████████

**Response**:     Disputed to the extent the phrase "United States Department of Justice ('DOJ') expressed concern that the deal could harm competition" in Paragraph 26 is meant to convey accurately DOJ's concerns with ABI's proposed acquisition of Modelo and DOJ's critiques of ABI's proposed remedy to resolve any competitive concerns. It does not.[114]

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

It is undisputed that DOJ filed a lawsuit to enjoin ABI's proposed acquisition of Modelo.[116]

27.     In its complaint, the DOJ alleged that the proposed merger would hinder competition in the product market for "beer," which it defined as "alcoholic beverages usually made from a malted cereal grain, flavored with hops, and brewed via a process of fermentation." (Ex. 102 (DOJ Complaint) at 8.) Constellation moved to intervene in the action and filed a proposed answer, where it admitted the definition of "beer" in the DOJ's complaint. (Ex. 104 (Constellation Motion to Intervene and Proposed Answer) at 9.)[5]

Footnote 5: ██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

**Response**:     Disputed. First, as to the first sentence in Paragraph 27, DOJ defines the "Relevant Product Market" in its Complaint, and Defendants refer the Court to DOJ's allegation for a complete and accurate statement of its contents.[117]

███████████████████████████████████████

███████████████████████████████████████████

---

[114]  *Infra* Defendants' Responses to Paragraphs 27-29.
[115]  *Infra* Defendants' Responses to Paragraphs 27-29.
[116]  AEB Opp'n Decl. Ex. 203, Defs.' Ex. 49, Complaint, *U.S. v. Anheuser-Busch InBev*, No. 1:13-cv-00127 (D.D.C. Jan. 31, 2013), ECF No. 1.
[117]  *Id.*



Because of the diversity in possible beer ingredients, it cannot be said that beer is always made from malt and flavored with hops, nor can it be said that all beer is "substantially differentiated from other alcoholic beverages by taste, quality, alcohol content, image, and price."

28.     ABI, Modelo, and Constellation, in consultation with the DOJ, crafted a remedy that would allow the ABI/Modelo merger to proceed while addressing the competition concerns expressed in the DOJ's complaint. ████████████████████████████████
████████████████████████

**Response**:     Disputed.  Contrary to Paragraph 28, ████████████████████

████████████████████████ he deal was then announced publicly by ABI and

Constellation,[122] ████████████████████████████████████████████

---

[118]  *Id.*
[119]  27 C.F.R. § 25.15.
[120]  27 C.F.R. § 25.15.
[121]
████████████████████████████████████████████████████████

[122]  AEB Opp'n Decl. Ex. 206, Defs.' Ex. 106.

important to DOJ, ████████████████████████████████████████████████████
████████

████████████████████████████████████████████████████████████

     29.     The remedy agreed upon by all parties and the DOJ included the Sublicense, which was designed specifically to address the DOJ's antitrust concerns with respect to a potential lessening of competition in the market for "beer."

    Ex. 27 (Elzinga Rpt.) ¶¶ 33-39.)

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

    **Response**:    Disputed.[125]  In addition to Defendants' Response to Paragraph 28,

Paragraph 29 is disputed because DOJ was concerned with the product market for "Beer" as

defined by the DOJ.[126]  In 2013, DOJ defined "beer" in the Final Judgment as "any fermented

alcoholic beverage that (1) is composed in part of water, a type of starch, yeast, and a flavoring

and (2) has undergone the process of brewing."[127] ███████████████████████████████

████████████████████████████████

    Further disputed as to the statement in Paragraph 29: "designed specifically to

address the DOJ's antitrust concerns with respect to a potential lessening of competition in the

market for 'beer.'" ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[123] ████████████████████████████████████████████████████████████████

[124] ████████████████████████████████████████████████████████████████

[125] *Supra* Defendants' Response to Paragraph 28.
[126] AEB Opp'n Decl. Ex. 203, Defs.' Ex. 49, Complaint, *U.S. v. Anheuser-Busch InBev*, No. 1:13-cv-00127 (D.D.C. Jan. 31, 2013), ECF No. 1.
[127] AEB Opp'n Decl. Ex. 217, Pls.' Ex. 61.
[128] ████████████████████████████████████████████



Further, the Expert Report of Kenneth Elzinga, one of Plaintiffs' proposed experts, cannot be relied upon in connection with Plaintiffs' motion for summary judgment because, despite relying on those proposed opinions in Paragraph 29 above, Plaintiffs represented to this Court in their motion to stay Defendants' motion to exclude the proposed expert opinions of Mr. Elzinga that

This Court then denied Defendants' motion to exclude the proposed expert opinions Mr. Elzinga without prejudice to renewal, presumably taking at face value Plaintiffs' representations that this evidence should not be considered because Plaintiffs are not relying on it for the purposes of their motion for summary judgment.[131]

30.

---



[129]

[130]

[131] ECF No. 207.

Footnote 6:

**Response**:  Disputed.

Products like Zima Clearmalt are examples of commercially available beers intentionally designed to be clear.[133]

---

[132]

[133]  AEB Decl. Ex. 137, Travis Rupp Rebuttal Expert Report ¶¶ 229-230.

[134]

[135]







**Response**: Disputed. First, as to the sentence in Paragraph 31.



32. The court-ordered Final Judgment marked the resolution of the DOJ's lawsuit. (Ex. 111 (Final Judgment).) In the Final Judgment, "Beer" was defined as "any fermented alcoholic beverage that (1) is composed in part of water, a type of starch, yeast, and a flavoring and (2) has undergone the process of brewing" (Ex. 111 (Final Judgment) at 4.)

**Response**: Disputed to the extent Paragraph 32 implies that the definition of "Beer" in the Final Judgment is relevant to an understanding of the definition of "Beer" in the Sublicense. As ABI alleged in its operative complaint in this action, the parties chose a different definition for the definition of "Beer" in the Sublicense, when compared to the definition of the

---

144

145

Final Judgment,[146] ██████████████████████████████████.[147] Among other differences,

there is no starch requirement in the Sublicense. Instead, Constellation has the right to develop, in

its "sole discretion," "entirely new Recipes," including using "entirely new . . . ingredients."[148]

Once a "Recipe" is established (whether for an existing product at the time the Sublicense was

executed, or for a new innovation), Constellation may use "functional substitutes or replacements"

for *any* ingredient provided the substitution "does not change the finished product."[149]

Constellation's broad discretion is then limited in a few express ways, including the specific rules

concerning the use of distilled spirits as an ingredient in any Recipe (*id.* § 2.15(c)), or the use,

sharing, and preservation of yeast.[150] The Sublicense contains no reference to "starch."

█████████████████████████████████████████████████████████

███████████████████████████████ As Defendants' brewing expert Travis

Rupp explains, ████████████████████████████████████████████

████████████████████████████████████and that "[i]mportantly, one molecular

item present in sugar cane is starch."[153]

## III.   THE UNDISPUTED TERMS OF THE SUBLICENSE

33.    As part of the Sublicense, Modelo provided Constellation with U.S.
trademarks and recipes for the existing products covered by the agreement, all of which were
beers—made with malt and flavored with hops. (Ex. 124 (Sublicense) at 40-42; *see also*, *e.g.*, Ex.
31 (1987 U.S. Trademark Registration for Corona); Ex. 32 (1992 U.S. Trademark Registration for
Corona); Ex. 33 (1992 U.S. Trademark Registration for Corona); Ex. 30 (1975 U.S. Trademark
Registration for Modelo); Ex. 36 (2018 U.S. Trademark Registration for Modelo); Ex. 34 (1992
U.S. Trademark Registration for Pacifico).)

---

[146]  Third Amended Complaint ¶ 25, ECF No. 104.
[147]  ██████████████████████████████████
[148]  AEB Decl. Ex. 6, Sublicense §§ 1.1, 2.15(a).
[149]  *Id.* § 3.3.
[150]  *Id.* §§ 1.1 (defining "Recipe" to include "yeast cultures"), 2.21.
[151]  AEB Opp'n Decl. Ex. 307, ██████████████████████ AEB Opp'n Decl. Ex. 184,
       Defs.' Ex. 71.
[152]  AEB Decl. Ex. 137, Travis Rupp Rebuttal Expert Report ¶ 111
[153]  *Id.* ¶ 114.

**Response**:　　Disputed to the extent Paragraph 33 is attempting to provide a complete and accurate statement of Constellation's rights set forth in the Sublicense; Defendants respectfully refer the Court to the Sublicense for a complete and accurate statement of its contents, as it granted Constellation broader rights than the statement contained in Paragraph 33 implies.

34.　　The Sublicense grants Constellation the right to use the licensed trademarks solely in connection with the importing, advertising, promoting, marketing, and selling of "Beer" in the "Territory," *i.e.*, "the fifty states of the United State of America, the District of Columbia and Guam." (Ex. 124 (Sublicense) § 1.1 at 9, § 2.1(a) at 11.)

**Response**:　　Disputed to the extent Paragraph 34 is attempting to provide a complete and accurate statement of Constellation's rights set forth in the Sublicense; Defendants respectfully refer the Court to the Sublicense for a complete and accurate statement of its contents, as it granted Constellation broader rights than the statement contained in Paragraph 34 implies.

35.　　The Sublicense includes rights for Constellation to innovate by modifying existing recipes and creating new ones, but any new innovation is limited to "Beer" as defined in the Sublicense. (*Id.* at 23-25.)

**Response**:　　Disputed to the extent Paragraph 35 is attempting to provide a complete and accurate statement of Constellation's rights set forth in the Sublicense; Defendants respectfully refer the Court to the Sublicense for a complete and accurate statement of its contents, as it granted Constellation broader rights than the statement contained in Paragraph 35 implies. Further, as relevant here, Constellation's rights include the right to determine, in its "sole discretion" the recipes for new Brand Extension Beers, including the right to create "entirely new Recipes" and to use "entirely new . . . ingredients."[154]

---

[154]　AEB Decl. Ex. 6, Sublicense §§ 1.1, 2.15(a).

Further disputed as Section 3.3 of the Sublicense permits that "Constellation Beers and its Suppliers may use functional substitutes or replacements for the foregoing that do not change the finished product, as would be determined by a reasonable Qualified Brewmaster."[155]

Further disputed as the only explicit ingredient limitations in the Sublicense are related to the use of distilled spirits and yeast. Specifically, the Sublicense provides that, subject to certain exceptions, Constellation is prohibited from adopting a "Brand Extension Mark that adopts, refers to or incorporates the name of any type of distilled spirit (such as Corona Tequila)," and "shall not use any distilled spirits in any Recipe for a Brand Extension Beer unless included in a Recipe provided by, or required to be provided by, Marcas Modelo under this Agreement."[156] Moreover, all Recipes must contain "yeast cultures."[157]

36.     The Sublicense defines "Beer" as "beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including non-alcoholic versions of any of the foregoing." (Ex. 124 (Sublicense) § 1.1 at 4.) The Sublicense definition of "Beer" refers only to the liquid, not the container or packaging of the product. (*See* Ex. 124 (Sublicense) § 1.1 at 4 ("'Brand Extension Beer' means Beer packaged in Containers . . ."), 903 ("'Container' means the bottle, can, keg or similar receptacle in which the Beer *is directly placed*.") (emphasis added).)

**Response**:     Disputed to the extent Paragraph 36 is attempting to provide a complete and accurate statement of Constellation's rights set forth in the Sublicense; Defendants respectfully refer the Court to the Sublicense for a complete and accurate statement of its contents, as it granted Constellation broader rights than the statement contained in Paragraph 36 implies.

Further disputed because "Brand Extension Beer" means "Beer packaged in Containers bearing a Brand Extension Mark."[158]  Under the Sublicense, "Beer" is not defined to mean only a specific liquid; instead the definition plainly covers a category of alcohol beverage

---

[155]   *Id.* § 3.3.
[156]   *Id.* § 2.15(c).
[157]   *Id.* §§ 1.1, 2.15(a).
[158]   *Id.* § 1.1.

products. Moreover, "liquid" does not appear anywhere in the Sublicense.[159] ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

      37.     The definition of "Beer" in the Sublicense is identical to the definition of "Beer" in the JV Agreements, with the exception of one non-substantive change. ███████ In the earlier JV Agreements, "Beer" was defined as "beer, ale, porter, stout, malt beverages, and any other versions or combinations of the foregoing, including, without limitation, non-alcoholic versions of any of the foregoing." (Ex. 121 (Agreement to Establish JV) at 2.) The Sublicense definition of "Beer" cut the words "without limitation," but this change had no impact because the Sublicense's "Construction" clause already defined "including" to mean "include, without limitation." (Ex. 124 (Sublicense) § 1.2(a)(v) at 10; ██████████████████████████

      **Response**:   █████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ While both definitions unambiguously cover at least all products

regulated as "beer" by TTB, █████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████. Specifically, the

Sublicense provides Constellation the right to innovate new Corona- or Modelo-branded "Beer"

using, at Constellation's "sole discretion," "entirely new Recipes" developed by Constellation,

including "entirely new . . . ingredients."[162] Once a "Recipe" is developed under the Sublicense,



---

[159]  *See generally* AEB Decl. Ex. 6, Sublicense.

[160]  AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 26, 30-31, 35, 47-48, 56-59, 62, 65; ███

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████

[161]  ████████████████████████████████████████

[162]  AEB Decl. Ex. 6, Sublicense § 1.1, 2.15(a).

Constellation can then "use functional substitutes or replacements" for any ingredients as long as the substitution does not change the finished product.[163]



  38. The Sublicense definition of "Beer" differs from the IRC definition of "beer." The first four words are the same, and then the wording of the Sublicense definition diverges from the IRC definition. (*Compare* Ex. 124 (Sublicense) § 1.1 at 4 *with* Ex. 3 (IRC Definition of Beer).) The IRC definition of "beer" includes "similar fermented beverages . . . produced from malt . . . or from any substitute therefor," which is the portion of the definition that captures sugar-based hard seltzers. (Ex. 29 (Messinger Rpt.) ¶¶ 54-55; Ex. 3 (IRC Definition of Beer).) The Sublicense definition of "Beer" does not include "similar fermented beverages . . . produced from malt . . . or from any substitute therefor." (Ex. 124 (Sublicense) § 1.1 at 4.)

  **Response**: Disputed to the extent Paragraph 38 implies that the only part of the

IRC definition of "beer" that covers sugar-based hard seltzers is the part that reads, "similar

fermented beverages . . . produced from malt . . . or from any substitute therefor." ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Importantly, the phrase "brewed or produced from malt, wholly or in part, or from any

substitute for malt" in the IRC definition of "beer" modifies each of "beer, ale, porter, stout, and

similar fermented beverages," and the Sublicense definition of "Beer" does not contain either the

---

[163]  *Id.* § 3.3.
[164]  *Id.* §§ 1.1, 2.15(a), 2.15(c).
[165]  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[166]  *See, e.g.*, 27 C.F.R. § 25.11, 27 C.F.R. § 25.15(a), 27 C.F.R. § 25.142; ▮▮▮▮▮

"malt" or the "substitute for malt" language from the IRC definition of beer. Thus, if any inference is to be drawn from the fact the Sublicense uses federal regulatory terminology for "beer" ("beer, ale, porter, stout") but then does not restate the ingredient requirements for such products ("brewed or produced from malt, wholly or in part, or from any substitute for malt"), the correct inference to draw is that there is no malt requirement in the Sublicense, at all.

Further disputed to the extent Paragraph 38 implies that the nonuse of the exact IRC language "similar fermented beverages . . . produced from malt . . . or from any substitute therefor" in the Sublicense definition of "Beer" means that the Sublicense definition does not capture products described by this language, such as sugar-based hard seltzers. The Sublicense definition of "Beer" contains lowercase "b" "beer," "ale, porter, stout," and "any other versions or combinations of the foregoing," ████████████████████████████████

████████████████████████████████████████████

39.     The "Construction" clause of the Sublicense addresses incorporation of statutes and regulations. Section 1.2(c) of the Sublicense provides that "references to statutes shall include all regulations promulgated thereunder." (Ex. 124 (Sublicense) § 1.2(c) at 10.)

**Response**: Disputed. Contrary to Paragraph 39, Section 1.2(c) of the Sublicense, by its plain terms, does not "address[] incorporation," nor does it prescribe the circumstances under which provisions of the Sublicense should (or should not) be interpreted by reference to prevailing regulations and statutes. Instead, Section 1.2(c) merely states that when statutes are referenced, the parties intended to "include all regulations promulgated thereunder and, except to the extent specifically provided below, references to statutes or regulations shall be construed as including

---

[167]  AEB Decl. Ex. 6, Sublicense § 1.1; ██████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

all statutory and regulatory provisions consolidating, amending or replacing the statute or regulation."

Further disputed to the extent Paragraph 39 implies that the definition of "Beer" in the Sublicense, which uses federal regulatory terms and concepts, should not be read by reference to the prevailing federal definition of "beer" found in the TTB regulations and IRC.[168]

40.     In accordance with section 1.2©, certain portions of the Sublicense incorporate statutes and regulations. (*See, e.g.*, Ex. 124 (Sublicense) § 2.14 at 22 (citing 15 U.S.C. § 1127)), § 9.11 at 36 (citing 11 U.S.C. §§ 101 *et seq.*).) The Sublicense definition of "Beer" does not reference or expressly incorporate the IRC definition or any other statutes or regulations. (Ex. 124 (Sublicense) § 1.1 at 4.)

**Response**:     Disputed.[169]  In addition to Defendants' Response to Paragraph 39, the definition of "Beer" in the Sublicense, specifically, the terms "beer, ale, porter, stout," combined with expansive language "any other versions or combinations thereof," is a clear as day reference to at least all beverages that meet the IRC and TTB definition of "beer."  In turn, the reference to "malt beverages," combined with expansive language "any other versions or combinations thereof," is another obvious reference to the only other federal regulatory term that captures beer products—FAA and TTB "malt beverages."

41.     The Sublicense contemplates a potential product that includes distilled spirits and falls within its definition of "Beer." (Ex. 124 (Sublicense) § 2.15(c) at 24.) Section 2.15(c) of the Sublicense provides that if Modelo markets a product that adds distilled spirits to "Beer" (as defined in the Sublicense) in Mexico or Canada, then Constellation would be permitted to do the same in the U.S. (Ex. 124 (Sublicense) § 2.15(c) at 24.) Such a potential product would not fall within the IRC definition of "beer." Under the IRC, any product that contains any distilled spirits (*e.g.*, distilled spirits added to a beer) is an IRC "distilled spirit" not an IRC "beer." ██████
████████████████████████████████████████████████████████████████████████████████
████████████████████; *see* Ex. 2 (26 U.S.C. § 5002(a)(8)) ("The terms 'distilled spirits,' 'alcoholic spirits,' and 'spirits' mean that substance known as ethyl alcohol, ethanol, or spirits of wine in any form (including all dilutions and mixtures thereof from whatever source or by whatever process produced).").)

---

[168]  *See Hugo Boss*, 252 F.3d at 617-618; *see also supra* Defendants' Response to Paragraph 16.
[169]  *Supra* Defendants' Response to Paragraph 39.

**Response**:       Disputed.  Contrary to Paragraph 41, Section 2.15(c) states:

Notwithstanding anything to the contrary herein, (i) Constellation Beers shall not adopt a Brand Extension Mark that adopts, refers to or incorporates the name of any type of distilled spirit (such as Corona Tequila), and (ii) Constellation Beers shall not use any distilled spirits as an ingredient in any Recipe for a Brand Extension Beer, unless included in a Recipe provided by, or required to be provided by, Marcas Modelo under this Agreement; provided, however, that if Marcas Modelo or Grupo Modelo (1) adopts a Brand Extension Mark that adopts, refers to or incorporates the name of any type of distilled spirit (such as Corona Tequila) for Product marketed in Mexico or Canada, or (2) uses any type of distilled spirits or any type of distilled spirit flavor as an ingredient in any Recipe for a particular Product marketed in Mexico or Canada, then the restrictions of this Section 2.15(c) shall not preclude Constellation Beers from using (x) the name of any type of distilled spirit in its own Brand Extension Mark for any Product in the Territory or (y) any type of distilled spirit or distilled spirit flavor ingredient in the Recipe for any Product, in each case (which for the avoidance of doubt in the case of (x) and (y), need not be the same distilled spirit or distilled spirit flavor ingredient as used by Marcas Modelo or Grupo Modelo), solely in the Territory in accordance with the other terms and conditions of this Agreement.

42.       The Sublicense permits Constellation to use the term "Cerveceria Modelo as the fictitious name or 'd/b/a' for its brewery located in Mexico." (Ex. 124 (Sublicense) § 2.1(e) at 13.) Neither of Constellation's breweries in Mexico is a "brewery" under the IRC ██████████████████████████████████████████████████████████████████████████ *see* Ex. 4 (26 U.S.C. § 5402(a)).)

**Response**:       Defendants dispute the first sentence of Paragraph 42 to the extent it is attempting to provide a complete and accurate statement of Constellation's rights set forth in the Sublicense; Defendants respectfully refer the Court to the Sublicense for a complete and accurate statement of its contents, as it granted Constellation broader rights than the statement contained in Paragraph 42 implies.

Defendants further dispute the second sentence of Paragraph 42. █████████



## IV. THE UNDISPUTED FACTS CONCERNING THE PARTIES' CONDUCT AFTER EXECUTION OF THE SUBLICENSE

### A. Constellation Launched—With Modelo's Support—New Innovations Using Modelo's Brands That Compete Directly With ABI Products.

43.     Following the 2013 execution of the Sublicense, Modelo and Constellation had a ████████████████████ and worked together to address matters, including Constellation requests for new trademark filings, changes to existing trademarks, and sharing recipes upon request. ██████



---

[170]  27 C.F.R. § 25.11 ("[B]rewery" is the "land and buildings" where "beer [as defined by TTB] is to be produced and packaged.").

[171]  ████████████████████████████████████████ ; AEB Decl. Ex. 110, CBRANDS_0078276 at 8276, 8292.

[172]  AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 65; AEB Opp'n Decl. Ex. 319, ████

[173]  See AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 25, 53, 63-64; 27 C.F.R. § 25.61(a)-(b).

[174]  ████████████████████████████

[175]  AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 65.



**Response**:     Disputed to the extent Paragraph 43 ███████████

███████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

44.     With the support of Modelo, Constellation exercised its right under the Sublicense to innovate, creating new products using the Modelo brands. In 2018, Constellation launched Corona Premier, a low-carb, light lager, which competes directly against ABI products like Michelob Ultra. ████████████████████████████████ █████; Ex. 76 (Constellation Q1 2019 Earnings Call Tr.) at 3.) In 2019, Constellation launched Corona Refresca, a flavored malt beverage. (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 40.)

**Response**:     Disputed to the extent that the ██████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████ and there is no evidence (admissible or otherwise) cited in Paragraph 44 to

support ████████████████████████████████████████████████████████

████████████████████ [180]

Further disputed to the extent Paragraph 44 implies that ██████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**B. Seeking to Capitalize on the Explosive Growth of Hard Seltzers, Constellation Changed Its Decade-Old Understanding of the Sublicense and Launched a Sugar-Based Hard Seltzer Under the Corona Brand in 2020.**

45. "Hard Seltzers" did not exist at the time the Sublicense was negotiated. (█ By 2018, the market for hard seltzer had exploded, ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

**Response**: Disputed. Contrary to Paragraph 45, ██████████████████

████████ and products like Zima—which are clear, filtered, and flavored with fruit—were released

as early as the 1990s.[184] In fact, Zima is often credited as the first hard seltzer,[185] ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

46. Constellation launched its first hard seltzer in June 2018, using the "SVEDKA" vodka brand name. (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 39; ████████████████████████████████████████████████████████

---

[180] Contra TAC ¶ 45.

[181] ████████████████████████████████████████

[182]

[183] AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶¶ 45-51; *see* ██████████

████████████████████

[184] AEB Decl. Ex. 22, Defs.' Ex. 184.

[185] *Id.* ("Hard seltzer is not new. In fact, the first big hard seltzer brand arrived when many of today's hard seltzer drinkers weren't even born yet. In 1993, Coors introduced a drink called Zima. . . .");

████████████████████████████████████████████████████████

[186] ████████████████████████████████████████████

Constellation's first hard seltzer was called "Svedka Spiked Seltzer." (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 39; ███████████████████████████ Constellation stopped selling Svedka Spiked Seltzer in August 2019 after the product performed poorly. (Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 40.)

**Response**: Disputed to the extent Paragraph 46 articulates a reason as to why Constellation decided to stop selling Svedka Spiked Seltzer, as none of the documents cited support Plaintiffs' position that Constellation ceased commercializing Svedka Spiked Seltzer because it "performed poorly."

47. Constellation subsequently decided to launch a hard seltzer using the "CORONA" brand. (Ex. 82 (Constellation's Q2 2020 Earnings Call Tr.) at 4-5, 17.) Constellation "decided to put the Corona brand name on [their] new seltzer" because "Corona carries unbelievably strong brand equity" and Constellation wanted "to enter [the hard seltzer] category with a brand that had deep trust with the consumer." (*Id.* at 4, 17.)

**Response**: Disputed to the extent Paragraph 47 implies that Constellation did not launch similar beverages between the launch of SVEDKA Premium Spiked Seltzer and Corona Hard Seltzer. In 2019, Constellation launched Corona Refresca, which is marketed as a "Premium Spiked Refresher," ████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[187] AEB Decl. Ex. 137, ████████████████████████████████████
████████████████████████████████████ AEB Opp'n Decl. Ex. 239, *Corona Is Bringing the Tropics with New Corona Refresca*, CONSTELLATION BRANDS (Apr. 29, 2019), https://www.cbrands.com/news/articles/corona-is-bringing-the-tropics-with-new-corona-refresca; AEB Opp'n Decl. Ex. 275, *Corona Refresca Returns, Joined by the All-New Corona Refresca MÁS*, GLOBENEWSWIRE (Mar. 1, 2021), https://www.globenewswire.com/news-release/2021/03/01/2184347/0/en/Corona-Refresca-Returns-Joined-bythe-All-New-Corona-Refresca-M%C3%81S.html; AEB Opp'n Decl. Ex. 333, *Our Cervezas: Corona Refresca*, CORONA USA, https://www.coronausa.com/pages/corona-refresca.



**<u>Response</u>**:   Disputed to the extent Paragraph 48 ██████████████



In 2019, Constellation launched Corona Refresca, which is marketed as a "Premium Spiked Refresher,"

---

[192]

[193]

[194] AEB Decl. Ex. 137, Travis Rupp Rebuttal Expert Report ¶ 18-19;

AEB Opp'n Decl. Ex. 239, *Corona Is Bringing the Tropics with New Corona Refresca*, CONSTELLATION BRANDS (Apr. 29, 2019), https://www.cbrands.com/news/articles/corona-is-bringing-the-tropics-with-new-corona-refresca; AEB Opp'n Decl. Ex. 275, *Corona Refresca Returns, Joined by the All-New Corona Refresca MÁS*, GLOBENEWSWIRE (Mar. 1, 2021), https://www.globenewswire.com/news-release/2021/03/01/2184347/0/en/Corona-Refresca-Returns-Joined-bythe-All-New-Corona-Refresca-M%C3%81S.html; AEB Opp'n Decl. Ex. 333, *Our Cervezas: Corona Refresca*, CORONA USA, https://www.coronausa.com/pages/corona-refresca.

[195] AEB Decl. Ex. 155, Mike Mitaro Report ¶ 41 n.75;

[196]

AEB Decl. Ex. 131, Shellhammer Expert Report ¶¶ 27, *see also* AEB Decl. Ex. 137, Travis Rupp Rebuttal Expert Report ¶¶ 169.

[197]



**<u>Response</u>**:     Disputed.     





50.     Prior to the development and launch of Corona Hard Seltzer, every Modelo-branded product Constellation produced was made with malt.

**<u>Response</u>**:     Disputed to the extent Paragraph 50 implies that every Modelo- and Corona-branded product Constellation produced was made only with malted barley.  Modelo- and Corona-branded products produced by Constellation prior to the launch of Corona Hard Seltzer included, in addition to malted barley, TTB-recognized substitutes for malted barley, including "non-malted cereals."[205]



---

202

203
204

[205]  *See* AEB Opp'n Decl. Ex. 335, CBRANDS_0087866; *see also Corona Extra*, Corona, https://www.coronausa.com/pages/corona-extra (showing "INGREDIENTS: Water, Barley Malt, *Non-Malted Cereals*, Hops").

**Response**:   Disputed to the extent Paragraph 51 

52. Constellation's trademark application for CORONA HARD SELTZER described the intended product as: "Alcoholic beverages, *except beer*; Hard seltzer; Flavored *malt-based* alcoholic beverages, *excluding beer*." (Ex. 41 (CORONA HARD SELTZER Trademark Application) at 854 (emphasis added); Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 43.) Constellation also filed a new trademark application for CORONA, and that application also identified the product as being for "Alcoholic carbonated beverages, *except beer*; Hard seltzer." (Ex. 42 (PX-109 (CORONA Trademark Application)) at 860 (emphasis added); Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 43.)

**Response**: Disputed to the extent Paragraph 52 implies that the trademark application categories mean that the CBI Products are not lowercase "b" "beer" or "Beer" as defined by the Sublicense. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ That is because companies can file for trademark applications in either or both Class 32 or Class 33, depending on the filing company's trademark-protection strategies. For example, White Claw as well as ABI's Spiked Seltzer and Social Club Seltzer products were all filed in both Class 32 and 33.[213] In the USPTO's Trademark Electronic Search System, White Claw is described as a "[b]rewed sugar-based beer," while Social Club Seltzer is described as a "[n]on-alcoholic malt beverage" and SpikedSeltzer is described a "[b]eer, ale, lager, porter, stout shandy; Beer-based coolers; Black beer; Brewed malt-based alcoholic beverage in the nature of beer; Flavored beers; Malt beer; Malt liquor."[214]

████████████████████████████████████████████████████████

---

[212] ████████████████████████████████████████████████████

[213] AEB Decl. Exs. 24, 167, 5, 7, Defs.' Exs. 114, 124, 141, 142; ████████████████████████
████████████

[214] AEB Decl. Exs. 24, 167, 5, 7, Defs.' Exs. 114, 124, 141, 142.
[215] ████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████

**Response**:    Disputed to the extent Paragraph 53 ████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

54.    In June 2020, four months after Corona Hard Seltzer was launched, Constellation amended the identification of goods in its CORONA HARD SELTZER trademark application, identifying Corona Hard Seltzer as "Hard Seltzer; *Flavored malt-based* alcoholic beverages, *excluding beers*." (Ex. 44 (CORONA HARD SELTZER Trademark Application Amendment) at 806 (emphasis added); *see also* Ex. 45 (CORONA Trademark Application Amendment) at 809 (updating CORONA trademark application identification to "Alcoholic carbonated flavored brewed *malt beverages, except beer;* Hard seltzer." (emphasis added)); Ex. 130 (ECF No. 119 (Defs.' Answer to Third Am. Compl.)) ¶ 44.)

**Response**:    Disputed to the extent Paragraph 54 implies that the trademark application categories mean that the CBI Products are not lowercase "b" "beer" or "Beer" as defined by the Sublicense.  They do not.[217]

55.    At the time that the June 2020 product description amendments were made, the only product released as "Corona Hard Seltzer" was not malt-based. (Ex. 128 (Defs.' Am. R&Os to Plfs.' First RFAs) at RFA Nos. 1-9; ████████████████████)

**Response**:    Disputed to the extent Paragraph 55 implies anything other than the fact that the only product released as Corona Hard Seltzer as of June 2020 did not contain malted barley, but instead was made with a substitute for malted barley that is recognized by TTB as a permitted ingredient in the production of "beer."[218]

56.    The ingredients listed on the packaging of Corona Hard Seltzer (and all of the other Hard Seltzer Products) does not include malt or hops. (Ex. 130 (ECF No. 119 (Defs.'

---

[216]    ████████████████████████████████████████

[217]    *Supra* Defendants' Response to Paragraph 52.

[218]    27 C.F.R. § 25.15.

Answer to Third Am. Compl.)) ¶¶ 44, 46, 47; Ex. 100 (Photo of Ingredients on Modelo Ranch Water Packaging).)

      **Response**:     Disputed to the extent Paragraph 56 implies that the CBI Products are not produced with hops or a malt substitute. ███████████████████████████

████████████████████████████████████████████████████████████████

████████████ nd one image of a Modelo Ranch Water can is not sufficient to establish that ingredients listed on all the CBI Products do not list malt or hops. ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

      **Response**:     Disputed to the extent that Paragraph 57 ███████████████

████████████████████████████████████████████████████████████████

████████████████████████ ████████████████████████████████████████████

████████████████████████████████████████████████████████████████



58. The Hard Seltzer Products do not taste like, look like, pour like, or have the aroma of a beer. (Ex. 125 (ECF No. 18 (Defs.' Memo ISO Mot. to Dismiss)) at 30;

**Response**: Disputed.

For example, Corona Refresca is a "Beer" under the Sublicense,

---

[222] *Supra* Defendants' Response to Paragraph 48.

[223]

[224]

AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 79-81.

[225]

[226]

[227]



**<u>Response</u>:**     Disputed to the extent Paragraph 59 implies Corona Hard Seltzer is in breach of the Sublicense.  It is not.

**C.**



---

228
229
230

60. ████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████

**<u>Response</u>**:    Disputed to the extent Paragraph 60 ████████████████

██████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

**<u>Response</u>**:    Disputed to the extent Paragraph 61 is ████████████

██████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████

**<u>Response</u>**:    Disputed to the extent Paragraph 62 ██████████████

██████████████████████████████████████████████████.

Further disputed to the extent Paragraph 62 is only providing partial information

contained ████████████████████████████████████████

██████████████████████████████████████████████████

Further disputed as the cited documents are inadmissible evidence.

**<u>Response</u>**:     Disputed.  Contrary to Paragraph 63,

Further disputed as the cited documents are inadmissible evidence.

231
232
233
234

**Response**: Disputed to the extent Paragraph 64 is ███████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████

## V. IT IS UNDISPUTED THAT NEITHER THE IRC DEFINITION OF "BEER" NOR THE "BEER CATEGORY" IS GENERAL, UNIFORM AND UNVARYING IN THE ALCOHOLIC BEVERAGE INDUSTRY.

### A. The IRC Definition of "Beer" Is Not General, Uniform and Unvarying in the Alcoholic Beverage Industry.

65. In the United States, alcohol is regulated at the federal, state, and local level by many different statutory schemes and regulatory agencies. (Ex. 29 (Messinger Rpt.) ¶¶ 23-41; Ex. 28 (Fortin Rpt.) ¶¶ 21-35; Ex. 5 (TTB, "Alcohol Beverage Authorities in United States, Canada, and Puerto Rico").)

**Response**: Disputed to the extent Paragraph 65 implies that TTB's nationally applicable alcohol beverage regulations do not contain the prevailing definitions of beer, wine, and distilled spirits in the U.S. alcohol beverage industry. ██████████████████████████

████████████████████████████████████ Specifically, the TTB is the regulatory authority responsible for the administration and enforcement of Chapter 51 of the IRC;[236] is the regulatory authority responsible for enforcing the laws regulating alcohol production in the United States; [237] is the regulatory authority responsible for regulating the location of breweries, and construction of breweries;[238] is the regulatory authority responsible for regulating the operations of breweries, what equipment breweries may use, and the qualification of breweries;[239] is the regulatory authority responsible for enforcing the laws regulating alcohol importation, and wholesale

---

[235] ████████████████████████████████████████████████████████████ AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 23, 39; ████████████████████████████ AEB Decl. Ex. 136, Neal Fortin Expert Report ¶¶ 22-23.

[236] ████████████████████████████████████████████ AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 21; AEB Decl. Ex. 136, Neal Fortin Expert Report ¶ 26.

[237] AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 25; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.

[238] ████████████████████████████████████████████████████████████ 27 C.F.R. § 25.

[239] *Id.*

businesses in the United States;[240] and has federal jurisdiction over alcohol taxation.[241] TTB regulates many stages of an alcoholic beverage product's lifecycle, including production, formulation, importation, labeling, taxation, packaging, and distribution.[242] ████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Not disputed that there are other government entities that regulate alcohol beverage products in specific jurisdictions and under discrete circumstances. Notably, state regulatory agencies often defer to TTB on matters of alcoholic beverage classifications.[244]

66. There is no uniform regulatory definition of "beer" in the United States. (Ex. 126 (ECF No. 29 (Defs.' Mot. to Dismiss Reply)) at 9.)

**Response**: Disputed. Contrary to Paragraph 66, there is one definition of "beer" that applies to every single beer product marketed and sold in the United States, which is promulgated by TTB and mirrors the definition of beer in the IRC.[245] That definition of beer is the prevailing definition because it is used by TTB to regulate the production, formulation, importation, brewery construction and operations, labelling, excise taxation, trade practices and many other aspects of the beer business.[246] ████████████████████████

---

[240] AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 25; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.
[241] AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 28.
[242] *Id.* at ¶¶ 21-29.
[243] ████████████████████████████████████████████████
[244] AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 82.
[245] 27 C.F.R. § 25.11.
[246] 27 C.F.R. § 25; AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 21-29; ████████████ ████████████████████████████████████████ AEB Decl. Ex. 136, Neal Fortin Expert Report ¶ 26; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.

█████████████████████████████ Further disputed because, as Defendants' expert John Messinger explains, in addition to the primary federal regulator, at least 44 States and the District of Columbia all classify the CBI Products as "Beer" or "Malt Beverages"/"Malt Liquor" (which are the same regulatory classifications applicable to any other beer).[248]

67.     The IRC definition of "beer" has not been adopted uniformly by regulators at the federal level. For example, in a ruling issued in 2021, U.S. Customs and Border Protection ("CBP"), the federal agency responsible for overseeing all imports of alcoholic beverages, held that the definitions of "beer" in the IRC and TTB regulations "are not determinative" of CBP tariff classifications. (Ex. 6 (U.S. CBP Tariff Classification of White Claw) at 8-9.) The ruling was issued in response to a request dated August 3, 2020 by the makers of White Claw Hard Seltzer, another sugar-based hard seltzer, that CBP classify White Claw Hard Seltzer under the heading 2203 ("Beer Made from Malt") of the U.S. Harmonized Tariff Schedule. (*Id.* at 6-7.) CBP determined that White Claw Hard Seltzer is classified under heading 2206 ("Other Fermented Beverages"), not heading 2203. (*Id.* at 10, 11.)

**Response**:     Disputed.  Contrary to the first sentence of Paragraph 67, TTB, the primary federal regulator of alcohol, and only regulator to have nationwide jurisdiction over nearly every aspect of the beer business, such as production, formulation, importation, brewery construction and operations, labelling, excise taxation, and trade practices, has adopted the IRC definition of "beer."[249]  In determining the prevailing definition of "beer," that is all that is relevant.[250] █████████████████████████████████████████████████████████

██████████

---

247  ███████████████████████████████████████████████████████████
    ████████████████████████████████████ AEB Decl. Ex. 136, Neal Fortin Expert
    Report ¶¶ 22-23; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-
    do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.
248  AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 82-112.
249  27 C.F.R. § 25.11.
250  *See* 27 C.F.R. § 25;  AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 21-29; ████████
    ████████████████████████████ AEB Decl. Ex. 136, Neal Fortin Expert Report
    ¶ 26; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-
    do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.
251  *See* ████████████████████████████████████████████████████████████
    ███████████████████████ AEB Decl. Ex. 152, John Messinger Second Amended Expert Report

Further disputed to the extent Paragraph 67 implies that there is not widespread treatment of the CBI Products under federal and state regulations; and disputed to the extent the statement implies that the regulators at the federal level all have the same responsibilities as to regulating alcoholic beverages. As Defendants' regulatory expert John Messinger explained, primary federal agencies and the "vast majority of states and the District of Columbia" treat the CBI Products as "Beer," "Malt Beverages," or "Malt Liquor."[252] Heading 2203 of the U.S. Harmonized Tariff Schedule, as administered by CBP for the limited purpose of tariff collection, is irrelevant to this dispute because it only concerns "Beer Made from Malt," thereby confirming that some beer (like Corona Hard Seltzer and Modelo Ranch Water) is not made from malt. To the extent the CBP has adopted a position that diverges from that of other federal regulators, the "CBP relie[s] on antiquated conceptions of taste, aroma, character, and appearance . . . resulting in classifications that are at odds with alcohol beverage laws in the United States."[253]



68.    In the ruling, CBP stated that "[b]eer is a commonly recognized product" and "White Claw Hard Seltzer is entirely distinct from beer because it does not have the taste, aroma, character or appearance of beer" and "is not sold or marketed as beer." (*Id.* at 9.) The CBP

¶¶ 23, 39; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AEB Decl. Ex. 136, Neal Fortin Expert Report ¶¶ 22-23; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.
[252]  AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 17-18.
[253]  *Id.* at ¶ 17.
[254]  *Id.* at ¶ 81; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AEB Decl. Ex. 129, Michael Kallenberger Opening Report at 47-48, 63, AEB Decl. Ex. 129, Michael Kallenberger Opening Report 34-35; 47; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AEB Decl. Ex. 129, Michael Kallenberger Opening Report at 17; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

also stated that "[i]n classifying the hard seltzer in heading 2006, HTSUS, we do not take into consideration the presence or absence of malted ingredients—rather, we consider that the alcohol base lacks any beer characteristics, and the hard seltzer is not commonly or commercially recognized as beer." (*Id.* at 10.) ██████████████████████████████

██████████████████████████████████████████████████

      **Response**:      Disputed to the extent Paragraph 68 implies that CBP's ruling on the applicability of whether one product (White Claw) is a "Beer Made with Malt," has any relevance to determining the prevailing federal definition of "beer." There is one definition of "beer" that applies to every single beer product marketed and sold in the United States, which is promulgated by TTB and mirrors the definition of beer in the IRC.[255] That definition of beer is the prevailing definition because it is used by TTB to regulate the production, formulation, importation, brewery construction and operations, labelling, excise taxation, trade practices and many other aspects of the beer business.[256] ████████████████████████████████████

██████████████████

      Further disputed to the extent Paragraph 68 implies that there is not widespread treatment of the CBI Products under federal and state regulations. As Defendants' expert John Messinger explained, primary federal agencies and the "vast majority of states and the District of Columbia" treat the CBI Products as "Beer," "Malt Beverages," or "Malt Liquor."[258] To the extent the CBP has adopted a position that diverges from that of other federal regulators, the "CBP relie[s]

---

[255] 27 C.F.R. § 25.11.

[256] 27 C.F.R. § 25; AEB Decl. Ex. 152, John Messinger Amended Expert Report ¶¶ 21-29; ████████████████ AEB Decl. Ex. 136, Neal Fortin Expert Report ¶ 26; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.

[257] ████████████████████████████████████████████████ AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 23, 39; ████████████████ AEB Decl. Ex. 136, Neal Fortin Expert Report ¶¶ 22-23; TTB's Mission – What We Do, TTB (Apr. 27, 2019), https://www.ttb.gov/consumer/about-us-what-we-do#:~:text=We%20are%20responsible%20for%20enforcing,about%20our%20mission%20and%20functions.

[258] AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 17-18.

on antiquated conceptions of taste, aroma, character, and appearance . . . resulting in classifications that are at odds with alcohol beverage laws in the United States."[259] Furthermore, the CBP was deciding whether the White Claw product satisfied the definition for the category—"Beer Made from Malt"—which makes clear that there are "beers" that are not made from malt.[260] ███

███████████████████████████████████████████████

69.  The Brewers Association, which is a leading beer industry trade group (Ex. 29 (Messinger Rpt.) ¶ 6), organizes a beer competition called the World Beer Cup. ███████
████████ Ex. 133 (World Beer Cup Eligibility) at 1.) The eligibility guidelines state that "[a]ll World Beer Cup entries must be commercially available, fermented malt beverages conforming to the trade understanding of 'beer' . . . [and] brewed by a permitted commercial brewery." (*Id.* at 1.) The guidelines go on to state that "seltzers . . . are not eligible to be entered in the World Beer Cup." (*Id.* at 2.)

**Response**:  Disputed to the extent Paragraph 69 implies that hard seltzers are not a product eligible for the World Beer Cup means that products marketed as hard seltzers are not considered "beer" by the Brewers Association. Bart Watson, Chief Economist for the Brewers Association has recognized hard seltzer as a segment of the beer industry.[262]

Further disputed to the extent Paragraph 69 states that the "Brewers' Association . . . is a leading beer industry trade group." Brewers' Association is a trade group for small-scale craft beer brewers; Constellation, ABI, and Modelo are not members of the Brewers Association.

---

[259]  *Id.* ¶ 17.
[260]  *Id.* at ¶ 74, 76-78.
[261]  *Id.* at ¶ 81, ███
███████████████████████████████████████████████
[262]  AEB Decl. Ex. 129, Michael Kallenberger Opening Report at 66.

Instead, they are members of the Beer Institute, which is referenced in the Sublicense and defines "beer" broadly to include products marketed as hard seltzers.[263]

Further disputed to the extent Paragraph 69 implies that eligibility to a "beer competition" run by a private organization for craft brewers that none of the parties are even eligible to join, has any relevance to whether a product meets the Sublicense definition of "Beer."

70.　　At the state level, there are also many definitions of "beer" in state statutes and regulations. (*See*, *e.g.*, Plfs.' Br. ISO Mot. for Summary Judgment, App'x A.) In some states, there is no regulatory definition of "beer" and instead the state uses some other term to capture alcohol products with a lower alcohol content like the terms "Malt Beverage" or "Malt Liquor." (*See*, *e.g.*, Plfs.' Br. ISO Mot. for Summary Judgment, App'x A.)

**Response**:　　Disputed to the extent Paragraph 70 implies that the "many definitions of 'beer' in state statutes and regulations" are not overwhelmingly consistent.  The "vast majority of states and the District of Columbia" treat the CBI Products as "Beer," "Malt Beverages," or "Malt Liquor."[264]  And even "[w]here the Products seemingly fall outside of the strict definition of 'Beer' or 'Malt Beverages' or 'Malt Liquor,' most States nonetheless treat the Products the same as 'Beer' or 'Malt Beverages'/'Malt Liquors.'"[265]

Further disputed to the extent Paragraph 70 implies that State-level use of terms like "Malt Beverage" or "Malt Liquor" to define a product that is beer means that the product is not beer.  As but one example, Corona Extra, Corona Premier, Corona Refresca, Mickey's, and Lime-A-Rita, which are products that Plaintiffs agree are "Beer" within the Sublicense, and Corona Hard Seltzer, are all regulated as "Malt Beverage" in Georgia.[266]

---

[263]　AEB Decl. Ex. 129, Michael Kallenberger Opening Report at 66; AEB Opp'n Decl. Ex. 331, *Responsibility, Advertising & Marketing Code*, BEER INSTITUTE, https://www.beerinstitute.org/responsibility/advertising-marketing-code; The Beer Institute, *"The Beer Serves America report tells the story of a very resilient industry." - Beer Institute CEO Jim McGreevy #BeerServesAmerica* (June 4, 2021), https://m facebook.com/watch/?v=265565132022353&_rdr.

[264]　AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶¶ 17-18; Defs.' App'x I.

[265]　*Id.* ¶ 18; Defs.' App'x I.

[266]　GA. CODE ANN. § 3-1-2(13).

71. The regulatory landscape at the state level is different now than it was in 2013 when the Sublicense was executed because in some states, the statutory or regulatory definition of "beer" has been amended since 2013. (*See, e.g.*, Plfs.' Br. ISO Mot. for Summary Judgment, App'x A; Ex. 29 (Messinger Rpt.) ¶ 120.)

**Response**: Disputed to the extent Paragraph 71 implies that the State statutory or regulatory definitions of "beer" that were amended since 2013 were amended to exclude the CBI Products. Since 2013, nine States have modified certain statutory definitions to define or treat sugar-brewed hard seltzers as "beer" or "malt beverages" or "malt liquor."[267] No States have modified their laws or regulations to restrict a definition of "beer" or "malt beverage" or to exclude sugar-based hard seltzers, including the CBI Products.[268]

72. The IRC definition of "beer" is not generally and uniformly known in the alcoholic beverage industry. (



**Response**: Disputed to the extent Paragraph 72 implies that whether specific individuals' opinions or awareness of the IRC definition of beer has any relevance to whether "beer" as defined in TTB regulations and the IRC is the prevailing federal definition of that word, or its application to the Sublicense.

---

[267] AEB Decl. Ex. 152, John Messinger Second Amended Expert Report ¶ 120 (citing relevant statutes for Delaware, Florida, Michigan, Missouri, Montana, North Dakota, Oregon, South Dakota, and Texas).
[268] *Id.* at ¶ 18.



269
270
271
272
273
274





73.     Terms like "beer" and "brewer" that are defined in the IRC for regulatory purposes have a common and ordinary outside of the statutory definition.

**Response**:     Disputed.     Contrary to Paragraph 73,

Further disputed to the extent that the statement implies that the Sublicense definition of "Beer" is determined by common or ordinary usages of the term.



74.    Industry participants also distinguish between "beer" and "hard seltzers," even though both would fall under the IRC definition of "beer."



---

281

282   26 U.S.C.A. § 5053(e) (Beer for personal or family use).

283

71

**Response**:    Disputed.   Contrary to Paragraph 74, many industry participants,

████████████ do not distinguish between "hard seltzers" and "beers."[284]   In fact, ABI's former

[284]  AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶¶ 20, 65-69, 89-94; *E.g.*, AEB Opp'n Decl. Ex. 234, 2017 Q3 Boston Beer Co. Earnings Call (Oct. 26, 2017) ("[Hard seltzer]'s about 0.4% of the beer business right now."); AEB Opp'n Decl. Ex. 244, 2019 Q2 Molson Coors Earnings Call (July 31, 2019) ("[T]here's no doubt . . . that seltzers are big, and they're here to stay. And we think that the reason for that though is they've tapped into 2 big consumer trends which have evolved. One is better-for-you trends, and the other is consumers looking for an alternative taste for beer."); AEB Opp'n Decl. Ex. 252, CBRANDS_0087696, 2019 Q3 ABI Earnings Call (Oct. 25, 2019) ("We believe hard seltzer is positive for the beer category."); AEB Opp'n Decl. Ex. 258, 2019 FY ABI Earnings Call (Feb. 27, 2020) ("In terms of the second question about hard seltzer, for sure, it's a huge opportunity for us and for the beer industry in general in the U.S. It's bringing new consumers to the category from wine, from spirits . . . . It's interesting to think when you think about seltzer, when you think what's happened with craft in the U.S., craft was also an emerging trend, helped the beer category, brought new consumers. So not unlike seltzer, we were behind because when we got to the U.S., the portfolio — legacy portfolio we had no crafts. Quickly, in a few years, we built the portfolio of craft brands that today grows at many, many times over what the craft industry grows. We grow a strong double digit versus the low single digits for the craft industry. And that was done through some years. And today, we are the biggest players in the U.S. and growing way ahead of the industry. So — and the good news about seltzer compared to craft is that seltzer is a game of national brands, which, of course, caters much more to the way we go to market."); AEB Opp'n Decl. Ex. 260, 2020 Q1 Boston Beer Co. Earnings Call (April 22, 2020) ("We think Hard Seltzer could be on its way to 8%, 9%, 10% of beer during that time. . . . But we're still looking at significant growth, as you know, across the entire beer business, but certainly within seltzers as well. . . . So to me, if I were to bet, I would bet that this subsegment of the beer category will evolve to have further and faster than it would have had this terrible situation [*i.e.*, COVID-19] not occurred."); AEB Opp'n Decl. Ex. 250, 2020 Q2 Constellation Brands Inc. Earnings Call (Oct. 3, 2019) ("[W]e expect all up — all-in to be over time when we are fully at scale production in seltzer that we'll deliver kind of a similar margin case to the one that we have for the rest of our beer business."); AEB Opp'n Decl. Ex. 263, 2020 Q2 Molson Coors Earnings Call (July 30, 2020) (In response to a question about where shelf-space for hard seltzer should be coming from: "[T]he underperforming craft brands should be a share donor. . . . [T]here are a number of underperforming craft brands that exist out in various channels, and that should be a shared donor. The same would apply to slower-moving, underperforming flavored malt beverages."); AEB Opp'n Decl. Ex. 269, 2020 Q3 Boston Beer Co. Earnings Call (Oct. 22, 2020) ("I still believe that the seltzer category is underdeveloped on-premise. . . . So I think it will be basically — seltzer on-premise will be a slow growth that won't explode as much as it did . . . off-premise, where people are talking about it being 15% or 16% of the beer category within a year or two."); AEB Opp'n Decl. Ex. 271, 2020 Q3 ABI Earnings Call (Oct. 29, 2020) ("Let's remember that when we got here 10 years ago, all our brands were seeing segments that in the first few years were all declining segments like light beer and so many other segments, value brands and all that. Now we have a lot of our actions in segments that are growing like craft specialties, like the seltzer segment, like the Michelob Ultra segment. So I think we're beginning to see that a lot of our portfolio is more pointed towards segments that are growing, and that's what you see in the overall mix."); AEB Opp'n Decl. Ex. 274, 2020 Q4 Boston Beer Co. Earnings Call (Feb. 17, 2021) ("Truly Lemonade was the most incremental new product in the entire beer industry in measured off-premise channels in 2020."); AEB Opp'n Decl. Ex. 267, 2021 Q2 Constellation Brands Inc. Earnings Call (Oct. 1, 2020) ("Corona Hard Seltzer will continue to be our lead, but we certainly have other opportunities to continue to gain share in what is becoming a very important subsegment of the beer business."); AEB Opp'n Decl. Ex. 288, 2021 Q3 Molson Coors Earnings Call (Oct. 28, 2021) ("Hard seltzers are here to stay. There are over 10% of beer category sales and growing."); AEB Opp'n Decl. Ex. 278, 2021 Q4 Constellation Brands Inc. Earnings Call (Apr. 8, 2021) ("Our forecast is that it's going to continue to grow, and it's continuing to be a very important part, which is why we're more than doubling our capabilities against hard seltzer for this particular year coming that we're just starting. We believe this is going to be an important part, and it also provides an interesting entree for people into the overall beer category."); AEB Opp'n Decl. Ex. 287, 2022 Q2 Constellation Brands Inc. Earnings Call (Oct. 6. 2021) ("[W]e continue to see the hard seltzer and broader ABA space as a meaningful sector in the beer market, and we continue to believe it's important to participate in and gain our fair share in this

segment to complement the growth of our core imported beer portfolio and to maintain our position as a leader in the high end of the U.S. beer market."); AEB Opp'n Decl. Ex. 299, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers, *Jim Koch on Whether Beer Will Ever Grow Again*, CRAFT BUSINESS DAILY (Feb. 1, 2022) https://craftbusinessdaily.com/jim-koch-on-whether-beer-will-ever-grow-again; AEB Opp'n Decl. Ex. 283, Bart Watson (@BrewersStats), TWITTER (Aug. 27, 2021, 10:28 AM), https://twitter.com/BrewersStats/status/1431262445113253897; Bart Watson (@BrewersStats), TWITTER (Aug. 27, 2021, 10:30 AM), https://twitter.com/BrewersStats/status/1431262914627858447; AEB Opp'n Decl. Ex. 331, *Responsibility, Advertising & Marketing Code*, BEER INSTITUTE, https://www.beerinstitute.org/responsibility/advertising-marketing-code/; The Beer Institute, *"The Beer Serves America report tells the story of a very resilient industry." - Beer Institute CEO Jim McGreevy #BeerServesAmerica* (June 4, 2021), https://m.facebook.com/watch/?v=265565132022353&_rdr; AEB Opp'n Decl. Ex. 336, *Year-End Beer Review with Fintech and NBWA*, NBWA, https://www.nbwa.org/resources/year-end-beer-review-fintech-and-nbwa.; AEB Opp'n Decl. Ex. 302, *NBWA Releases Beer Purchasers' Index for February 2022*, NBWA (Feb. 28, 2022), https://www.nbwa.org/news/nbwa-releases-beer-purchasers%E2%80%99-index-february-2022. AEB Opp'n Decl. Ex. 298, U.S. Dep't of Treasury, *Competition in the Markets for Beer, Wine, and Spirits*, at 26 (Feb. 2022). AEB Opp'n Decl. Ex. 338, *A Brand for Every Taste*, REYES, https://reyesbeerdivision.com/brands; AEB Opp'n Decl. Ex. 294, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers, *Thanksgiving Eve is Back: On-Prem Volumes Up 8.4% vs. 2019*, BEER BUSINESS DAILY (Nov. 30, 2021), https://beernet.com/thanksgiving-eve-is-back-on-prem-volumes-up-8-4-vs-2019. AEB Opp'n Decl. Ex. 264, Bootstrap Brewing Co., *Bootstrap Brewing Releases Hard Seltzer and Craft Beer Mixed Pack*, BREWBOUND (Aug. 15, 2020), https://www.brewbound.com/news/bootstrap-brewing-releases-hard-seltzer-and-craft-beer-mixed-pack; AEB Opp'n Decl. Ex. 285, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers, *Beer Loses Out to Spirits Over Labor Day on Drizly*, BEER BUSINESS DAILY (Sept. 9, 2021), https://beernet.com/beer-loses-out-to-spirits-over-labor-day-on-drizly; AEB Opp'n Decl. Ex. 280, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers, *Fintech's Half-Year Report Card Shows Total Beer Volume Up 9%*, BEER BUSINESS DAILY (July 14, 2021), https://beernet.com/fintechs-half-year-report-card-shows-total-beer-volume-up-9; AEB Opp'n Decl. Ex. 282, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers, *Imports Gain More Dollar Share than Hard Seltzer in Latest Nielsen*, BEER BUSINESS DAILY (July 28, 2021), https://beernet.com/imports-gain-more-dollar-share-than-hard-seltzer-in-latest-nielsen; AEB Opp'n Decl. Ex. 289, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers, *FMB/Seltzer Takes "Another Dramatic Hit" in October BPI*, BEER BUSINESS DAILY (Nov. 2, 2021), https://beernet.com/fmb-seltzer-takes-another-dramatic-hit-in-october-bpi; AEB Opp'n Decl. Ex. 291, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers, *Untappd Reveals What People Have Been Drinking, and Where,* CRAFT BUSINESS DAILY (Nov. 16, 2021), https://craftbusinessdaily.com/untappd-reveals-what-people-have-been-drinking-and-where; AEB Opp'n Decl. Ex. 292, Harry Schumacher, Jenn Litz-Kirk & Jordan Driggers*, 2022: More Traditional Beer Cooler Sets,* BEER BUSINESS DAILY (Nov. 19, 2021), https://beernet.com/2022-more-traditional-beer-cooler-sets; AEB Opp'n Decl. Ex. 286, Jessica Infante, *Nielsen IQ: Summer Off-Premise Beer Sales -7.6% vs. 2020, +9.3% vs. 2019; Hard Seltzer Hit 11.3% Dollar Share*, BREWBOUND (Sept. 27, 2021), https://www.brewbound.com/news/nielseniq-summer-off-premise-beer-sales-7-6-vs-2020-9-3-vs-2019-hard-seltzer-hit-11-3-dollar-share; AEB Opp'n Decl. Ex. 268, Boris Oglesby, *The Rise of Hard Seltzers and What's Next in Beverage Alcohol*, IRI (Oct. 19, 2020), https://www.iriworldwide.com/en-us/insights/blog/the-rise-of-hard-seltzers-and-what%E2%80%99s-next-in-beverage-alcohol (proprietary market research table classifying hard seltzer as a subcategory of beer); AEB Opp'n Decl. Ex. 243, Jessi Devenyns, *Hard seltzer helped beer sales grow 3.5% in July, IRI says*, FOODDIVE (July 31, 2019), https://www.fooddive.com/news/hard-seltzer-helped-beer-sales-grow-35-in-july-iri-says/559897; AEB Opp'n Decl. Ex. 262, Justin Kendall, *Nielsen: Hard Seltzers Account for 45% of Total Beer Category Growth in Off-Premise Retailers During Latest 1 Week Period*, BREWBOUND (July 29, 2020), https://www.brewbound.com/news/nielsen-hard-seltzers-account-for-45-of-total-beer-category-growth-in-off-premise-retailers-during-latest-1-week-period; AEB Opp'n Decl. Ex. 228, Jessica Jacobson, *2017 Beer Report: Hard sodas, seltzer help FMB segment continue its growth*, BEVERAGE INDUSTRY (Mar. 9, 2017), https://www.bevindustry.com/articles/90065-beer-report-hard-sodas-seltzer-help-fmb-segment-continue-its-growth (internal quotations omitted); AEB Opp'n Decl. Ex. 284, *BMC Weekly StatLine # 1008*, BEVERAGE MARKETING CORPORATION (Aug. 30, 2021), https://mailchi.mp/beveragemarketing.com/statline-1008?e=652ab74e55; AEB Opp'n Decl. Ex. 281, Barbara

Chief Executive Officer Carlos Brito █████████████████████████████████

████████████ ABI also holds out to the public that Bon V!V, Bud Light Seltzer and its other hard

seltzers are, in fact, beer by listing them in their "Guide to our Beers" website.[286]  Mr. Brito also

stated in 2020 that hard seltzers "represent[ed] a welcome change as it's trendy, profitable and

growing—something the beer category hasn't shown much in the past few years"[287] Anheuser-

Busch Chief Executive Officer Michel Doukeris stated in 2020 that hard seltzers are "expanding

the beer industry."[288]  As recently as 2021, Doukeris remarked that hard seltzers are "actually a

gift for the beer industry."[289]  As another example, ABI advertised Michelob ULTRA Organic

Seltzer alongside Michelob ULTRA and Michelob ULTRA Pure Gold during the 2022 Super

Bowl.[290]  Additionally, before Modelo commenced this litigation, ABI advertised Bud Light Hard

Seltzer and Bud Light Platinum Seltzer alongside Bud Light and Bud Light Platinum in its "In the

Fridge" and "Beer Vendor" television commercials.[291]  In fact, generally, ABI did not start

advertising Bud Light Seltzer as distinct from Bud Light until after Modelo commenced this

litigation.[292]

---

Harfmann, *Hard seltzers comprise 7% of total beverage alcohol*, BEVERAGE INDUSTRY (July 27, 2021), https://www.bevindustry.com/articles/94297-hard-seltzers-comprise-7-of-total-beverage-alcohol?fbclid=IwAR36j0pixXhVbTlo6htBXdfuohvMXqsv4R177wN2OoW_-OMlQWeAReNjDws.

[285] ████████████████████████████████████

[286] AEB Opp'n Decl. Ex. 330, *Guide to Our Beers*, ABI, https://www.tapintoyourbeer.com/guide-our-beers.

[287] AEB Opp'n Decl. Ex. 257, Jayson Derrick, *Anheuser Busch CEO On Dry January, Hard Seltzer And CBD*, YAHOO! NEWS (Jan. 21, 2020), https://news.yahoo.com/anheuser-busch-ceo-dry-january-203014626.html.

[288] Liz Claman, *Anheuser-Busch North America CEO on growth of Bud Light Seltzer, alcohol sales amid COVID pandemic*, FOX BUSINESS (Aug. 4, 2020), https://video.foxbusiness.com/v/6178143468001#sp=show-clips.

[289] Jayson Derrick, *Anheuser Busch's CEO on Hard Seltzer: 'Gift For the Beer Industry,'* BENZINGA (Mar. 18, 2021), https://www.yahoo.com/video/anheuser-buschs-ceo-hard-seltzer-133413849.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAE4I6hJG6fsF-OIU_-2p-XurvtK8IEVJFTwaGubL8XtB80wL9OHRzB0GLwUgz85h3w5Suc7AAN3GTmnXIHhdNgcQJax55wbRg4GSwdwxaPhRzoe5RRDSrcrr3FfyjDGYI7xTyGOiKjDP8gPyuv9-wxen0EpO12M4PnkEbp27uSh5.

[290] AEB Decl. Ex. 129, Michael Kallenberger Opening Report at 64.

[291] *Id.* at 64.

[292] *Id.* at n.124.



**Response**: Disputed to the extent Paragraph 75 implies that Corona Hard Seltzer and Modelo Ranch Water are not beers, according to Constellation. 



293
294
295

296
297
298
299
300
301

*see also supra* Defendants' Response to Paragraph 12.



76.     Similarly, in a blog post on the website of Mr. Messinger's law firm, an attorney at the firm, Frank Knizner, explains that "both malt- and sugar-based hard seltzers are taxed federally as 'beer.'" (Ex. 134 (Frank Knizner, "Hard Seltzer TTB Regulatory Considerations") at 1.) In an update to the post, Mr. Knizer added a sentence making a distinction



between beer ads and hard seltzer ads: "We were not surprised to see plenty of beer ads on the Super Bowl yesterday but we were a little surprised to see Bon & Viv"—*i.e.*, a hard seltzer—"in the same expensive place." (*Id.* at 2; *see* ████████████████████)

> **Response**: Disputed to the extent Paragraph 76 is attempting to summarize Plaintiffs' 56.1 Exhibits 134 and 29.

**B.    The "Beer Category" Is Not General, Uniform and Unvarying in the Alcoholic Beverage Industry.**



> **Response**: Disputed to the extent Paragraph 77 implies that the position of the Brewers Association suggests that hard seltzers are not considered beers by trade groups. As an initial matter, Bart Watson, Chief Economist for the Brewers Association has recognized hard

seltzer as a segment of the beer industry.[310] Furthermore, the Brewers Association is a craft beer organization and does not represent the views of other trade groups.[311] Finally, Constellation, ABI, and Modelo are not members of the Brewers' Association. Instead, they are members of the Beer Institute, which is the preeminent national trade association for the American brewing industry, which is "the recognized and authoritative source of information on aspects of the industry" and takes an expansive view of beer.[312] The Beer Institute's Advertising & Marketing Code is the only trade standard referenced in the Sublicense.[313] It defines "beer" broadly to include seltzers and provides that "[t]he term 'beer' as used in this Code covers all types of malt beverages, including but not limited to, beers and flavored malt beverages, as well as various specialty products containing alcohol such as hard cider."[314]



---

[310]  AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶ 66.
[311]  AEB Decl. Ex. 135, Michael Kallenberger Rebuttal Report ¶ 66, n.132, AEB Decl. Ex. 137, Travis Rupp Rebuttal Report ¶ 224-226.
[312]  AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶ 67.
[313]  AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶ 67; Sublicense Agreement § 3.1 ("Constellation Beers shall comply with the Advertising and Marketing Code of the Beer Institute.").
[314]  AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶ 67; *Responsibility, Advertising & Marketing Code*, BEER INSTITUTE, https://www.beerinstitute.org/responsibility/advertising-marketing-code.
[315]



At the time, Hart, told Beer Business Daily—a seminal beer industry publication—that Spiked Seltzer (a sugar-based hard seltzer) was a "beer," and specifically a "non-malt beer[]."[323] Hart also told Beer Business Daily that Spiked Seltzer "is a beer, as we have told our wholesalers, and is labeled and distributed as such."[324]

316
317
318
319
320
321 AEB Opp'n Decl. Ex. 227, Defs.' Ex. 244.
322 *Id.*
323 *Id.*;
324 AEB Opp'n Decl. Ex. 227, Defs.' Ex. 244.



**Response**:    Disputed to the extent Paragraph 78



---

[325] 26 U.S.C. 5052(a); Sublicense at § 1.1;

[326]

[327]

[328]



[329] ████████████████████████████ AEB Opp'n Decl. Ex. 330, *Guide to Our Beers*, ABI, https://www.tapintoyourbeer.com/guide-our-beers.

[330] █████████████████████████████████████████████████████████

[331] █████████████████████████████████████████████████████████

[332] █████████████████████████████████████████████████████████
[333] █████████████████████████████████████████████████████████

[334] AEB Opp'n Decl. Ex. 216, *Constellation Brands, Inc. Q2 2014 Earnings Call Transcript*, (Oct. 3, 2013).

## DEFENDANTS' ADDITIONAL RULE 56.1 STATEMENT

**I.     THE 2006-2007 JOINT VENTURE AGREEMENTS AND RELATED NEGOTIATIONS**

**A.     Barton's and Modelo's Relationship Prior to the Joint Venture.**



---

335  *See, e.g.*, AEB Opp'n Decl. Ex. 174, Defs.' Ex. 38.

336  ████████████████████████████████████████████████

337  AEB Opp'n Decl. Ex. 201, Defs.' Ex. 101 at Modelo_CHS_0054525.

338  *Id.*

339  *Id.* at Modelo_CHS_0054526; *see also* ████████████████████

340  AEB Opp'n Decl. Ex. 311, ████████████████████████████████████ Barton changed its name to Constellation Beers Ltd. on February 4, 2009.

341  *Infra* Additional Rule 56.1 Statement Section I.B.



---

[343] AEB Opp'n Decl. Ex. 175, Defs.' Ex. 39 at CBRANDS_0072070; *see also* AEB Opp'n Decl. Ex. 176, Defs.' Ex. 302 at Modelo_CHS_0035589 to Modelo_CHS_0035651.
[344] AEB Opp'n Decl. Ex. 175, Defs.' Ex. 39.
[345] AEB Opp'n Decl. Ex. 176, Defs.' Ex. 302 at Modelo_CHS_0035591.
[346] AEB Opp'n Decl. Ex. 176, Defs.' Ex. 302 at Modelo_CHS_0035591, Modelo_CHS_0035593.

83



---

[347] AEB Opp'n Decl. Ex. 176, Defs.' Ex. 302 at Modelo_CHS_0035623 to Modelo_CHS_0035625.

[348] AEB Opp'n Decl. Ex. 176, Defs.' Ex. 302 at Modelo_CHS_0035658; *Gambrinus and Modelo maneuvering for advantage*, MODERN BREWERY AGE (Feb. 7, 2005), https://www.thefreelibrary.com/_/print/PrintArticle.aspx?id=129810300.

[349] AEB Opp'n Decl. Ex. 176, Defs.' Ex. 302 at Modelo_CHS_0035655.

[350] AEB Opp'n Decl. Ex. 176, Defs.' Ex. 302 at Modelo_CHS_0035691, Modelo_CHS_0035694.

351 AEB Opp'n Decl. Ex. 201, Defs.' Ex. 101 at Modelo_CHS_0054528.
352 *Id.* at Modelo_CHS_0054529.
353 *Id.*; AEB Opp'n Decl. Ex. 175, Defs.' Ex. 39.
354 AEB Opp'n Decl. Ex. 201, Defs.' Ex. 101 at Modelo_CHS_0054529; AEB Opp'n Decl. Ex. 183, Defs.' Ex. 301 at Modelo_CHS_0033761; *see also* AEB Opp'n Decl. Ex. 327 ████████████████████
355 ███████████████████████████████████████████████████ AEB Opp'n Decl. Ex. 183, Defs.' Ex. 301 at Modelo_CHS_0033761.
356 ██████████████████████████████████
357 *Infra* Additional Rule 56.1 Statement Sections I.B. to I.D.
358 *See id.*; *see also* ████████████████████████████

85

**B.    Initial Negotiations Leading to Formation of the Joint Venture.**



20.    At the time of the Joint Venture negotiations, innovation within the beer category was underway.[361]

21.    For example, in the 1990s, beer products that were clear in color, including Miller Clear Beer and Zima Clearmalt, were released.[362]

22.    As another example, by the late 1990s, flavored malt beverages, including Smirnoff Ice and Mike's Hard Lemonade, had become a segment of the beer market.[363]

23.    While some spirits and wine producers were making their own ready-to-drink beverages in the 1980s and 1990s, industry participants understood that each of these products fell within one of the overarching categories of beer, wine, or spirits.[364]




---

[359] ███████████████████████████████████████████

[360] ███████████████████████████████████████████

[361] AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶¶ 38-39.
[362] AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶ 39; ███████████████████

[363] AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶¶ 41-42.  AEB Decl. Ex. 137, Travis Rupp Rebuttal Expert Report ¶¶ 145, 229-230.
[364] AEB Decl. Ex. 129, Michael Kallenberger Opening Report ¶¶ 41-44.



365
366
367
368

369
370





[371] AEB Opp'n Decl. Ex. 177, Defs.' Ex. 42 at NIXON_0018210.

[372] AEB Opp'n Decl. Ex. 177, Defs.' Ex. 42 at NIXON_0018210.

[373]

[374] AEB Opp'n Decl. Ex. 178, Defs.' Ex. 43 at NIXON_0003947; AEB Opp'n Decl. Ex. 178, Defs.' Ex. 43 at NIXON_0004025; AEB Opp'n Decl. Ex. 178, Defs.' Ex. 43 at NIXON_0004111.

[375] AEB Opp'n Decl. Ex. 177, Defs.' Ex. 42 at NIXON_0018221.



---

[378]  AEB Opp'n Decl. Ex. 177, Defs.' Ex. 42 at NIXON_0018382.

[379]  *Id.* at NIXON_0018383.

[380]  *Id.* at NIXON_0018383.







---

[384] *Id.* at 236:22-239:15.
[385] *Id.* at 236:22-239:15.
[386] *Id.* at 158:25-168:22.
[387] *Id.* at 158:25-168:22.
[388] *Id.* at 164:20-168:5.
[389] *Id.* at 202:19-207:9.
[390] ████████████████████████████████████



**C.      Execution of the 2006 and 2007 Joint Venture Agreements.**



391  *Id.* at 235:18-236:21.
392  *Id.* at 205:3-205:24.
393  *Id.* at 168:6-168:16.
394  
395  AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41.
396  AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036075.
397  AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036074.



---

398   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036075 to Modelo_CHS_0036077.

399   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036076. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036339 to
    Modelo_CHS_0036342.

400   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036076.

401   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0035966, Modelo_CHS_0035972 and
    Modelo_CHS_0035992.

402   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036072, Modelo_CHS_0036076.

403   *Id.* at Modelo_CHS_0036319 to Modelo_CHS_00363024.

---

404 *Id.* at Modelo_CHS_0036331.

405 *Id.* at Modelo_CHS_0036461.

406 *Id.* at Modelo_CHS_0036524.

407 *Id.* at Modelo_CHS_0036333 ▮▮▮▮▮▮▮▮▮▮); AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036468 ▮▮▮▮▮▮▮▮; AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036525 (Sub-license Agreement).

408 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

409 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

410 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

411 AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036331.

412 *Id.* at Modelo_CHS_0036336.



---

[413] *Id.* at Modelo_CHS_0036335.

[414] AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036335.

*Id.* at Modelo_CHS_0036333

*Id.* at Modelo_CHS_0036335.

*Id.* at Modelo_CHS_0036351

[415]

[416]



**D.**      **Operation of the Joint Venture Agreements.**

---

[417]   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036477 to Modelo_CHS_0036478.

[418]   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036471.

     *Id.* at Modelo_CHS_0036471.

[419]   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036474, Modelo_CHS_0036504 to Modelo_CHS_0036505.

[420]   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036505.

[421]   AEB Opp'n Decl. Ex. 215, Defs.' Ex. 322.



 This is particularly so because during the Joint Venture time period, beer, wine, and spirits-based ready-to-drink beverages were already on the market.[426]

---

[422] Paragraph 67 is Defs.' Ex. 322.
[423] AEB Opp'n Decl. Ex. 197, Modelo_CHS_0037269 at Modelo_CHS_0037271.
[424] AEB Opp'n Decl. Ex. 210, Defs.' Ex. 309 at Modelo_CHS_0063917.
[425] AEB Opp'n Decl. Ex. 191, Defs.' Ex. 307 at Modelo_CHS_0158662; AEB Opp'n Decl. Ex. 196, Modelo_CHS_0189353 at Modelo_CHS_0189367;
[426] AEB Decl. Ex. 129, Michael Kallenberger Opening Expert Report ¶¶ 41-43;

[427] AEB Opp'n Decl. Ex. 192, Modelo_CHS_0192184 at Modelo_CHS_0192185.
[428] AEB Opp'n Decl. Ex. 218, Modelo_CHS_0000609 at Modelo_CHS_0000631; AEB Opp'n Decl. Ex. 214, Modelo_CHS_0006760 at Modelo_CHS_0006771



## II.    THE 2012 PROPOSED AGREEMENT AND RELATED NEGOTIATIONS

74.

   At this time, ABI and Modelo were the first and third largest brewers of beer sold in the United States.[434]   To avoid antitrust scrutiny from DOJ, ABI proposed to enter into a separate transaction to "sell [Modelo']s existing 50% stake in Crown Imports . . . to Constellation Brands for USD 1.85 billion."[435]



---

[429]   AEB Opp'n Decl. Ex. 181, Defs.' Ex. 41 at Modelo_CHS_0036479-80
[430]   Decl. of Mark De Leeuw Ex. 121 § 2.1, ECF No. 176.
[431]   AEB Opp'n Decl. Ex. 189, Defs.' Ex. 308; AEB Opp'n Decl. Ex. 330, *Guide to Our Beers*, ABI, https://www.tapintoyourbeer.com/guide-our-beers.
[432]
[433]
[434]   AEB Opp'n Decl. Ex. 203, Defs.' Ex. 49, Complaint, *U.S. v. Anheuser-Busch InBev*, No. 1:13-cv-00127 (D.D.C. Jan. 31, 2013), ECF No. 1; AEB Opp'n Decl. Ex. 188, Defs.' Ex. 47 (June 29, 2012 ABI Press Release);
[435]   AEB Opp'n Decl. Ex. 188, Defs.' Ex. 47 at Modelo_CHS_0106276



---

[436] AEB Decl. Ex. 3, ████████████████████████████████.

[437] *See generally* AEB Decl. Ex. 3.

[438] AEB Decl. Ex. 3, ████████████████████ at Modelo_CHS_0029372.

[439] AEB Decl. Ex. 3, ████████████████.

[440] *Id.*, Ex. A.

[441] *See* AEB Opp'n Decl. Ex. 185, Defs.' Ex. 97 at Modelo_CHS_0015353; AEB Opp'n Decl. Ex. 186, Modelo_CHS_0003375 at Modelo_CHS_0003378; AEB Opp'n Decl. Ex. 187, Modelo_CHS_0015948 at Modelo_CHS_0015954.



---

[442] AEB Opp'n Decl. Ex. 188, Defs.' Ex. 47 at Modelo_CHS_0106273 ████████████████████ █

[443] AEB Opp'n Decl. Ex. 188, Defs.' Ex. 47 at Modelo_CHS_0106274 ████████████

[444] AEB Opp'n Decl. Ex. 193, Defs.' Ex. 312, ████████████████████.

[445] AEB Opp'n Decl. Ex. 199, MWE_0003677 at MWE_0003683 to MWE_003684.

[446] AEB Opp'n Decl. Ex. 199, MWE_0003677.

[447] AEB Opp'n Decl. Ex. 202, Defs.' Ex. 102 at Modelo_CHS_0052488.

85.     On January 31, 2013, DOJ filed a civil antitrust complaint in the United States

District Court for the District of Columbia, seeking to enjoin ABI's proposed acquisition of

Modelo, the "Complaint."[448]

86.     In the Complaint, the DOJ alleged that ABI's acquisition of Modelo "threaten[ed]

competition by combining the largest and third-largest brewers of beer sold in the United States,"

in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.[449]

87.     In the Complaint, DOJ alleged that the divesture of Modelo's 50% stake in Crown

was insufficient because:

> Constellation, however, would acquire no Modelo brands or brewing facilities
> under this arrangement - it remains simply an importer, required to depend on ABI
> for its supply of Modelo-branded beer. At the end of the ten-year period, ABI could
> unilaterally terminate its agreement with Constellation, thereby giving ABI full
> control of all aspects of importation, sale, and distribution of Modelo brands in the
> United States.[450]

## III.    THE 2013 SUBLICENSE AGREEMENT AND RELATED NEGOTIATIONS



---

[448]  AEB Opp'n Decl. Ex. 203, Defs.' Ex. 49, Complaint, *U.S. v. Anheuser-Busch InBev*, No. 1:13-cv-00127 (D.D.C. Jan. 31, 2013), ECF No. 1.

[449]  *Id.*

[450]  *Id.*

[451]



---

[452] ████████████████████████████████████████████████████

[453] ████████████████████████████████████████████████████

[454] AEB Opp'n Decl. Ex. 204, Defs.' Ex. 103.

[455] ████████████████████████████████████████████████████

[456] AEB Opp'n Decl. Ex. 204, Defs.' Ex. 103 at Modelo_CHS_0022665.

[457] AEB Opp'n Decl. Ex. 204, Defs.' Ex. 103 at Modelo_CHS_0022679.



458

459

460

461

462 AEB Opp'n Decl. Ex. 204, Defs.' Ex. 103 at Modelo_CHS_0022668.

463 AEB Opp'n Decl. Ex. 204, Defs.' Ex. 103 at Modelo_CHS_0022679.

[464] AEB Opp'n Decl. Ex. 206, Defs.' Ex. 106.
[465] AEB Opp'n Decl. Ex. 206, Defs.' Ex. 106 at Modelo_CHS_0019969.
[466] AEB Opp'n Decl. Ex. 206, Defs.' Ex. 106 at Modelo_CHS_0019968.
[467] AEB Opp'n Decl. Ex. 211, Modelo_CHS_0102570 at Modelo_CHS_0102572.
[468] AEB Opp'n Decl. Ex. 207, Defs.' Ex. 50.
[469] *Id.* at Modelo_CHS_0107926; █████████████████████████████████████



---

[470] AEB Opp'n Decl. Ex. 207, Defs.' Ex. 50 at Modelo_CHS_0107926.
[471] AEB Opp'n Decl. Ex. 204, Defs.' Ex. 103 at Modelo_CHS_0022679.
[472] AEB Opp'n Decl. Ex. 209, Defs.' Ex. 104.
[473] *Id.* at Modelo_CHS_0059318.
[474] AEB Opp'n Decl. Ex. 329, Defs.' Ex. 187 at MWE_0003586.
[475] AEB Opp'n Decl. Ex. 329, Defs.' Ex. 187.



109.     On April 19, 2013, DOJ filed a proposed Final Judgment, ending its litigation.[482]

110.     In essence, through the Sublicense Agreement, Modelo divested its entire U.S. Modelo brand business, including the production, distribution, and retail of the Corona and Modelo brands to Constellation in perpetuity in the "Territory."[483] ███████████████

---

476   *Id.* at MWE_0003594.
477   *Id.*
478   *Id.*
479   TAC ¶ 25, ECF No. 104.
480   *Compare* Sublicense Agreement, § 1.1, *with* AEB Opp'n Decl. Ex 217, Final Judgment, *U.S. v. Anheuser-Busch InBev SA/NV*, No. 1:13-cv-00127 (D.D.C.), ECF No. 48.
481   *Compare* Sublicense Agreement, § 1.1, *with* AEB Opp'n Decl. Ex. 217, Pls.' Ex. 61, Final Judgment, *U.S. v. Anheuser-Busch InBev SA/NV*, No. 1:13-cv-00127 (D.D.C.), ECF No. 48.
482   AEB Opp'n Decl. Ex. 217, Pls.' Ex. 61, Final Judgment, *U.S. v. Anheuser-Busch InBev SA/NV*, No. 1:13-cv-00127 (D.D.C.); AEB Opp'n Decl. Ex. 212, Defs.' Ex. 105, Competitive Impact Statement, *U.S. v. Anheuser-Busch InBev SA/NV*, No. 1:13-cv-00127 (D.D.C.).
483   AEB Opp'n Decl. Ex. 217, Pls.' Ex. 61, Final Judgment, *U.S. v. Anheuser-Busch InBev AA/NV*, No. 1:13-cv-00127 (D.D.C.).



---

484  AEB Opp'n Decl. Ex. 341 at Modelo_CHS_0078148-149.
485  AEB Opp'n Decl. Ex. 341 at Modelo_CHS_0078145; AEB Opp'n Decl. Ex. 312, <span style="background:black">            </span>
     <span style="background:black">    </span> *see also* AEB Opp'n Decl. Ex. 206, Defs.' Ex. 106 at Modelo_CHS_0019967.

Dated: New York, New York
      September 9, 2022

By:   /s/ *Sandra C. Goldstein*

Sandra C. Goldstein, P.C.
Stefan Atkinson, P.C.
Daniel R. Cellucci
Amal El Bakhar
Jenny Lee
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900
sandra.goldstein@kirkland.com
stefan.atkinson@kirkland.com
dan.cellucci@kirkland.com
amal.elbakhar@kirkland.com
jenny.lee@kirkland.com

*Counsel for Defendants*
*CB Brand Strategies, LLC, Crown Imports LLC, and Compañía Cervecera de Coahuila, S. de R.L. de C.V.*